In The
# United States Court Of Appeals
# For The Federal Circuit

## MAUNA KEA TECHNOLOGIES,

*Plaintiff – Appellant,*

v.

## ANTICANCER, INC.,

*Defendant – Appellee.*

Appeal from the United States District Court for the
Southern District of California in case no. 3:11-cv-01407-CAB-JMA,
Judge Cathy Ann Bencivengo.

————————————

## BRIEF OF APPELLANT and JOINT APPENDIX

————————————

Jeffrey M. Goehring
Douglas V. Rigler
YOUNG & THOMPSON
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

*Counsel for Appellant*

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant Mauna Kea Technologies certify the following:

1.    The full name of every party or amicus represented by me is:

        Mauna Kea Technologies

2.    The name of the real party in interest represented by me is:

        Mauna Kea Technologies

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

        Not applicable.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by in the trial or agency or are expected to appear in this Court are:

        Jeffrey M. Goehring
        Douglas V. Rigler
        Young & Thompson
        209 Madison St., Suite 500
        Alexandria, VA 22314

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........................................................................... i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ............................................................... iv

STATEMENT OF RELATED CASES .............................................. vii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES........................................................... 1

STATEMENT OF THE CASE SETTING OUT THE FACTS RELEVANT
TO THE ISSUES ............................................................................... 3

SUMMARY OF THE ARGUMENT .................................................... 9

ARGUMENT ...................................................................................... 10

    I.     Standard of Review ........................................................... 10

    II.    Mauna Kea Was Under No Obligation To Provide Evidentiary
        Material Bearing On The Amount or Reasonableness of
        Attorney Fees Concurrently with its Motion ..................... 10

    III.   Insufficient Documentation Is Not A Basis To Refuse Any
        Attorneys Fees In A Case Found Exceptional Under Section
        285 ..................................................................................... 12

    IV.   Mauna Kea Should Be Awarded All Attorney Fees Arising
        After AntiCancer Asserted Its "Exceptional" Infringement
        Claims.............................................................................. 14

A.      The Declaratory Judgment Posture Does Not Require
        Parsing Fees Arising From The Declaratory Judgment
        Requests From Those Arising From The Compulsory
        Counterclaim ............................................................................15

B.      Costs Arising from Mauna Kea's Invalidity Defense, As
        Well As All Ordinary Litigation Activities That Were
        Necessary To Address AntiCancer's Infringement
        Claims, Are Compensable ........................................................18

CONCLUSION .....................................................................................................22

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

JOINT APPENDIX

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975)..................................................................20

*Automated Bus. Cos. v. NEC Am., Inc.*,
  202 F.3d 1353 (Fed. Cir. 2000) ..................................................19

*Badalamenti v. Dunham's, Inc.*,
  896 F.2d 1359 (Fed. Cir. 1990) ..................................................13

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959)....................................................................15

*Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*,
  267 F.3d 1370 (Fed. Cir. 2001) ............................................19, 20

*Central Soya Co. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983) ..................................................19

*Codex Corp. v. Milgo Electronic Corp.*,
  541 F. Supp. 1198 (D. Mass. 1982)............................................18

*Dolby Labs., Inc. v. Lucent Techs., Inc.*,
  2006 U.S. Dist. LEXIS 33035 (N.D. Cal. May 15, 2006)............11

*Glaxo Group Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004) ..................................................10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................21, 23

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  2010 U.S. Dist. LEXIS 31797 (N.D. Tex. Mar. 31, 2010) ..........17

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.,*
2010 U.S. Dist. LEXIS 118388 (N.D. Tex. Nov. 5, 2010) ..........................17

*Highmark, Inc. v. Allcare Health Mgmt. Sys.,*
687 F.3d 1300 (Fed. Cir. 2012) ....................................................17, 19

*Highmark, Inc. v. Allcare Health & Management System, Inc.,*
134 S. Ct. 1744 (U.S. 2014) .............................................16, 17, 18

*Holmes Group, Inc. v. Vornado Air Circulation Sys.,*
535 U.S. 826 (U.S. 2002) .............................................................17

*Junker v. Eddings,*
396 F.3d 1359 (Fed. Cir. 2005) ....................................................19

*Kilopass Tech., Inc. v. Sidense Corp.,*
738 F.3d 1302 (Fed. Cir. 2013) ....................................................19

*Mathis v. Spears,*
857 F.2d 749 (Fed. Cir. 1988) .........................................19, 20, 21

*Medtronic, Inc. v. Mirowski Family Ventures, LLC,*
134 S. Ct. 843 (U.S. 2014) ....................................................15, 16

*PPG Indus. v. Celanese Polymer Spec Co.,*
840 F.2d 1565 (Fed. Cir. 1988) ....................................................13

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,*
781 F.2d 198 (Fed. Cir. 1986) ....................................................14

*Skelly Oil Co. v. Phillips Petroleum Co.,*
339 U.S. 667 (1950).....................................................................15

*Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.,*
932 F.2d 1453 (Fed. Cir. 1991) ...............................................13, 23

*Superior Fireplace Co. v. Majestic Prods. Co.*,
  270 F.3d 1358 (Fed. Cir. 2001) ..............................................................13, 14

*Wordtech Sys. v. Integrated Network Solutions, Inc.*,
  2009 U.S. Dist. LEXIS 31348 (E.D. Cal. Apr. 10, 2009) ............................13

**FEDERAL STATUTES**

28 U.S.C. § 1295(a)(1).............................................................................................1

28 U.S.C. § 1331 .......................................................................................................1

28 U.S.C. § 1338 .......................................................................................................1

28 U.S.C. § 2201 ...............................................................................................1, 15

28 U.S.C. § 2202 .......................................................................................................1

35 U.S.C. § 285 .............................................................................................*passim*

**FEDERAL RULES**

Fed. R. Civ. P. 11 .........................................................................................*passim*

Fed. R. Civ. P. 54 ................................................................................................9, 11

Fed. R. Civ. P. 54(d)(2)(C) ...................................................................................10

Fed. R. Civ. P. 54(d)(2)(B)(iii) .............................................................................10

Fed. R. Civ. P. 54 Advisory Committee Notes 1993 Amendment..........................11

## STATEMENT OF RELATED CASES

There are no other related cases known to counsel to be pending before this or any other court or tribunal that will be directly affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

This case involves a declaratory judgment of non-infringement and invalidity of U.S. patents. The District Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

The District Court issued an Order on March 3, 2014 that denied Mauna Kea Technologies' Motion for attorney fees under 35 U.S.C. § 285. Mauna Kea Technologies filed a timely Notice of Appeal on March 28, 2014.

This appeal is from the March 3, 2014 Order denying attorney fees under 35 U.S.C. § 285. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

A.   Are the following conclusions of the District Court, which underlie its denial of Mauna Kea's attorney fees despite a finding that AntiCancer's patent infringement claims were exceptional under 35 U.S.C. § 285, legal error and therefore an abuse of discretion:

a.   All required evidentiary support relating to the amount and reasonableness of the requested fees must be submitted concurrently with the motion for attorney fees.

b.   Mauna Kea is not entitled to any attorney fees based solely on a determination that its Motion did not include sufficient documentation to determine the amount and reasonableness of the requested fees.

1

c.  The declaratory judgment procedural posture requires that documentation must have been provided to separate out work on the declaratory judgment claims from the counterclaims asserting infringement.

d.  Mauna Kea is not entitled to compensation for fees arising from its invalidity defense, and documentation must have been provided to separate out such work.

e.  Mauna Kea is not entitled to fees arising from discovery, client reporting, and other litigation activities, and documentation must have been provided to separate out such work.

f.  Mauna Kea is not entitled to fees arising after AntiCancer indicated that it wanted to "withdraw" its infringement claims pursuant to the safe harbor provision of Fed. R. Civ. P. 11.

## STATEMENT OF THE CASE SETTING OUT
## THE FACTS RELEVANT TO THE ISSUES

This case began when Mauna Kea sought a declaratory judgment of non-infringement and invalidity of AntiCancer's patents. (A023-28 and A031-33)[1]. AntiCancer responded by asserting infringement of three separate patents in three separate ways: direct infringement, contributory infringement, and inducement of infringement. (A039-50). Mauna Kea's Answer denied each infringement claim and asserted the defense that AntiCancer's patents are invalid and unenforceable. (A053-058). There are no other claims or defenses asserted by either party in this case.

All infringement claims were resolved in Mauna Kea's favor pursuant to a Joint Motion. (A059-060). AntiCancer agreed to the joint dismissal only because Mauna Kea prepared and served a ready-for-filing Rule 11 Motion. (A091 and A089). Rather than challenge the motion, AntiCancer sought to "withdraw" its infringement counterclaims pursuant to the safe harbor provision of Rule 11.

---

[1] In 2006, AntiCancer sent letters to Mauna Kea demanding license fees for alleged infringement of several of AntiCancer's patents. (A031-33). Mauna Kea responded by asking which claims of which patents were alleged to be infringement by which Mauna Kea products or processes. AntiCancer did not respond and nothing further was heard from AntiCancer until 2010. In a letter of November 2010, AntiCancer renewed its infringement allegations and licensing demand. *Id*. In the four years between the 2006 and 2010 correspondences, Anticancer filed nine patent infringement actions against various other companies. *Id*. Accordingly, Mauna Kea filed a complaint for declaratory judgment of non-infringement and invalidity of AntiCancer's patents. (A023-28).

(A089). AntiCancer eventually agreed to a stipulated dismissal that (1) dismissed AntiCancer's infringement claims with prejudice; (2) included a declaration of non-infringement; (3) gave leave to AntiCancer to file an Amended Complaint wherein its infringement claims were eliminated and wherein AntiCancer admitted that its patents were not infringed; and (4) dismissed Mauna Kea's claims for Declaratory Judgment of Invalidity and Unenforceability without prejudice. (A059-060). The dismissal also included the stipulated finding that Mauna Kea does not and has not infringed the patents-in-suit. *Id.*

In response to Mauna Kea's declaratory judgment action, AntiCancer should have simply admitted that there was no infringement and foregone any infringement claims. Instead, AntiCancer forced Mauna Kea to litigate for over two years, including through the processes of infringement contentions, invalidity contentions, claim construction briefing and Markman hearing, written discovery requests and responses, discovery disputes, and the Rule 11 motion and stipulated dismissal that finally resolved AntiCancer's infringement counterclaims. (A015-021).

Mauna Kea timely filed a Motion for Attorney Fees under 35 U.S.C. § 285, which specified that Mauna Kea sought $193,198.50. (A062-3). The parties' briefs on the motion concentrated almost entirely on whether or not AntiCancer's patent infringement counterclaims were "exceptional" under that statute.

4

However, a portion of the briefs addressed the amount and the reasonableness of the requested fees. (A062-80; A082-84; and A086). In particular, Mauna Kea's opening brief contained (A063) a declaration in support of the fee request (A064-66) and four exhibits (A067-80). Also, Mauna Kea's reply brief emphasized that AntiCancer's infringement counterclaims were compulsory, not permissive, such that all litigation after AntiCancer's assertion of patent infringement claims in its Counterclaim was "truly a direct result of" the counterclaims. (A086).

Although a hearing on Mauna Kea's Motion for Attorney's Fees was scheduled, the District Court cancelled the hearing two days prior to the scheduled date. The notation in the docket sheet states that, "The Court finds this motion suitable for decision without oral argument." (A012).

The District Court issued an Order finding that AntiCancer's infringement claims were "objectively baseless" (A009) and "manifestly unreasonable" (A010) and that "AntiCancer unreasonably misinterprets the breadth of its asserted patents" (A009). Accordingly, the district court ruled that, "Mauna Kea prevails on all AntiCancer's counterclaims in demonstrating by clear and convincing evidence that this case is 'exceptional' under 35 U.S.C. § 285." (A010).

However, despite the finding of exceptionality, the District Court did not award attorney's fees to Mauna Kea. (A010-013). All reasons identified in the Order for not awarding attorney fees relate solely to the sufficiency of the

documentation Mauna Kea offered with its brief, a misconception of the

declaratory judgment posture, and the timeliness of any supplemental

documentation that may have been offered after the submission of its brief. *Id.*

The Order concluded that only certain specific attorney tasks would be

compensable upon the finding that all of AntiCancer's infringement claims were

"exceptional". *Id.* Pursuant to the conclusions that only certain specific attorney

tasks would be compensable, the Order further concluded that the documentation

submitted with Mauna Kea's Motion for Attorney's fees did not include sufficient

details to allow the court to distinguish between attorney time spent on

compensable matters and non-compensable matters. *Id.*

Specifically, the Order concluded that it was necessary to receive billing

information sufficient "to distinguish between the hours incurred for work done on

the counterclaims and hours incurred as a result of Mauna Kea's noninfringement

or invalidity claims under its Complaint for Declaratory Judgment." (A011). The

Order therefore drew a sharp distinction between hours worked on Mauna Kea's

requests for declaratory judgment of non-infringement and invalidity and hours

worked on AntiCancer's "counterclaims" of infringement: "Sufficient information

should have been provided so as to allow both AntiCancer and the Court to

identify the hours and assess the reasonableness of the hours worked in defending

the counterclaims," (A011); and, "[T]he Court has no way of assessing the

6

reasonableness of the hours worked or which hours were spent on defending the counterclaims." (A011-12).

The Order also concluded that fees arising in connection with preparing invalidity contentions (prior art search, collection and review of prosecution files, etc) "are not related to defending the 'exceptional case' of AntiCancer's counterclaims, and are therefore inappropriate to include in an award of attorney fees." (A012). In reaching this conclusion, the Order placed weight on the declaratory judgment procedural posture: "Mauna Kea sought a determination of invalidity of AntiCancer's patents in its Complaint for Declaratory Judgment, before AntiCancer asserted any counterclaims." *Id*. However, the Court had correctly acknowledged earlier in the Order that Mauna Kea sought attorney fees for all work done by counsel, but only as of the date that AntiCancer submitted its infringement claims in response to Mauna Kea's requests for declaratory judgment. (i.e. Mauna Kea did not seek fees arising from preparation of its Complaint or the jurisdictional motion practice that arose after the Complaint but before AntiCancer answered and counterclaimed.)

The Order also concluded that litigation tasks such as reporting events to the client and discovery tasks were "potentially irrelevant" to the fee award that would arise from the exceptionality finding, such that additional documentation was

7

required to determine the relevance of these types of litigation activities and to parse out such fees if it was concluded that they were not relevant. (A012).

The Order also concluded that the date AntiCancer indicated it wanted to "withdraw" its infringement counterclaims under the Rule 11 safe harbor provision was a "key date" for purposes of determining the fee award that would arise from the exceptionality finding, such that additional documentation was required to determine what fees arose before and after this date. (A012)

Regarding the timing of submission of the required documentation, the Order was clear that the decision to not award attorney fees was based in part on the conclusion that Mauna Kea was obligated to submit evidentiary support relating to the amount and reasonableness of its fee request concurrently with its Motion for fees. (A013). The Order concluded that "an offer of supplying evidence later does not fulfill the **current** burden of justifying reasonable attorney fees." (*Id*., emphasis added). The Order went on to note that, "The Court declines to invite **untimely** record keeping submissions or **belated** explanations for Mauna Kea's failure to fulfill its **current** burden." (*Id*., emphasis added).

Mauna Kea appealed the Order denying attorney fees. AntiCancer did not cross appeal the determination that its patent infringement claims were "exceptional" under 35 U.S.C. § 285.

## SUMMARY OF THE ARGUMENT

The District Court legally erred in violation of Fed. R. Civ. P. 54 by requiring the evidentiary support for the amount and reasonableness of fees to have been submitted concurrently with the motion for attorney fees. Rule 54 requires only an identification of the amount sought and provides that evidentiary support for the amount may be submitted later.

The District Court also legally erred in denying all attorney fees on the basis of lack of documentation because lack of documentation is not a permissible reason by which all attorney fees can be denied after finding a case "exceptional" under 35 U.S.C. § 285.

Also, each reason offered by the District Court for requiring additional documentation was a legal error: (1) the District Court misconceived the nature of a declaratory judgment action by requiring documentation to separate hours worked on a request for declaratory judgment of non-infringement and invalidity and hours worked on the compulsory counterclaim for infringement; and (2) the District Court erroneously concluded that Mauna Kea was not entitled to compensation for fees incurred in connection with its invalidity defense and other aspects of litigation such as discovery and client reporting.

# **ARGUMENT**

## I.    **Standard of Review**

The standard of review is abuse of discretion.  "A district court abuses its

discretion in awarding attorney's fees when its decision is based on clearly

erroneous findings of fact, an erroneous interpretation of the law, or is clearly

unreasonable, arbitrary, or fanciful." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d

1339, 1351 (Fed. Cir. 2004).

## II.    **Mauna Kea Was Under No Obligation To Provide Evidentiary Material Bearing On The Amount or Reasonableness of Attorney Fees Concurrently with its Motion**

The District Court held that Mauna Kea's burden to supply sufficient

documentation regarding the amount and reasonableness of the fees it sought was

"current" with the motion, such that any later submission of such evidence would

be "untimely" and "belated."  (A013)  This contradicts Federal Rule of Civil

Procedure 54(d)(2)(B)(iii), which requires only that a motion for fees "must state

the amount sought or provide a fair estimate of it."  The Rule goes on to note that

"[t]he court may determine issues of liability for fees before receiving submissions

bearing on issues of evaluation of services for which liability is imposed by the

court."  Fed. R. Civ. P. 54(d)(2)(C).  The Advisory Committee Notes to Rule 54

further explain:

> This rule does **not** require that the motion be supported **at the time of filing** with the **evidenciary material bearing on the fees**. This

10

> material must of course be submitted in due course, according to such
> schedule as the court may direct in light of the circumstances of the
> case. What is required is the filing of a motion sufficient to alert the
> adversary and the court that there is a claim for fees, and the amount
> of such fees (or a fair estimate).
>
> . . .
>
> The court is explicitly authorized to make a determination of the
> liability for fees before receiving submissions by the parties bearing
> on the amount of an award. This option may be appropriate in actions
> in which the liability issue is doubtful and the evaluation issues are
> numerous and complex.

Fed. R. Civ. P. 54 Advisory Committee Notes 1993 Amendment (emphasis added);

see also Dolby Labs., Inc. v. Lucent Techs., Inc., 2006 U.S. Dist. LEXIS 33035

(N.D. Cal. May 15, 2006) (citing to Advisory Committee Notes).

Mauna Kea's motion for attorney fees complied with Rule 54 by stating the

amount of attorney fees it sought. Contrary to the District Court's conclusion,

there was no "current" obligation to submit with the Motion all the possible

evidence that could me marshaled in support of the amount sought in a speculative

and premature attempt to determine what specific evidence the court may require

after its liability determination. The Rule specifically provides that after a liability

determination, the court and the parties can address the amount of liability

separately.

Even though it was not required to do so, Mauna Kea did submit evidence

regarding the amount it sought. The evidence submitted was tailored specifically

to the assumption that in this particular case Mauna Kea is entitled to all fees

arising after AntiCancer asserted its "exceptional" infringement claims in response

to Mauna Kea's request for declaratory judgment, including fees arising from the

invalidity assertions, discovery, and all ordinary litigation tasks, and without regard

to the declaratory judgment procedural posture (except by limiting the request to

fees arising only after AntiCancer responded to the declaratory judgment request

by asserting infringement). As detailed below, this assumption was in accordance

with the law and the District Court's conclusions contrary to this assumption were

legal error. However, even if the District Court had not erred on all these specific

points, it nonetheless erred in not allowing Mauna Kea to address the evidentiary

question after the liability question.

## III. Insufficient Documentation Is Not A Basis To Refuse Any Attorneys Fees In A Case Found Exceptional Under Section 285

When a court finds a case "exceptional," as it has here, it must then decide

whether or not to award attorney fees. Although there are various reasons why a

court may choose to not award fees despite an exceptionality finding, lack of

documentation is not one of them, and lack of documentation was the only reason

offered by the District Court for denying attorney fees.

"[W]here documentation is inadequate, the district court is not relieved of

its obligation to award a reasonable fee . . . [A] district court itself has experience

in determining what are reasonable hours and reasonable fees, and should rely on

12

that experience and knowledge if the documentation is considered inadequate."
*Slimfold Mfg. Co. Kinkead Indus.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991) (internal
quotations and citations omitted); *see also Wordtech Sys. v. Integrated Network
Solutions, Inc.*, 2009 U.S. Dist. LEXIS 31348, *6 (E.D. Cal. Apr. 10, 2009) (noting
Ninth Circuit law that places the burden of document production on a fee
applicant, but stating that in the context of a Section 285 exceptional finding, the
*Slimfold* rule applies "[n]evertheless").  Similarly, in *PPG Indus. v. Celanese
Polymer Spec Co.*, 840 F.2d 1565, 1570 (Fed. Cir. 1988), the Federal Circuit found
that in a Section 285 context it was an abuse of discretion to refuse any fees for in-
house counsel work based on insufficient documentation.  *Id.*

The *Slimfold* and *PPG Indus.* holdings conform to other Federal Circuit
cases that limit the grounds for denying fees in an exceptional case to reasons that
sound in equity and justice (i.e. not documentation-based reasons).  *Badalamenti v.
Dunham's, Inc.* notes that "after the district court determines that a case is
exceptional, there remains in every case its freedom to exercise its discretion
informed by the court's familiarity with the matter in litigation and the interest of
justice."  896 F.2d 1359, 1365 (Fed. Cir. 1990) (citations omitted).  In *Superior
Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001), the
Federal Circuit held that the factors that inform the discretion to award fees after a
finding of exceptionality are "factors whereby fee shifting may serve as an

13

instrument of justice" - "the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *See also*, *e.g.*, *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) (referring to the equity-based fee shifting factors by which a court may deny or reduce a Section 285 fee award).

The Order on appeal identifies several reasons why it required additional documentation. No other factors are offered for why fees were denied, and in particular none of the justice-based, equity-type factors identified by the Federal Circuit in *Superior Fireplace* and *S.C. Johnson & Son, Inc*. Had there been sufficient documentation for the District Court to parse the fees as indicated in the Order, there is no suggestion or findings in the Order that the District Court would not have awarded attorney fees.

## IV.   Mauna Kea Should Be Awarded All Attorney Fees Arising After AntiCancer Asserted Its "Exceptional" Infringement Claims

The principal reason given by the District Court for its refusal to grant fees to Mauna Kea notwithstanding an unchallenged determination that the action was exceptional was that Mauna Kea's fee request included all work done by counsel after Anti-Cancer asserted infringement in response to Mauna Kea's request for declaratory judgment. Specifically, the District Court identified several reasons why certain activities after AntiCancer's assertion of infringement may not be

14

compensable.  Each such reason constitutes legal error and therefore an abuse of

discretion.

**A.**   **The Declaratory Judgment Posture Does Not Require Parsing
Fees Arising From The Declaratory Judgment Requests From
Those Arising From The Compulsory Counterclaim**

A primary reason the District Court denied attorney's fees is because the

billing documents submitted by Mauna Kea "fail to distinguish between the hours

incurred for work done on the counterlcaims and hours incurred as a result of

Mauna Kea's noninfringment or invalidity claims under it Complaint for

Declaratory Judgment."  (A011.)  This misapprehends the nature of a declaratory

judgment action.

A declaratory judgment is a remedy, not a claim.  The statute that provides

for the issuance of declaratory judgments is entitled "Creation of remedy."  28

U.S.C. § 2201.  The Supreme Court has long held that the Declaratory

Judgment Act is procedural only and does not affect the substantive rights of the

parties.  *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508-09 (1959);

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).  In

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 845 (U.S.

2014), the Supreme Court recently reiterated that "the operation of the Declaratory

Judgment Act is only procedural leaving substantive rights unchanged" and

applied this principle to hold that the declaratory judgment procedural posture does

15

not shift the any burden of proof from a patentee to a licensee during an
infringement contest.  *Id.* (quotations and citations removed).

Mauna Kea's "claim" for declaratory judgment of non-infringement and
invalidity and AntiCancer's "counterclaim" for infringement are not independent
"claims".  Because the declaratory judgment statute is procedural only, and
because it does not independently create jurisdiction, it was necessary for
AntiCancer to assert infringement for this case to go forward.  This case would
have simply ended had AntiCancer not asserted infringement.  Declaratory
judgment is a procedural posture that allows Mauna Kea to seek a remedy, but only
where there is an actual case or controversy, i.e. only where AntiCancer asserts
infringement in response.  Contrary to the District Court's conclusions, the
declaratory judgment procedural posture does not itself create a distinction
between the work performed on Mauna Kea's request for declaratory judgment and
on AntiCancer's claim for infringement.

Moreover, the District Court's refusal to grant fees is inconsistent with the
allowance of fees made by the Supreme Court in the recent case of *Highmark, Inc.
v. Allcare Health & Management System, Inc.*, 134 S. Ct. 1744 (U.S. 2014).  The
procedural posture of *Highmark* is the same as in this case.  Highmark sued All-
Care for a declaratory judgment of non-infringement and invalidity of All-Care's
patents after receiving licensing demands.  *Id.* at 1747.  All-Care counter-claimed

16

for patent infringement (*Id.*), which is a compulsory counterclaim such that no case or controversy would have been established for purposes of proceeding with the case had there not been an assertion of infringement (*Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 828 (U.S. 2002).  After summary judgment motions, the district court found that All-Care's infringement claims were "exceptional" under Section 285 and awarded Highmark its attorney fees. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 2010 U.S. Dist. LEXIS 31797 (N.D. Tex. Mar. 31, 2010) and *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 2010 U.S. Dist. LEXIS 118388 (N.D. Tex. Nov. 5, 2010).  The district court did not attempt to parse out the time spent on the claim for declaratory judgment and the time spent on the compulsory counter-claim of infringement, nor was there any contention that this would be appropriate.  *Id.*  On appeal, the Federal Circuit addressed only the exceptional case finding, applying a *de novo* standard. *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300 (Fed. Cir. 2012)). The Supreme Court remanded, holding that all portions of a Section 285 determination should be reviewed for abuse of discretion.  134 S. Ct. 1749.

As is apparent, the parties in the *Highmark* case, and each of the courts involved in the case, including the Supreme Court, addressed an award of fees in the context of a declaratory judgment without distinction between mirror image

and mandatory infringement counter-claims and claims in a complaint for declaratory judgment.

In the instant appeal, the District Court's opinion held that because it could not assess the reasonableness of the hours spent solely on defending the counterclaims (as opposed to time spent on prosecuting the requests for declaratory judgment) the award of any fees for the entire action would require speculation. This is plainly inconsistent with the procedural nature of the Declaratory Judgment Act and the Supreme Court's implicit assumption in *Highmark* that the declaratory judgment posture does not require parsing fees for mirror image counterclaims in an award in an exceptional case under Section 285.

### B. Costs Arising from Mauna Kea's Invalidity Defense, As Well As All Ordinary Litigation Activities That Were Necessary To Address AntiCancer's Infringement Claims, Are Compensable

The purpose of Section 285 is not to punish the losing party, but is instead to compensate the prevailing party for fees it should not have been required to expend. Federal Circuit has repeatedly held that a prevailing party in an "exceptional" case under Section 285 should recover the costs it incurred in the "prosecution or defense" of the case:

> The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution **or defense** of the suit. *Codex Corp. v. Milgo Electronic Corp.*, 541 F. Supp. 1198, 1201, 217 USPQ 878, 879 (D. Mass. 1982) ("The compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in

18

prosecuting the entire action.") **We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit**.

*Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)

(emphasis added); *see also Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302,

1313 (Fed. Cir. 2013) ("it is clear that the aim of § 285 is to compensate a

defendant for attorneys' fees it should not have been forced to incur"); *Highmark,

Inc. v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300, 1310, fn.1 (Fed. Cir. 2012)

("The purpose of section 285, unlike that of Rule 11, is not to control the local

bar's litigation practices—which the district court is better positioned to observe—

but is remedial and for the purpose of compensating the prevailing party for the

costs it incurred in the prosecution or defense of a case where it would be grossly

unjust, based on the baselessness of the suit or because of litigation or Patent

Office misconduct, to require it to bear its own costs."); *Junker v. Eddings*, 396

F.3d 1359, 1365 (Fed. Cir. 2005) (in the Section 285 award context "attorney fees

…include those sums that the prevailing party incurs in the preparation for and

performance of legal services related to the suit"); *Brasseler, U.S.A. I., L.P. v.

Stryker Sales Corp.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001); *Automated Bus. Cos. v.

NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000); *and Mathis v. Spears*, 857

F.2d 749, 756 (Fed. Cir. 1988).

19

In *Brasseler*, the accused infringer asserted various defenses against infringement claims that were found to be "exceptional" under Section 285. The patentee argued that the accused infringer should not recover fees arising from the assertion of its infringement defenses. *Brasseler* at 1386. The Federal Circuit rejected the argument, holding that the accused infringer,

> would not have incurred any of the fees generated in defense of [the] suit had [the patentee] not committed inequitable conduct in pursuit of its patent and had it not filed a claim for infringement of that patent, known by [the patentee] to have been improperly obtained. Thus, [the patentee] should be charged with the expenses of defending this frivolous suit. Furthermore, the district court's failure to reach the remaining defenses raised by [the accused infringer], because they were mooted by its inequitable conduct finding, cannot be a basis for denying fees relating to those defenses.

*Id*.

In *Mathis v. Spears*, the Federal Circuit emphasized that, "The purpose of Section 285 is to reimburse a *party* injured when forced to undergo an 'exceptional' case" and that, "The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." 857 F.2d 749, 756 (Fed. Cir. 1988) (emphasis in original) (citations removed) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)). Regarding compensation for defenses asserted against "exceptional" infringement claims, *Mathis* held, "When a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. . . . Litigants in good faith may raise

alternative legal grounds for a desired outcome, and 'the court's rejection of or *failure to reach certain grounds* is not a sufficient reason for reducing a fee. The result is what matters.'" *Id.* (*citing Hensley v. Eckerhart*, 461 U.S. 424 (U.S. 1983)[2]).

The Order on appeal also refers to litigation activities such as discovery document review and preparation and reporting hearings to the client as "potentially irrelevant." (A012)

The Order on appeal also notes that AntiCancer moved to "dismiss" its counterclaim on May 30, 2013 and that Mauna Kea is seeking its attorney's fees for both May and June 2013. The Court's Order refers to this date as a "key date" and implies that Mauna Kea would not be entitled to any fees after this date. (A012). The date in question is the date that AntiCancer first indicated that it wanted to "withdraw" its unreasonable counterclaims pursuant to the safe harbor of Rule 11. Unilateral "withdrawal" is not possible and actual resolution of the case did not arise until the parties negotiated and settled upon the language of a dismissal order (which required a hearing and guidance from the District Court).

---

[2] *Mathis* recites an expanded version of this same quote from *Hensley v. Eckerhart* later in the opinion: "Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. **Normally this will encompass all hours reasonably expended on the litigation**. . . ." *Mathis* at 755 (emphasis added).

Expenses arising from Mauna Kea's invalidity defense, as well as from all other of Mauna Kea's litigation activities after AntiCancer asserted its unreasonable infringement claims, including discovery, client reporting, and negotiating a joint dismissal order, would not have been incurred absent AntiCancer's assertion of unreasonable infringement claims. The only issues in this case were the infringement and validity of the patents asserted by AntiCancer; there could not have been, and were not, any litigation activities that were not directly resulting from AntiCancer's assertion of "exceptional" infringement claims. In light of this and the case law cited above, the Order on appeal legally erred in concluding that fees arising from Mauna Kea's defense of patent invalidity and other routine litigation activities were not compensable upon a finding that AntiCancer's infringement claims were "exceptional" under Section 285.

## CONCLUSION

The District Court abused its discretion by requiring the evidentiary material bearing on the amount and reasonableness of the fees to be submitted at the time of filing of the motion. The District Court further and separately abused its discretion by refusing any attorney fees based solely on the conclusion that there was insufficient documentation. The District Court further and separately abused its discretion by misapprehending the nature of a declaratory judgment action and concluding that declaratory judgment requests and compulsory counterclaims are

separate claims for purposes of calculating a fee award and that work on such claims must be parsed. The District Court further and separately abused its discretion by failing to award fees arising from litigation activities that would not have been performed absent AntiCancer's assertion of exceptional infringement claims, including particularly but without limitation, the assertion of Mauna Kea's defenses, discovery activities, reporting activities, and the negotiation of dismissal.

Mauna Kea is entitled to all fees arising after AntiCancer asserted its exceptional infringement claims. Based on this conclusion, the record on appeal includes documentation necessary to perform a review of the reasonableness of the requested fee amount. (A064-080). In accordance with the Federal Circuit's adoption of the Supreme Court's statement in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), that "an attorney fees determination should not result in a second major litigation," Mauna Kea requests an Order from this Court that it is entitled to the full fee amount it requested from the District Court. *Slimfold Mfg. Co., Inc.*, 932 F.2d at 1459 (quoting *Hensley*, 461 U.S. at 437).

Respectfully submitted,

/s/Jeffrey M. Goehring
Jeffrey M. Goehring
Douglas V. Rigler
YOUNG & THOMPSON
209 Madison St., Suite 500
Alexandria, VA 22314
703-521-2297

Attorneys for Appellant Mauna Kea
Technologies

Dated:  June 16, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 16th day of June, 2014, I electronically filed this Brief of Appellant with Joint Appendix with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

> Matthew D. Valenti
> AntiCancer, Inc.
> 7917 Ostrow St.
> San Diego, CA  92111
>
> *Counsel for Appellee*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, United States Court of Appeals for the Federal Circuit, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/ Adrienne R. Acra-Passehl
> Adrienne R. Acra-Passehl
> Gibson Moore Appellate Services
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements,
### And Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
        32(a)(7)(B) because:

          this brief contains 5,011 words, excluding the parts of the brief
          exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

          this brief has been prepared in a proportionally spaced typeface using
          Microsoft Word in 14 Times New Roman.


Dated:  June 16, 2014                    /s/Jeffrey M. Goehring
                                         Jeffrey M. Goehring
                                         Douglas V. Rigler
                                         YOUNG & THOMPSON
                                         209 Madison St., Suite 500
                                         Alexandria, VA 22314
                                         703-521-2297

In The

# United States Court Of Appeals
# For The Federal Circuit

## MAUNA KEA TECHNOLOGIES,

*Plaintiff – Appellant,*

v.

## ANTICANCER, INC.,

*Defendant – Appellee.*

Appeal from the United States District Court for the
Southern District of California in case no. 3:11-cv-01407-CAB-JMA,
Judge Cathy Ann Bencivengo.

––––––––––––––

## JOINT APPENDIX

––––––––––––––

| | |
|---|---|
| **Jeffrey M. Goehring** | **Matthew D. Valenti** |
| **Douglas V. Rigler** | **AntiCancer, Inc.** |
| YOUNG & THOMPSON | **7917 Ostrow St.** |
| **209 Madison St., Suite 500** | **San Diego, CA  92111** |
| **Alexandria, VA  22314** | **(858) 654-2555** |
| **(703) 521-2297** | |
| | |
| *Counsel for Appellant* | *Counsel for Appellee* |

# TABLE OF CONTENTS FOR THE APPENDIX

**Page**

Order being appealed, DE 68, denying Mauna Kea's Motion for Attorney Fees
filed March 12, 2014....................................................................................A001

Complete copy of docket sheet......................................................................A014

Mauna Kea's complaint, DE 1
filed June 27, 2011...............................................................................A023

Order denying AntiCancer's motion to dismiss, DE 14
filed November 9, 2011........................................................................A030

AntiCancer's Answer and Counterclaim, without attachments (without patents), DE 14
filed November 23, 2011......................................................................A039

Mauna Kea's Answer, DE 19
filed December 16, 2011......................................................................A053

Order granting joint motion to dismiss, DE 61
filed July 29, 2013...............................................................................A059

Excerpts from Mauna Kea's brief in support of
Motion for Attorney Fees, portions that relate to the fees sought, DE 61
filed August 9, 2013.............................................................................A061

J. Goehring Dec. and Ex. A-D to Mauna Kea's brief in support of
Motion for Attorney Fees, which relate to amount of fees sought, DE 61-3 and 61-4
filed August 9, 2013.............................................................................A064

Excerpts from AntiCancer's Opposition brief –
those portions that relate to the amount of fees sought, DE 64
filed October 3, 2013 ...........................................................................A081

Excerpts from Mauna Kea's Reply brief –
those portions that relate to amount of fees sought, DE 65
filed October 10, 2013 .........................................................................A085

Excerpts from Exhibits to Mauna Kea's Reply brief –
those portions identifying the parties' Rule 11 motion practice, DE 65-1
filed October 10, 2013 .........................................................................A087



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Mauna Kea Technologies, | CASE NO. 11-cv-1407-CAB-JMA |
|---|---|
| Plaintiffs, | **ORDER DENYING MAUNA KEA TECHNOLOGIES' MOTION FOR ATTORNEY FEES UNDER 35 U.S.C. § 285** |
| vs. | |
| AntiCancer, Inc., | [Doc. No. 62] |
| Defendants. | |

Before the Court is Mauna Kea Technologies' ("Mauna Kea") motion for attorney fees under 35 U.S.C. § 285 against AntiCancer, Inc. ("AntiCancer") for assertion of allegedly baseless counterclaims. [Doc. Nos. 62, 65.] Mauna Kea alleges that AntiCancer knew or should have known that AntiCancer's asserted contributory infringement, indirect infringement, and direct infringement counterclaims were baseless because AntiCancer did not demonstrate direct infringement, as required for direct, induced, and contributory infringement. [Doc. No. 62-1.] AntiCancer's infringement counterclaims are based on U.S. Patent Nos. 6,649,159; 6,759,038; and 6,251,384 and are directed to methods for monitoring specific biological processes. [Doc. No. 62-1.]

## I.    Legal Standard

The patent statute authorizes courts in exceptional cases to award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. The Federal Circuit describes

**A001**

the process for assessing the existence of an exceptional case as follows:

> The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that a case is exceptional . . . and (2) if so, then determine in its discretion whether an award of attorney fees is justified . . .

*Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed. Cir. 2007) (quoting *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc)).

### A.    Prevailing Party

The Federal Circuit has adopted the *Buckhannon* requirements for determining the "prevailing party" for the purposes of 35 U.S.C. § 285. *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1033-34 (Fed. Cir. 2006) (citing *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n.2 (1989)). *Buckhannon* concludes that the term "prevailing party" requires a "judicially sanctioned change in the legal relationship of the parties," either through a judgment on the merits or through a settlement agreement enforced through a consent decree. *See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 604-05 (2001). "The dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004). A party, "which had all claims against it dismissed with prejudice, is . . . [the] prevailing party." *Id.*

### B.    Exceptional Case Under 35 U.S.C. § 285

"A number of different circumstances may support the finding of an exceptional case, including 'vexatious or unjustified litigation' or 'frivolous suit,' of which there must be clear and convincing evidence." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1387 (Fed. Cir. 2008) (quoting *Beckman Instrs. Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). "The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285 and awarding costs, attorney fees, and expenses to the accused infringer." *Eltech*

1  *Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) (quoting *Eltech Sys.*

2  *Corp. v. PPG Indus., Inc.*, 710 F. Supp. 622, 636 (W.D. La. 1988) aff'd in part, 903

3  F.2d 805 (Fed. Cir. 1990)).  "Where . . . the patentee is manifestly unreasonable in

4  assessing infringement, while continuing to assert infringement in court, an inference

5  is proper of bad faith."  *Eltech*, 903 F.2d at 811.  Courts consider a "totality of the

6  circumstances" to determine whether a case is exceptional.  *Yamanouchi Pharm. Co.,*

7  *Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000).

8  **C.    Awarding Reasonable Attorney Fees and Expenses**

9  If a case is found "exceptional" under 35 U.S.C. § 285, the decision to award

10  attorney fees is "within the discretion of the trial judge."  *Takeda*, 549 F.3d at 1385.

11  "The methodology of assessing a reasonable award under 35 U.S.C. § 285 is [also]

12  within the discretion of the district court."  *Automated Bus. Cos. v. NEC Am., Inc.*,

13  202 F.3d 1353, 1355 (Fed. Cir. 2000).  "The purpose of § 285 is, in a proper case

14  and in the discretion of the trial judge, to compensate the prevailing party for its

15  monetary outlays in the prosecution or defense of the suit."  *Cent. Soya Co., Inc. v.*

16  *Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (citing *Codex Corp. v.*

17  *Milgo Electronic Corp.*, 541 F.Supp. 1198, 1201 (D. Mass. 1982)).  Where a

18  plaintiff prevails on only one of several claims, the fact that "the plaintiff is a

19  'prevailing party' . . . may say little about whether the expenditure of counsel's time

20  was reasonable in relation to the success achieved."  *Hensley v. Eckerhart*, 461 U.S.

21  424, 436 (1983).  "The burden of presenting the appropriate fee documentation rests

22  squarely on the shoulders of the attorneys seeking the award."  *In re Wash. Pub.*

23  *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994).  It is the

24  applicant's responsibility to maintain "records in a manner that will enable a

25  reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437.

26  **II.    Analysis for Attorney Fees under 35 U.S.C. § 285**

27  **A.    Prevailing Party**

28  Defendant AntiCancer contends that because the Court dismissed Mauna

1   Kea's invalidity claims (without prejudice), AntiCancer prevails on the issue of

2   validity, precluding Mauna Kea as the "truly the prevailing party." [Doc. No. 64 at

3   16.[1]] This is not an accurate characterization of the law.  The law requires a

4   "judicially sanctioned change in the legal relationship of the parties," either through

5   a judgment on the merits or through a settlement agreement enforced through a

6   consent decree.  *See Buckhannon*, 532 U.S. at 604-05.  Because "dismissal of a

7   claim with prejudice . . . is a judgment on the merits," the party, "which had all

8   claims against it dismissed with prejudice, is . . . [the] prevailing party." *Power*

9   *Mosfet Techs.*, 378 F.3d at 1416.

10         On July 29, 2013, the Court granted a *joint* motion (1) dismissing Mauna

11   Kea's invalidity claims, without prejudice; (2) granting Mauna Kea declaratory non-

12   infringement of U.S. Patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159;

13   6,759,038; and 6,905,831; and (3) dismissing AntiCancer's counterclaims, *with*

14   *prejudice*. [Doc. No. 61.]  In the final disposition, while AntiCancer had some

15   claims against it dismissed *without prejudice*, Mauna Kea was granted declaratory

16   non-infringement and had all claims against it dismissed *with prejudice*.  Therefore,

17   Mauna Kea is the "prevailing party" for purposes of this suit.

18         **B.    Exceptional Case under 35 U.S.C. § 285**

19         In awarding attorney fees, the district court must determine whether the

20   prevailing party has proved the case is "exceptional" by clear and convincing

21   evidence.  *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed. Cir. 2007).

22   "Where. . . the patentee is manifestly unreasonable in assessing infringement, while

23   continuing to assert infringement in court, an inference is proper of bad faith."

24   *Eltech*, 903 F.2d at 811.

25         Here, AntiCancer brought contributory infringement, indirect infringement,

26   and direct infringement counterclaims against Mauna Kea, based on three of

27

28

___

[1]Pinpoint citations to documents utilize the page numbers assigned by CM/ECF.

- 4 -                                          11cv1407

**A004**

1  AntiCancer's patents (the '038, '384, and '159 patents).  Both contributory and
2  indirect infringement require direct infringement as an element.  Therefore, if there
3  is no direct infringement, all of AntiCancer's counterclaims fall.  Further, if the
4  direct infringement claims brought were "manifestly unreasonable," warranting an
5  inference of bad faith, Mauna Kea meets its burden in proving the case is
6  "exceptional" by clear and convincing evidence.

7         Under direct patent infringement, the accused infringer, or an agent acting
8  under the accused infringer's direction or control, must perform all the steps of the
9  claimed method to infringe the patent.  35 U.S.C. § 271(a); *NTP, Inc. v. Research In*
10 *Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) (quoting *Roberts Dairy Co. v.*
11 *United States*, 530 F.2d 1342, 1354 (1976)).  "Direct infringement has not been
12 extended to cases in which multiple independent parties perform the steps of the
13 method claim." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301,
14 1307 (Fed. Cir. 2012) (en banc), *cert. granted*, 81 U.S.L.W. 3395 (U.S. Jan. 10,
15 2014) (No. 12–786).  "For that reason, this court has rejected claims of liability for
16 direct infringement of method claims in cases in which several parties have
17 collectively committed the acts necessary to constitute direct infringement, but no
18 single party has committed all of the required acts." *Id.*

19         **1.     Third Party Direct Infringement**
20                **a.     The '038 and '384 Patents**
21         AntiCancer's preliminary infringement contentions identify three instances of
22 alleged third party direct infringement. [Doc. No. 62-2 at 44-104.]  First,
23 AntiCancer claims the International Patent Application Publication WO
24 2010/059233 ("the '233 Application Publication") infringes AntiCancer's '038 and
25 '384 patents.  [Doc. No 62-2 at 44-76, and 169-96.]  Anti-Cancer's '038 and '384
26 patents are directed to "a method to evaluate a candidate protocol or drug for the
27 inhibition of metastasis of a primary tumor." [Doc. No 62-2 at 44, 59.]  The plain
28 and ordinary meaning of "metastasis," as well as both parties' proposed claim

1  constructions of the term, require the growth of secondary tumors at a site different

2  from the primary tumor.  [Doc. No. 35 at 1, 6.]  The '233 Application Publication,

3  however, does not describe evaluating metastasis of a primary tumor, but only the

4  changes associated with a primary tumor.  [Doc. No 62-2 at 169-96.]  Therefore, the

5  '233 Application Publication does not directly infringe either the '038 or the '384

6  patents.

7               **b.      The '159 Patent**

8          For the second and third instances of alleged third party direct infringement,

9  AntiCancer points to two academic articles as infringing AntiCancer's '159 patent:

10  "The longest telomeres: a general signature of adult stem cell compartments" ("the

11  Telomere Article"), and "Novel, Injectable, Exogenously Regulated, Engineered

12  Stem Cell-Based System For Anterior Spinal Fusion" ("the Stem-Cell Article").

13  [Doc. No. 62-2 at 77-104; 197-210; 211-12.]

14          AntiCancer's '159 patent relates to "the whole-body external optical imaging

15  of gene expression."  [Doc. No. 62-2 at 5, col. 1, ll. 11-12.]  For the purposes of the

16  instant action, Claim 1 of the '159 patent recites "[a] method to monitor the ability

17  of a promoter to promote expression in an animal of an endogenous gene that is

18  controlled by said promoter."  [Doc. No. 62-2 at 16, col. 24, ll. 44-46.]  The parties'

19  agreed claim construction requires the GFP gene to be operatively linked to a

20  promoter of an endogenous gene, so that the endogenous promoter controls the

21  expression of the GFP protein.  [Doc. No. 35 at 2.]  Further, AntiCancer's proposed

22  construction of Claim 1's "promoter of said endogenous gene" limitation

23  specifically excludes artificially employed promoters, such as a viral promoter.  *Id*.

24          AntiCancer alleges the Stem-Cell Article directly infringes the '159 patent

25  because "engineered MSCs [mesenchymal stem cells] were also infected with

26  *retroviruses* encoding for the luciferase or green fluorescent protein (GFP) marker

27  gene."  [Doc. No. 62-2 at 211] (emphasis added).  The Stem-Cell Article does not

28  directly infringe AntiCancer's '159 patent, under AntiCancer's own proposed

1    construction, because the Stem-Cell Article uses a *retrovirus* promoter, not a

2    "promoter. . . endogenous to the animal."  [Doc. No. 35 at 2.]

3            AntiCancer cites the Telomere Article as evidence of direct infringement of

4    the '159 patent. [Doc. No. 62-2 at 78.]  AntiCancer ignores case law governing the

5    territorial limits of direct infringement.  Direct infringement of a method claim

6    requires that "each. . . step[] of the method is performed within this country."

7    *Research In Motion*, 418 F.3d at 1318 (citing 35 U.S.C. § 271(a)).  Further, 35

8    U.S.C. § 271(f), the statute providing for foreign third party direct infringement,

9    does not apply to method or process patents.  *Cardiac Pacemakers, Inc. v. St. Jude*

10   *Med., Inc.*, 576 F.3d 1348, 1364 (Fed. Cir. 2009).

11           The Telomere Article was authored by five researchers from Spain and one

12   researcher from the United States, and identifies the location of animal care and

13   imaging as occurring in Spain.  [Doc. No. 62-2 at 197, 209.]  The Telomere Article

14   does not directly infringe AntiCancer's '159 patent, as the foreign location of the

15   animal imaging precludes demonstrating that each step of the method was

16   performed in this country.

17           Although the three references AntiCancer points to as evidence of direct

18   infringement do not actually demonstrate direct infringement of AntiCancer's

19   asserted patents, AntiCancer argues that "discovery might have filled in the gaps."

20   [Doc. No 64 at 21.]  AntiCancer argues that its preliminary infringement

21   contentions ("PICs") may be more or less accurate depending on the final form of

22   the Court's claim construction.  *Id*.  AntiCancer does not address why its voluntary

23   dismissal of the case before the Court issued its claim construction order unfairly

24   disadvantaged AntiCancer.  Further, this argument overlooks the fact that

25   AntiCancer's claims for third party direct infringement fail, even if the Court gives

26   AntiCancer the benefit of its own proposed claim constructions, for the purposes of

27   this motion.  Therefore, AntiCancer could not have availed itself to Patent Local

28   Rule 3.6 (amending PICs if warranted by the Court's claim construction) as

1  claimed.  [*See* Doc. No. 64 at 21.]

2       Additionally, AntiCancer maintains that discovery could have produced

3  evidence to support its PICs (alleging that third party infringement could have

4  occurred if scientists were to "import some of the mice they studied into the United

5  States," or that "scientists *might* have done similar experiments," or that "steps

6  *might* have been performed without the need for explicit documentation").  [Doc.

7  No. 64 at 22 (emphasis added.)]  In doing so, AntiCancer "incorrectly seems to

8  assume that the discovery rules are designed solely to enable a claimant to develop

9  information to support its claim."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys.,*

10  *Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).  "In bringing a claim of infringement,

11  the patent holder, if challenged, must be prepared to demonstrate to both the court

12  and the alleged infringer exactly why it believed *before filing the claim that it had a*

13  *reasonable chance of proving infringement*."  *View Eng'g, Inc. v. Robotic Vision*

14  *Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (emphasis added).  On the evidence

15  submitted to the Court, AntiCancer has not demonstrated that it had a reasonable

16  chance of proving infringement.  Further, arguing far-fetched instances of possible

17  alleged infringement that would not qualify for third party direct infringement, for

18  the reasons indicated above, also fail to persuade the Court that AntiCancer had a

19  reasonable chance of proving infringement.

20       In arguing that discovery would have uncovered instances of direct

21  infringement, AntiCancer suggests Mauna Kea withheld documents that might

22  reveal third party direct infringement. [Doc. No. 64 at 23.]  AntiCancer, however,

23  does not articulate why they believe Mauna Kea, an international commercial

24  microscope retailer, would have possession or control over document or deposition

25  evidence of specific experiments performed by unaffiliated, academic, third party

26  researchers.  If AntiCancer had a good faith basis that discovery would reveal

27  evidence of direct infringement necessary to prove its infringement counterclaims,

28  AntiCancer could have continued with the litigation, for example by submitting a

1    motion to compel Mauna Kea to comply with discovery.  Instead, AntiCancer joined

2    in the submission of the Joint Motion to Dismiss AntiCancer's Counterclaims with

3    Prejudice. [Doc. No. 60.]

4          In sum, neither the Stem Cell Article nor the Telomere Article directly

5    infringe the '159 patent.  Additionally, AntiCancer did not demonstrate it had a

6    reasonable chance of proving infringement before filing its counterclaims.

7    Therefore, because AntiCancer's counterclaims for third party direct infringement

8    are objectively baseless, Mauna Kea has met its burden of proving by clear and

9    convincing evidence that the case is "exceptional" under 35 U.S.C. § 285.

10         **2.      Direct Infringement by Mauna Kea**

11          AntiCancer's infringement contentions also allege Mauna Kea directly

12   infringed the '038, '384, and '159 patents by "using the CellVizio device to perform

13   one or more of the claimed methods" in the United States without AntiCancer's

14   authorization.  [Doc. No 15 at 7, 8, and 10.]  AntiCancer relies on a Mauna Kea

15   brochure, [Doc. No. 64-2 at 4-5], as evidence that Mauna Kea "proudly advertises

16   two infringing uses of its device – whole-body GFP imaging through the anus of a

17   mouse and on the surface of the eye of a mouse." [Doc. No. 64 at 24.]  While the

18   brochure does advertise fluorescence optical imaging on living animals, and

19   compatibility with GFP transgenic animals, AntiCancer unreasonably misinterprets

20   the breadth of its asserted patents.  [Doc. No. 64-2 at 4-5.]  The '038 and '384

21   patents are directed to "a method to evaluate a candidate protocol or drug for the

22   inhibition of metastasis of a primary tumor."  [Doc. No. 35 at 6 and 11.]  The '159

23   patent is "[a] method to monitor the ability of a promoter to promote expression in

24   an animal of an endogenous gene that is controlled by said promoter."  *Id*. at 1.  The

25   scope of these patents is narrower than "whole-body GFP imaging," and the

26   brochure fails to suggest the claimed methods.  [Doc. No. 64-2 at 4-5.]  Therefore,

27   Mauna Kea's brochure does not "proudly advertise[] two infringing uses," and

28   without more, AntiCancer's counterclaims of direct infringement by Mauna Kea do

1   not have a reasonable expectation of success.

2        AntiCancer again suggests Mauna Kea may possess evidence of

3   infringement, and that Mauna Kea withheld this information during discovery.

4   [Doc. No. 64 at 23.]  Again, if AntiCancer had a good faith basis for this assertion,

5   beyond the speculation asserted in its opposition papers, the appropriate action

6   would have been, for example, to submit a motion to compel discovery.  [Doc. No.

7   60.]

8        Therefore, since Mauna Kea's promotional literature does not directly

9   infringe the '159, '038, or '384 patents by teaching every step of the claimed

10   methodologies, AntiCancer's counterclaims for direct infringement are objectively

11   baseless.  As a result, Mauna Kea has met its burden of proving by clear and

12   convincing evidence that the case is "exceptional" under 35 U.S.C. § 285.

13        Evidence of direct infringement or third party direct infringement is required

14   to demonstrate a claim for contributory or induced infringement.  35 U.S.C. § 271

15   (b), (c).  Because AntiCancer's asserted claims of direct infringement and third

16   party direct infringement are "manifestly unreasonable," AntiCancer's contributory

17   and induced infringement claims necessarily fail.  For this reason, Mauna Kea

18   prevails on all AntiCancer's counterclaims in demonstrating by clear and

19   convincing evidence that this case is "exceptional" under 35 U.S.C. § 285.

20        The Court notes that the outcomes of AntiCancer's previous litigation should

21   have put AntiCancer on notice that the Court requires PICs to sufficiently set forth a

22   theory of allegedly infringing conduct. [*See* Doc. No. 62-1 at 28-30, citing

23   *AntiCancer v. Carestream Health, Inc.,* No. 07-cv-01004 (S.D. Cal. May 14, 2008),

24   ECF No. 49.; *AntiCancer, Inc. v. Cambridge Research & Instrumentation,* No. 07-

25   cv-00097 (S.D. Cal. Feb. 13, 2009), ECF No. 214; *AntiCancer Inc. v. Pfizer et al.,*

26   No. 11-cv-00107 (S.D. Cal. June 1, 2012), ECF No. 63.]

27   **C.**   **Award of Attorney Fees and Expenses**

28        If a case is found "exceptional" under 35 U.S.C. § 285, the decision to award

1  attorney fees is "within the discretion of the trial judge . . . " *Takeda*, 549 F.3d at
2  1385.  As the fee applicant, Mauna Kea bears the initial burden of substantiating the
3  hours worked and the rate claimed.  *Hensley*, 461 U.S. at 437.  To establish the
4  hours worked by each attorney at a firm, the fee applicant must provide a fully
5  detailed itemization of the date, hours, and nature of the work performed.  *See In re*
6  *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1305-06.

7  The Court concludes that Mauna Kea has not met its burden of substantiating
8  the hours worked here.  The materials Mauna Kea submitted in justification for
9  attorney fees appear to include all work done by counsel after AntiCancer submitted
10 its counterclaims.  The materials fail to distinguish between the hours incurred for
11 work done on the counterclaims and hours incurred as a result of Mauna Kea's
12 noninfringement or invalidity claims under its Complaint for Declaratory Judgment.

13 The primary document Mauna Kea submits for justification of attorney fees is
14 a one-page spreadsheet, listing: (1) the invoice number for the *monthly* service
15 period, (2) the *monthly* service period, (3) the attorneys, (4) each attorney's rate,
16 (5) the total number of hours that each attorney worked during that *monthly* service
17 period, and (6) the total amount of fees per month, based on each attorney's hours
18 and billing rate.  [Doc. No 62-4 at 8.]  This spreadsheet is accompanied by a two-
19 page invoice summary document.  The invoice summary document sets forth a one
20 paragraph written description summarizing the services performed for each monthly
21 or bi-monthly invoice number.  The descriptions are not broken down by attorney,
22 day, task, service category, or hours spent per task or per service category.  [*See*
23 Doc. No. 62-4 at 9-10.]

24 Sufficient information should have been provided so as to allow both
25 AntiCancer and the Court to identify the hours and assess the reasonableness of the
26 hours worked in defending the counterclaims.  Again, the documents submitted do
27 not reflect who did what work, the date on which the work was performed, or the
28 amount of time billed to any particular task or issue on any particular day.  As such,

1   the Court has no way of assessing the reasonableness of the hours worked or which

2   hours were spent on defending the counterclaims.  As such, an award of attorney

3   fees in this case would require speculation.

4        Take invoice number "13I031," for example, which provides a one paragraph

5   description of the attorney services provided for the *two* months of May and June

6   2013.  [Doc. No. 62-4 at 8-10.]  The hours summary spreadsheet claims 39.7 hours

7   worked for a total of $17,781 for the month of May and 19.9 hours worked for a

8   total of $8,005.50 for the month of June.  [Doc. No. 62-4 at 8.]  The invoice

9   summary listing all the activities performed during this two month service period

10  lumps together both relevant counterclaim-related entries ("finalize and serve Rule

11  11 motion") and potentially irrelevant entries ("report hearing to MKT" and

12  "discovery document review and preparation").  [Doc. No. 62-4 at 10.]  There is no

13  information as to which attorney listed on the hours summary spreadsheet, [Doc.

14  No. 62-4 at 8], performed which tasks and for how long.  Further, AntiCancer

15  moved to dismiss its counterclaims on May 30, 2013.  [Doc. No. 55-1.]  Yet, due to

16  the insufficiency of the materials submitted (*i.e.*, a one paragraph description for a

17  two month time period), the Court cannot assess the reasonableness of work

18  performed before and after this key date.  [*See* Doc. No. 62-4 at 8.]

19       As another example, invoice number "12I014" (corresponding to March

20  2012) claims 16.5 hours worked for a total of $5,190, with the very broad

21  description of "attention to invalidity contentions; prior art search; further

22  prosecution file search and review re invalidity contentions; correspondence with

23  MKT regarding the above."  [Doc. No. 62-4 at 8-9.]  Mauna Kea sought a

24  determination of invalidity of AntiCancer's patents in its Complaint for Declaratory

25  Judgment, before AntiCancer asserted any counterclaims.  These fees are not related

26  to defending the "exceptional case" of AntiCancer's counterclaims, and are

27  therefore inappropriate to include in an award of attorney fees.  Additionally, as

28  mentioned above, the summary nature of the hours/invoice precludes the Court from

1 being able to evaluate the reasonableness of the work performed.

2      Although Mauna Kea offers to provide the Court with actual invoices under

3 seal, at the Court's request, the offer is deficient for at least two reasons: (1) that,

4 absent unusual circumstances, disclosing detailed time records does not violate the

5 attorney-client privilege; and (2) such an offer of supplying evidence later does not

6 fulfill the current burden of justifying reasonable attorney fees. *See Avgoustis v.*

7 *Shinseki*, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011); *see also In re Wash. Pub. Power*

8 *Supply Sys. Sec. Litig.*, 19 F.3d at 1305-06. Mauna Kea has not claimed unusual

9 circumstances as to why it needs to file billing information under seal. The Court

10 declines to invite untimely record keeping submissions or belated explanations for

11 Mauna Kea's failure to fulfill its current burden. Mauna Kea has presented the

12 Court with insufficient hours/invoice summary documents to determine the

13 reasonableness of the work performed. The Court has no way of determining an

14 appropriate amount of fees.

15      Although this case is "exceptional" under 35 U.S.C. § 285, since Mauna Kea

16 has failed to meet its burden to justify reasonable attorney fees relating to

17 AntiCancer's objectively baseless counterclaims, the Court **DENIES** the motion.

18 **III.   Conclusion**

19      In light of the foregoing, the Court **DENIES** Defendants' motion for attorney

20 fees under 35 U.S.C. § 285.  [Doc. No. 62.]

21

22 DATED:  March 12, 2014

23

24 _____

**CATHY ANN BENCIVENGO**
United States District Judge

25

26

27

28

AppealFC,CLOSED,ENE,NON-COMPLIANCE,PROTO

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:11-cv-01407-CAB-JMA

| | |
|---|---|
| Mauna Kea Technologies v. Anticancer, Inc. | Date Filed: 06/27/2011 |
| Assigned to: Judge Cathy Ann Bencivengo | Date Terminated: 07/29/2013 |
| Referred to: Magistrate Judge Jan M. Adler | Jury Demand: Plaintiff |
| Case in other court: USCA Federal Circuit, 14-01412 | Nature of Suit: 830 Patent |
| Cause: 35:145 Patent Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**Mauna Kea Technologies**                  represented by **Douglas V. Rigler**
Young and Thompson
209 Madison Street
Suite 500
Alexandria, VA 22205
(703) 521-2297
Fax: (703) 521-8231
Email: drigler@young-thompson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey M. Goehring**
Young & Thompson
209 Madison Street
Suite 500
Alexandria, VA 22314
(703) 521-2297
Fax: (703) 685-0573
Email: jgoehring@young-thompson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Anticancer, Inc.**                  represented by **Matthew D. Valenti**
Anticancer, Inc.
7917 Ostrow Street
San Diego, CA 92111

A014

(858) 654-2555
Fax: (858) 268-4175
Email: mattvalenti@anticancer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Anticancer, Inc.**                    represented by **Matthew D. Valenti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Mauna Kea Technologies**              represented by **Douglas V. Rigler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey M. Goehring**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/27/2011 | 1 | COMPLAINT with Jury Demand against Anticancer, Inc. (Filing fee $350 receipt number 0974-3702232.), filed by Mauna Kea Technologies.<br><br>The new case number is 3:11-cv-1407-AJB-JMA. Judge Anthony J. Battaglia and Magistrate Judge Jan M. Adler are assigned to the case. (Goehring, Jeffrey)(rlu) (mam). (Main Document 1 replaced on 6/27/2011) (rlu). (Entered: 06/27/2011) |
| 06/27/2011 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (rlu)(mam). (Entered: 06/27/2011) |
| 06/27/2011 | 3 | Corporate Disclosure Statement by Mauna Kea Technologies. (rlu) (mam). (Entered: 06/27/2011) |
| 06/27/2011 | 4 | REPORT on the filing or determination of an action regarding patent and/or trademark number(s) *6,232,523*, *6,235,967*, *6,235,968*, *6,251,384*, *6,649,159*, *6,759,038*, *6,905,831* cc:USPTO (rlu) (mam). (Entered: 06/27/2011) |

CM/ECF - casd

| 08/02/2011 | 5 | Joint MOTION for Extension of Time to File Answer *or Otherwise Respond to Complaint* by Anticancer, Inc. (Valenti, Matthew) (cge). (Entered: 08/02/2011) |
|---|---|---|
| 08/03/2011 | 6 | SUMMONS Returned Executed by Mauna Kea Technologies. Anticancer, Inc. served on 7/12/2011, answer due 8/2/2011. (Goehring, Jeffrey) (cge). (Entered: 08/03/2011) |
| 08/03/2011 | 7 | Amended Corporate Disclosure Statement by Mauna Kea Technologies. (Goehring, Jeffrey) Modified text to include 'amended' (cge). (Entered: 08/03/2011) |
| 08/22/2011 | 8 | MOTION to Dismiss *Complaint for Lack of Subject Matter Jurisdiction* by Anticancer, Inc. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Valenti, Matthew) (cge). (Entered: 08/22/2011) |
| 08/22/2011 | 9 | NOTICE of Hearing on Motion 8 MOTION to Dismiss Complaint for Lack of Subject Matter Jurisdiction: Motion Hearing set for 11/10/2011 at 1:30 PM in Courtroom 12 before Judge Anthony J. Battaglia. Oppositions are due by September 7, 2011; Replies are due by September 14, 2011. No sur-replies shall be filed without prior leave of Court. (sc) (Entered: 08/22/2011) |
| 09/07/2011 | 10 | RESPONSE in Opposition re 8 MOTION to Dismiss *Complaint for Lack of Subject Matter Jurisdiction* filed by Mauna Kea Technologies. (Attachments: # 1 Exhibit Exhibit 1)(Goehring, Jeffrey) No hearing date and time (cge). (Entered: 09/07/2011) |
| 09/12/2011 | 11 | ORDER by Judge Anthony J. Battaglia, finding as moot 5 Motion for Extension of Time to Answer. (ymm) (Entered: 09/12/2011) |
| 09/14/2011 | 12 | REPLY to Response to Motion re 8 MOTION to Dismiss *Complaint for Lack of Subject Matter Jurisdiction* filed by Anticancer, Inc. (Valenti, Matthew)(cge). (Entered: 09/14/2011) |
| 09/29/2011 | 13 | PRO HAC VICE APPOINTED: Douglas V. Rigler appearing for Plaintiff Mauna Kea Technologies (All non-registered users served via U.S. Mail Service) (cge)(jrd) (Entered: 09/30/2011) |
| 11/09/2011 | 14 | ORDER denying 8 Motion to Dismiss. Signed by Judge Anthony J. Battaglia on 11/09/11. (All non-registered users served via U.S. Mail Service)(cge) (jrl). (Entered: 11/09/2011) |
| 11/23/2011 | 15 | ANSWER with jury demand to 1 Complaint, with Jury Demand, COUNTERCLAIM against Mauna Kea Technologies by Anticancer, Inc. (Attachments: # 1 Exhibit)(Valenti, Matthew) (cge). (Entered: 11/23/2011) |
| 11/23/2011 | 16 | NOTICE by Anticancer, Inc. *of Related Case* (Valenti, Matthew). (cge). (Entered: 11/23/2011) |
| 12/01/2011 | 17 | NOTICE AND ORDER for Early Neutral Evaluation Conference. Early Neutral Evaluation set for 1/19/2012 10:00 AM in the chambers of Magistrate Judge Jan M. Adler. Signed by Magistrate Judge Jan M. Adler on 12/01/11.(All non-registered users served via U.S. Mail Service)(cge)(jrd) (Entered: 12/02/2011) |

A016

| 12/05/2011 | 18 | ORDER Rescheduling Early Neutral Evaluation Conference previous set for 1/19/12 to 1/31/2012 10:00 AM before Magistrate Judge Jan M. Adler. Signed by Magistrate Judge Jan M. Adler on 12/05/11.(All non-registered users served via U.S. Mail Service) (cge)(jrd) (Entered: 12/05/2011) |
| --- | --- | --- |
| 12/16/2011 | 19 | ANSWER to 15 Answer to Complaint, Counterclaim by Mauna Kea Technologies. (Goehring, Jeffrey)(cge). (Entered: 12/16/2011) |
| 12/16/2011 | 20 | MOTION to Dismiss by Mauna Kea Technologies. (Attachments: # 1 Memo of Points and Authorities)(Goehring, Jeffrey) (cge). (Entered: 12/16/2011) |
| 12/19/2011 | 21 | ORDER by Judge Battaglia, Set briefing schedule as to 20 MOTION to Dismiss. Responses due by 1/13/2012, Replies due by 1/25/2012, no sur-replies will be filed. Motion Hearing set for 4/6/2012 at 1:30 PM in Courtroom 12 before Judge Anthony J. Battaglia.(sc) (Entered: 12/19/2011) |
| 01/13/2012 | 22 | RESPONSE in Opposition re 20 MOTION to Dismiss filed by Anticancer, Inc. (Valenti, Matthew) (cge). (Entered: 01/13/2012) |
| 01/25/2012 | 23 | REPLY to Response to Motion re 20 MOTION to Dismiss filed by Mauna Kea Technologies. (Goehring, Jeffrey)(cge). (Entered: 01/25/2012) |
| 01/31/2012 | 24 | Minute Entry for proceedings held before Magistrate Judge Mitchell D. Dembin: Early Neutral Evaluation Conference held on 1/31/2012 by Magistrate Judge Dembin in Magistrate Judge Adler's absence. (Plaintiff Attorney Douglas Rigler). (Defendant Attorney Matt Valenti). Court to issue written order. (cdc) (Entered: 01/31/2012) |
| 02/02/2012 | 25 | SCHEDULING ORDER: Early Neutral Evaluation Conference held on January 31, 2012. (Telephonic Case Management Conference set for 5/9/2012 09:30 AM before Magistrate Judge Jan M. Adler. Claims Construction Hearing set for 8/23/2012 09:00 AM before Judge Anthony J. Battaglia. Telephonic Case Management Conference set for 10/22/2012 09:30 AM before Magistrate Judge Jan M. Adler). Signed by Magistrate Judge Jan M. Adler on 2/2/12.(All non-registered users served via U.S. Mail Service) (cge)(jrd) (Entered: 02/02/2012) |
| 04/03/2012 | 26 | ORDER by Judge Battaglia, Motions Submitted 20 MOTION to Dismiss. The Court finds this motion suitable for determination on the papers and without oral argument in accordance with Civil Local Rule 7.1.d.1. Accordingly, no appearances are required and the motion will be deemed submitted as of this date. 4/6/12 Motion hearing vacated.(sc) (Entered: 04/03/2012) |
| 04/05/2012 | 27 | Joint MOTION to Continue *Patent Local Rules Schedule* by Mauna Kea Technologies. (Goehring, Jeffrey) (cge). (Entered: 04/05/2012) |
| 04/09/2012 | 28 | Minute Entry by Magistrate Judge Jan M. Adler: Case Management Conference set for 4/16/2012 10:00 AM before Magistrate Judge Jan M. Adler to discuss Joint Motion to Modify Schedule filed on 4/5/2012. Counsel for each party to participate by telephone. The Court will initiate the conference call. (cdc) (Entered: 04/09/2012) |
| 04/16/2012 | 29 | Minute Entry for proceedings held before Magistrate Judge Jan M. Adler: Case |

| | | Management Conference held on 4/16/2012. (Plaintiff Attorney Douglas Rigler). (Defendant Attorney Matt Valenti). (cdc) (Entered: 04/16/2012) |
|---|---|---|
| 04/17/2012 | [30](#) | ORDER Granting 27 Joint Motion to Modify Schedule Regarding Patent Disclosures; Amended Scheduling Order. Telephonic Case Management Conference set for 7/19/2012 09:30 AM before Magistrate Judge Jan M. Adler. Claims Construction Hearing set for 11/1/2012 09:00 AM before Judge Anthony J. Battaglia. Telephonic Case Management Conference set for 1/8/2013 09:30 AM before Magistrate Judge Jan M. Adler. Signed by Magistrate Judge Jan M. Adler on 04/17/12. (cge)(jrd) (Entered: 04/17/2012) |
| 07/02/2012 | [31](#) | ORDER Denying 20 Motion to Dismiss. Signed by Judge Anthony J. Battaglia on 07/02/2012. (yeb)(jrd) (Entered: 07/02/2012) |
| 07/19/2012 | 32 | Minute Entry for proceedings held before Magistrate Judge Jan M. Adler: Case Management Conference scheduled for 7/19/2012 did not go forward due to Defendant's counsel unavailability at the scheduled time of the conference. As the Court subsequently received a status report from each party, the Court will not reschedule the Case Management Conference. (Plaintiff Attorneys Jeffrey Goehring, Douglas Rigler). (Defendant Attorney Matt Valenti). (no document attached) (cdc) (Entered: 07/19/2012) |
| 08/07/2012 | [33](#) | JOINT HEARING STATEMENT by Mauna Kea Technologies. (Goehring, Jeffrey) (cge). (Entered: 08/07/2012) |
| 08/07/2012 | [34](#) | JOINT CLAIM CONSTRUCTION CHART by Mauna Kea Technologies. (Goehring, Jeffrey)(cge). (Entered: 08/07/2012) |
| 08/07/2012 | [35](#) | JOINT CLAIM CONSTRUCTION WORKSHEET by Mauna Kea Technologies. (Goehring, Jeffrey)(cge). (Entered: 08/07/2012) |
| 09/20/2012 | [36](#) | CLAIM CONSTRUCTION BRIEF by Mauna Kea Technologies. (Attachments: # [1](#) Declaration of Jeffrey Goehring, # [2](#) Exhibit 1, # [3](#) Exhibit 2, # [4](#) Exhibit 3, # [5](#) Exhibit 4, # [6](#) Exhibit 5, # [7](#) Exhibit 6, # [8](#) Exhibit 7)(Goehring, Jeffrey) (cge). (Entered: 09/20/2012) |
| 09/20/2012 | [37](#) | CLAIM CONSTRUCTION BRIEF by Anticancer, Inc. (Attachments: # [1](#) Exhibit) (Valenti, Matthew) (cge). (Entered: 09/20/2012) |
| 10/01/2012 | 38 | NOTICE of Hearing on Motion-Time Change. The time of the Claims Construction hearing is hereby changed from 9:00 a.m. to 10:00 a.m. on 11/1/2012, in Courtroom 12 before Judge Anthony J. Battaglia. (no document attached) (sc) (Entered: 10/01/2012) |
| 10/04/2012 | [39](#) | RESPONSE TO CLAIM CONSTRUCTION BRIEF by Mauna Kea Technologies. (Attachments: # [1](#) Exhibit Exhibits 8-11)(Goehring, Jeffrey) (cge). (Entered: 10/04/2012) |
| 10/04/2012 | [40](#) | RESPONSE TO CLAIM CONSTRUCTION BRIEF by Anticancer, Inc. (Attachments: # [1](#) Exhibit)(Valenti, Matthew) (cge). (Entered: 10/04/2012) |
| 10/31/2012 | 41 | ORDER by Judge Battaglia, The Claims Construction Hearing is continued from November 1, 2012 to January 17, 2013 at 1:00 PM in Courtroom 12 before Judge Anthony J. Battaglia.(no document attached) (sc) (Entered: 10/31/2012) |

| 10/31/2012 | 42 | Minute Entry by Magistrate Judge Jan M. Adler: Case Management Conference set for 1/8/2013 is rescheduled for 3/18/2013 09:30 AM before Magistrate Judge Jan M. Adler. Conference will be held by telephone. The Court will initiate the conference call. (no document attached) (cdc) (Entered: 10/31/2012) |
|---|---|---|
| 11/13/2012 | 43 | TRANSFER ORDER: Case transferred from the calendar of Judge Anthony J. Battaglia to the calendar of Judge Cathy Ann Bencivengo for all further proceedings. All conferences or hearing dates now set before Judge Battaglia are now set before Judge Bencivengo until further order from Judge Bencivengo. Judge Anthony J. Battaglia is no longer assigned to case and Judge Cathy Ann Bencivengo is now assigned to the case. The new case number is 11cv1407 CAB (JMA). Signed by Judge Anthony J. Battaglia on 11/9/12. (cge) (Entered: 11/15/2012) |
| 11/16/2012 | 44 | MINUTE ORDER: The Court hereby RESETS the Claim Construction Hearing for Thursday, February 28, 2013 at 9:00 AM in Courtroom 2 before Hon. Cathy Ann Bencivengo. Accordingly, the Court hereby VACATES the Order (doc # 41 ) Setting the Claim Construction Hearing for January 2013. (yeb)(jrd) (Entered: 11/16/2012) |
| 02/11/2013 | 45 | Ex Parte MOTION to Continue *Markman Hearing* by Anticancer, Inc. (Attachments: # 1 Declaration, # 2 Declaration)(Valenti, Matthew)(yeb). (Entered: 02/11/2013) |
| 02/12/2013 | 46 | RESPONSE in Opposition re 45 Ex Parte MOTION to Continue *Markman Hearing* filed by Mauna Kea Technologies. (Goehring, Jeffrey) (yeb). (Entered: 02/12/2013) |
| 02/13/2013 | 47 | NOTICE of Non-Compliance with Local Rule 5.1(a) Legibility, re 46 Response in Opposition to Motion filed by Mauna Kea Technologies (ag) (cap). (Entered: 02/13/2013) |
| 02/13/2013 | 48 | ORDER Granting 45 Ex Parte Motion to Continue Markman Hearing. The Court resets the Markman Hearing for 4/29/2013 at 10:00 AM in Courtroom 4C before Judge Cathy Ann Bencivengo. The Court vacates the Order 44 setting the hearing for 02/28/2013. Signed by Judge Cathy Ann Bencivengo on 02/13/2013. (ag)(jrd) (Entered: 02/13/2013) |
| 02/13/2013 | 49 | Minute Entry by Magistrate Judge Jan M. Adler: In view of the continuance of the Markman hearing to 4/29/2013, the Case Management Conference set for 3/18/2013 before Magistrate Judge Adler is continued to 5/21/2013 09:30 AM. Counsel for each party shall participate in the conference by telephone. The Court will initiate the conference call. (no document attached) (cdc) (Entered: 02/13/2013) |
| 03/19/2013 | 50 | Joint MOTION for Protective Order by Mauna Kea Technologies. (Goehring, Jeffrey) (yeb). (Entered: 03/19/2013) |
| 03/21/2013 | 51 | ORDER Granting 50 Joint Motion for Entry of Agreed Protective Order. Protective Order. Signed by Magistrate Judge Jan M. Adler on 03/21/2013. (yeb)(jrd) (Entered: 03/21/2013) |
| 04/29/2013 | 52 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Claims Contruction Hearing held on 4/29/2013. Written order from the court to follow.(Court |

| | | Reporter Mauralee Ramirez). (Plaintiff Attorney Jeffrey Goehring and Douglas Rigler). (Defendant Attorney Matthew Valenti). (Robert Hoffman, president of Anticancer, Inc.). (no document attached) (lmh) (Entered: 04/29/2013) |
|---|---|---|
| 05/17/2013 | 53 | Minute Entry by Magistrate Judge Jan M. Adler: The Court hereby vacates the Case Management Conference set for 5/21/2013 9:30 AM. The conference will be reset after a claim construction ruling has been issued. (no document attached) (cdc) (Entered: 05/17/2013) |
| 05/30/2013 | 54 | NOTICE by Anticancer, Inc. re 15 Answer to Complaint, Counterclaim *Notice of Withdrawal of Counterclaims* (Valenti, Matthew) (yeb). (Entered: 05/30/2013) |
| 05/30/2013 | 55 | MOTION to Dismiss *AntiCancer's counterclaims* by Anticancer, Inc.. (Attachments: # 1 Memo of Points and Authorities, # 2 Exhibit 1, # 3 Exhibit 2)(Valenti, Matthew) (yeb). (Entered: 05/30/2013) |
| 06/14/2013 | 56 | NON Opposition re 55 MOTION to Dismiss *AntiCancer's counterclaims And Request for Status Conference* filed by Mauna Kea Technologies. (Goehring, Jeffrey) (yeb). (Entered: 06/14/2013) |
| 06/17/2013 | 57 | MINUTE ORDER: The Court hereby sets a Status Conference to address the issues raised by Mauna Kea Technologies recent filing [Doc. No. 56 ] for Thursday, June 20, 2013 at 2:00 PM in Courtroom 4C before the Honorable Cathy Ann Bencivengo. Counsel may appear telephonically, but should contact Chambers in advance to notify the Court of their intent to do so.(yeb) (Entered: 06/17/2013) |
| 06/18/2013 | 58 | RESPONSE re 56 Non Opposition to Motion *Response* filed by Anticancer, Inc.. (Valenti, Matthew) (yeb). (Entered: 06/18/2013) |
| 06/20/2013 | 59 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Telephonic Status Conference held on 6/20/2013. The court vacates all pending dates currently set on the docket. The parties have until 7/19/2013 to file a joint motion to dismiss or joint filing regarding a motion to dismiss.(Court Reporter/ECR Mauralee Ramirez). (Plaintiff Attorney Jeffrey Goehring and Douglas Rigler). (Defendant Attorney Matthew Valenti). (no document attached) (lmh) (Entered: 06/21/2013) |
| 07/19/2013 | 60 | Joint MOTION to Dismiss *, For Leave to File AntiCancer, Inc.'s Amended Answer; and for Declaration of Non-Infringement By Mauna Kea Technologies* by Mauna Kea Technologies. (Attachments: # 1 Exhibit Amended Answer)(Goehring, Jeffrey) (yeb). (Entered: 07/19/2013) |
| 07/29/2013 | 61 | ORDER granting 60 Joint Motion to Dismiss. The Court hereby dismisses with prejudice AntiCancers counterclaims for direct, contributory, and inducement of infringement; grants leave to file AntiCancers Amended Answer, which was attached to the Joint Motion as Exhibit 1, as docket entry 55-2; and declares non-infringement by Mauna Kea Technologies. This case is closed. Signed by Judge Cathy Ann Bencivengo on 07/29/2013. (yeb) (av1). (Entered: 07/29/2013) |
| 08/09/2013 | 62 | MOTION for Attorney Fees by Mauna Kea Technologies. (Attachments: # 1 Memo of |

| | | |
|---|---|---|
| | | Points and Authorities, # [2] Exhibit 1-11 for Memorandum of Points and Authorities, # [3] Declaration of Jeffrey M. Goehring, # [4] Exhibit A-D for Declaration of Jeffrey M. Goehring, # [5] Proof of Service)(Goehring, Jeffrey) (yeb). (Entered: 08/09/2013) |
| 09/09/2013 | [63] | REPORT of Patent and Trademark Closing, regarding patent and/or trademark number(s) 6,232,523; 6,759,038; 6,235,967; 6,905,831; 6,235,968; 6,251,384 and 6,649,159, re [61] Order on Motion to Dismiss. cc:USPTO (ag) (av1). (Entered: 09/09/2013) |
| 10/03/2013 | [64] | RESPONSE in Opposition re [62] MOTION for Attorney Fees filed by Anticancer, Inc.. (Attachments: # [1] Declaration of Matt Valenti, # [2] Exhibit 1-8)(Valenti, Matthew)(yeb). (Entered: 10/03/2013) |
| 10/10/2013 | [65] | REPLY to Response to Motion re [62] MOTION for Attorney Fees *and Exhibits E - H* filed by Mauna Kea Technologies. (Attachments: # [1] Exhibit E - H)(Goehring, Jeffrey) (yeb). (Entered: 10/10/2013) |
| 10/15/2013 | [66] | MINUTE ORDER: Currently on calendar for Thursday, October 17, 2013 at 2:00 p.m. is a hearing on Mauna Kea Technologies Motion for Attorneys Fees [62] . The Court finds this motion suitable for decision without oral argument. Accordingly, the hearing on this motion is taken off calendar and these matters are taken under submission. No appearances will be required in these matters on Thursday, October 17, 2013.(yeb) (Entered: 10/15/2013) |
| 03/07/2014 | [67] | NOTICE by Mauna Kea Technologies re [62] MOTION for Attorney Fees *Notice of Supplemental Authority* (Attachments: # [1] Supplement Kilopass Tech., Inc. v. Sidense Corp., 738 F.3d 1302 (Fed. Cir. 2013))(Goehring, Jeffrey) (vam). (Entered: 03/07/2014) |
| 03/12/2014 | [68] | ORDER Denying Mauna Kea Technologies' Motion for Attorney Fees Under 35 U.S.C. § 285 (Doc. No. [62] ). Signed by Judge Cathy Ann Bencivengo on 3/12/2014. (vam) (jrd) (Entered: 03/12/2014) |
| 03/28/2014 | [69] | NOTICE OF APPEAL to the Federal Circuit as to [68] Order Denying Mauna Kea Technologies' Motion for Attorney Fees Under 35 U.S.C. § 285, by Mauna Kea Technologies. (Filing fee $ 505 receipt number 0974-6889362.) (Goehring, Jeffrey). Modified on 3/28/2014 to edit docket text re Order being appealed. The Notice of Appeal will be electronically transmitted to the US Court of Appeals for the Federal Circuit. (akr). (Entered: 03/28/2014) |
| 04/11/2014 | [70] | TRANSCRIPT DESIGNATION AND ORDERING FORM by Mauna Kea Technologies: No transcripts designated re [69] Notice of Appeal to Federal Circuit. (Goehring, Jeffrey). Modified on 4/11/2014 to add text noting that no transcripts are designated. (akr). (Entered: 04/11/2014) |
| 04/15/2014 | [71] | USCA Case Number 14-1412 for [69] Notice of Appeal to Federal Circuit, filed by Mauna Kea Technologies. (akr) (Entered: 04/15/2014) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/24/2014 07:14:22 | | | |
| PACER Login: | yt0040 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:11-cv-01407-CAB-JMA |
| Billable Pages: | 7 | Cost: | 0.70 |

**A022**

1

YOUNG & THOMPSON
Jeffrey M. Goehring, 233002
jgoehring@young-thompson.com
Douglas V. Rigler
drigler@young-thompson.com
Jeffrey R. Snay
jsnay@young-thompson.com
209 Madison Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 521-2297
Facsimile: (703) 685-0573

**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT CALIFORNIA**

MAUNA KEA TECHNOLOGIES,

                           Plaintiff,

            v.

ANTICANCER, INC.

                           Defendant.

Civil Action No. __'11 CV 1407 AJB  JMA__

DEMAND FOR JURY TRIAL

**COMPLAINT FOR DECLARATORY JUDGMENT**
**OF PATENT NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY**

     Plaintiff Mauna Kea Technologies ("Mauna Kea") for its Complaint against

defendant Anticancer, Inc. ("AntiCancer") alleges as follows:

**THE PARTIES**

1.     Plaintiff Mauna Kea Technologies is a corporation organized and existing under the

laws of France with its principal place of business at 9 rue d'Enghien, 75010 Paris, France.

2.     Defendant AntiCancer, Inc. is a California State corporation with its principal place

of business at 7917 Ostrow St., San Diego, CA 92111.

**NATURE OF THE ACTION**

3.     This is a declaratory judgment action seeking a determination that Mauna Kea does

not infringe any claim of U.S. Patent Nos. 6,232,523; 6,235,967; 6,235,968; 6,251,384;

6,649,159; 6,759,038; and 6,905,831 ("Patents-In-Suit").

A023

4.     This is a declaratory judgment action seeking a determination that one or more of the claims of the Patents-In-Suit is invalid.

5.     Upon information and belief, AntiCancer is the owner by assignment of each of the Patents-in-Suit.

## JURISDICTION AND VENUE

6.     This is a complaint for declaratory relief under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*

7.     Mauna Kea seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

8.     This Court has subject matter jurisdiction under 35 U.S.C. §§ 1331 and 1338(a).

9.     Venue is proper within this district pursuant to 28 U.S.C. § 1391(b) and (c).

10.     This Court has personal jurisdiction over AntiCancer because AntiCancer has its principal place of business located within this district.

## THE SUBSTANTIAL CONTROVERSY BETWEEN THE PARTIES

11.     AntiCancer has created an actual case or controversy through repeated assertions that Mauna Kea must obtain a license under at least six patents identified by AntiCancer as well as other unidentified AntiCancer patents.

12.     Commencing in January 2006, AntiCancer, through its president, Robert Hoffman, asserted in a letter to Mauna Kea that it was necessary for Mauna Kea to have a license from AntiCancer in order to sell Mauna Kea's CellVizio imaging device.  AntiCancer's letter asserted the following U.S. Patents: No. 6,232,523; No. 6,235,968; No. 6,251,384; No. 6,649,159; No. 6,759,038; No. 6,905,831; European Patent 0437488; as well as unidentified "pending world-wide patents."  AntiCancer further asserted that the patents are directed in unlimited scope and breadth to "all other applications of In Vivo imaging with fluorescent proteins."  Although U.S. patent No. 6,235,967 was not specifically asserted in the January 2006 letter, it is part of the same family of patents as the others and covers the same general technology.

Young & Thompson
209 Madison St., Suite 500
Alexandria, AV 22314
(703) 521-2297

**A024**

13.     In response to a request by U.S. counsel for Mauna Kea for specificity with regard to the demand that Mauna Kea take a license, Dr. Hoffman wrote directly to the President of Mauna Kea on March 22, 2006, without copying Mauna Kea's U.S. counsel, reiterating AntiCancer's assertion that the specified patents and unidentified world-wide patent applications required Mauna Kea to take a license from AntiCancer.

14.     Dr. Hoffman's letter of March 22, 2006 refused Mauna Kea's request for greater specificity but stated that the patents identified in his earlier letter of January 2006 "clearly cover the Cell-Vizio product and its applications."

15.     On November 22, 2010, Mauna Kea's U.S. counsel received a letter from Dan Lawton, an attorney who introduced himself as AntiCancer's legal representative.  In his letter, Mr. Lawton demanded answers to a set of ten questions in the nature of interrogatories or requests for admissions pursuant to Rule 36 of the Federal Rules of Civil Procedure. Although the letter stated that it was not the purpose of the letter to accuse Mauna Kea of any infringement of any patent, the letter set a deadline of December 3, 2010, for a "substantive" reply.  Mr. Lawton's law firm has filed at least three actions in this Court accusing other companies of infringing the same patents which AntiCancer is asserting against Mauna Kea.

16.     On December 6, 2010, Mauna Kea filed an action for declaratory judgment against AntiCancer in the U.S. District Court for the Eastern District of Pennsylvania (the "Pennsylvania Action").  The Pennsylvania Action sought substantially the same relief as sought in this action.  Personal jurisdiction was based on AntiCancer's partnership, licensing, and publishing activity in Pennsylvania, as well as AntiCancer's patent enforcement activity directed toward Mauna Kea Technologies, Inc., the U.S. subsidiary of plaintiff Mauna Kea Technologies and a corporation with its principal place of business in Pennsylvania.

17.     AntiCancer moved to dismiss the Pennsylvania Action for lack of subject matter jurisdiction.  AntiCancer did not move to transfer the Pennsylvania Action to this Court or any other court.

18.     The Pennsylvania Action was dismissed for lack of personal jurisdiction on May 5, 2011.

**COUNT I**

**(DECLARATORY JUDGMENT OF UNENFORCEABILITY**

**DUE TO LACHES AND ESTOPPEL)**

19.     Mauna Kea realleges and incorporates herein the allegations of the preceding paragraphs of this Complaint as fully set forth herein.

20.     AntiCancer's delay in asserting its patents after its 2006 accusations of infringement is unreasonable and unexcused and has misled Mauna Kea to reasonably believe that AntiCancer does not intend to assert its patents against Mauna Kea.

21.     AntiCancer's failure to assert its patents after its letter of November 22, 2010, and its failure to assert its patents in response to Mauna Kea's Pennsylvania Action, constitutes unreasonable and unexcused delay and has misled Mauna Kea to reasonably believe that AntiCancer does not intend to assert its patents against Mauna Kea.

22.     Mauna Kea has detrimentally relied on AntiCancer's delay, failure to respond to Mauna Kea's requests, and failure to assert its patents in the Pennsylvania Action.

23.     AntiCancer's actions in 2006 and its delay and failure to act since that time have been economically and evidentially prejudicial to Mauna Kea because they cause Mauna Kea to operate in an atmosphere of business uncertainty.

24.     AntiCancer is barred in whole or in part from asserting the Patents-In-Suit, or otherwise obtaining damages for any alleged infringement of the Patents-In-Suit, under the doctrine of laches and/or estoppel.

25.     As a result of the acts described in the foregoing paragraphs, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

26.    A judicial declaration is necessary and appropriate so that Mauna Kea may ascertain its rights regarding AntiCancer's ability to enforce the Patents-In-Suit or otherwise recover or obtain relief for any alleged infringement of the Patents-In-Suit.

## COUNT II

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

27.    Mauna Kea realleges and incorporates herein the allegations of the preceding paragraphs of this Complaint as fully set forth herein.

28.    Mauna Kea has not directly infringed, induced infringement, or contributed to infringement of any claim of the Patents-In-Suit either directly or under the doctrine of equivalents.

29.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

30.    A judicial declaration is necessary and appropriate so that Mauna Kea may ascertain its rights regarding patent Nos. 6,232,523; 6,235,967; 6,235,968; 6,251,384; 6,649,159; 6,759,038; and 6,905,831.

31.    Mauna Kea is entitled to a declaratory judgment that it has not infringed and does not infringe any claim of patent Nos. 6,232,523; 6,235,967; 6,235,968; 6,251,384; 6,649,159; 6,759,038; 6,905,831.

## COUNT III

### (DECLARATORY JUDGEMNT OF INVALDITITY)

32.    Mauna Kea realleges and incorporates herein the allegations of the preceding paragraphs of this Complaint as fully set forth herein.

33.     One or more claim of the Patents-In-Suit is invalid for failing to comply with the conditions of patentability set forth in 35 U.S.C. §§ 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto, including without limitation at least U.S. Patent Nos. 6,251,384; 6,649,159; and 6759,038.

34.     Mauna Kea is entitled to a declaratory judgment that one or more of the claims in the Patents-In-Suit are invalid.

### RELIEF REQUESTED

        WHEREFORE, plaintiff Mauna Kea Technologies requests this Court to enter judgment against defendant AntiCancer, Inc. and any parent corporation, subsidiary, affiliate, agent, employees, and all persons in active concert or participation with AntiCancer and to grant the following relief:

    a)  A declaration that Mauna Kea has not infringed, either directly or indirectly, any claim of the Patents-In-Suit, either literally or under the doctrine of equivalents;

    b)  A declaration that the claims of the Patents-In-Suit are invalid;

    c)  A declaration that any past damages claimed by AntiCancer are barred by the doctrine of laches.

    d)  A declaration that enforcement of the Patents-In-Suit, and all relief or recovery sought by AntiCancer regarding the Patents-In-Suit, are barred by the doctrine of estoppel;

    e)  An award of Mauna Kea's fees and costs, including attorney's fees, pursuant to 35 U.S.C. § 285; and

    f)  Such other relief as may be just and equitable.

June 27, 2011

                        YOUNG & THOMPSON

                        By:___/s/ Jeffrey M. Goehring_____
                            Jeffrey M. Goehring, 233002

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

11 CV 1407 AJB JMA

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MAUNA KEA TECHNOLOGIES

**(b)** County of Residence of First Listed Plaintiff    Outside US
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jeffrey M. Goehring, Young & Thompson, 209 Madison St., Suite 500, Alexandria, VA 22314, 703-521-2297

## DEFENDANTS

ANTICANCER, INC.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ❏ 1 U.S. Government Plaintiff
- ❏ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ❏ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane    ❏ 362 Personal Injury - | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product     Med. Malpractice | ❏ 625 Drug Related Seizure |     28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument |     Liability    ❏ 365 Personal Injury - |     of Property 21 USC 881 |  | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &     Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 460 Deportation |
|   & Enforcement of Judgment |     Slander    ❏ 368 Asbestos Personal | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'     Injury Product | ❏ 650 Airline Regs. | ☒ 830 Patent |     Corrupt Organizations |
| ❏ 152 Recovery of Defaulted |     Liability     Liability | ❏ 660 Occupational | ❏ 840 Trademark | ❏ 480 Consumer Credit |
|     Student Loans | ❏ 340 Marine |     Safety/Health |  | ❏ 490 Cable/Sat TV |
|     (Excl. Veterans) | ❏ 345 Marine Product    **PERSONAL PROPERTY** | ❏ 690 Other | **SOCIAL SECURITY** | ❏ 810 Selective Service |
| ❏ 153 Recovery of Overpayment |     Liability    ❏ 370 Other Fraud | **LABOR** | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ |
|     of Veteran's Benefits | ❏ 350 Motor Vehicle    ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards | ❏ 862 Black Lung (923) |     Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle    ❏ 380 Other Personal |     Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 875 Customer Challenge |
| ❏ 190 Other Contract |     Product Liability     Property Damage | ❏ 720 Labor/Mgmt. Relations | ❏ 864 SSID Title XVI |     12 USC 3410 |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal    ❏ 385 Property Damage | ❏ 730 Labor/Mgmt.Reporting | ❏ 865 RSI (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise |     Injury     Product Liability |   & Disclosure Act |  | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting    ❏ 510 Motions to Vacate | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 442 Employment     Sentence | ❏ 791 Empl. Ret. Inc. |     or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/    **Habeas Corpus:** |     Security Act | ❏ 871 IRS—Third Party | ❏ 895 Freedom of Information |
| ❏ 240 Torts to Land |     Accommodations    ❏ 530 General |  |     26 USC 7609 |     Act |
| ❏ 245 Tort Product Liability | ❏ 444 Welfare    ❏ 535 Death Penalty | **IMMIGRATION** |  | ❏ 900Appeal of Fee Determination |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -    ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application |  |     Under Equal Access |
|  |     Employment    ❏ 550 Civil Rights | ❏ 463 Habeas Corpus - |  |     to Justice |
|  | ❏ 446 Amer. w/Disabilities -    ❏ 555 Prison Condition |     Alien Detainee |  | ❏ 950 Constitutionality of |
|  |     Other | ❏ 465 Other Immigration |  |     State Statutes |
|  | ❏ 440 Other Civil Rights |     Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from another district (specify)
- ❏ 6 Multidistrict Litigation
- ❏ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. 1 et seq.

Brief description of cause:
Declaratory judgment of non-infringement, invalidity, and unenforceability of patents

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE      DOCKET NUMBER

DATE
06/27/2011

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jeffrey M. Goehring, 233002

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11  MAUNA KEA TECHNOLOGIES,          )   Civil No. 11cv1407 AJB (JMA)
                                     )
12             Plaintiff,            )   ORDER DENYING
    v.                               )   MOTION TO DISMISS
13                                   )
    ANTICANCER, INC.,                )   [Doc. No. 8]
14                                   )
               Defendants.           )
15  _____)

16      Plaintiff Mauna Kea Technologies ("MKT") brings this action against Defendant AntiCancer,

17  Inc. ("AntiCancer") for a declaratory judgment of non-infringement, invalidity, and unenforceability of

18  AntiCancer's seven patents. AntiCancer filed a motion to dismiss for lack of subject matter jurisdiction

19  [Doc. No. 8].  The Plaintiff filed an opposition [Doc. No. 10], and the Defendant filed a reply [Doc. No.

20  12]. The hearing set for November 10, 2011 at 1:30 p.m. before Judge Battaglia is hereby VACATED as

21  this motion is appropriate for submission on the papers without oral argument pursuant to Civil Local

22  Rule 7.1.d.1. Based upon the parties' moving papers and for the reasons set forth herein, the

23  Defendant's motion to dismiss [Doc. No. 8] is hereby DENIED.

24                            ***Background***

25      AntiCancer is a California corporation with its principal place of business in San Diego and

26  holds numerous patents covering in vivo green fluorescence protein ("GFP") imaging. MKT is a French

27  corporation with its principal place of business in Paris, France and sells the CellVizio imaging device.

28

1                                                    11cv1407

**A030**

1    MKT filed this Complaint for declaratory relief seeking a determination that MKT does not

2   infringe any claim of AntiCancer's U.S. Patent Nos. 6,232,523; 6,235,967; 6,235,968; 6,251,384;

3   6,649,159; 6,759,038; and 6,905,831 ("Patents-In-Suit").  MKT contends that AntiCancer created an

4   actual case or controversy through: 1) repeated assertions in correspondence between MKT and

5   AntiCancer, that MKT must obtain a license under at least six patents identified by AntiCancer, as well

6   as other unidentified AntiCancer patents; and 2) filing numerous actions in this Court accusing other

7   companies of infringing the same patents which AntiCancer is asserting against MKT.

8        *I. The Correspondence at Issue*

9    The communications MKT relies upon in bringing the instant action consist of four letters

10   between MKT and AntiCancer in 2006 and one letter in 2010.

11        *A. The 2006 Letters*

12    The correspondence begins with the January 17, 2006 letter from AntiCancer's founder and

13   CEO, Dr. Robert Hoffman, to Dr. Sacha Loisseau of MKT. [Doc. No. 8-3.] The letter specifically

14   identifies six patents as well as unspecified "pending world-wide patents" and alleges that "[i]t is clear"

15   that the "prime use" of the instruments sold and promoted by MKT is to practice the imaging techniques

16   claimed in AntiCancer's patents and pending applications.[1] The letter states, "Therefore, it is necessary

17   for MKT to have a license from AntiCancer to sell this instrument." The letter goes on to dictate

18   conditions for the demanded licenses, noting that the license will provide MKT's customers "full rights

19   to sell and use" MKT's product. The letter closes by requesting AntiCancer designate a person to "begin

20   negotiations."

21    On February 9, 2006, MKT's counsel sent a letter to Dr. Hoffman, informing AntiCancer that its

22   license demand was "far too broadly stated." MKT's counsel cited AntiCancer's lack of specifics

23   regarding the alleged infringement and requested AntiCancer identify the specific patent claims

24   allegedly infringed and the specific products accused, as well as identify and provide copies of the

25

26   _____

27    [1] AntiCancer's letter asserted the following U.S. Patents: No. 6,232,523; No. 6,235,968; No.
6,251,384; No. 6,649,159; No. 6,759,038; No. 6,905,831; European Patent 0437488; as well as
unidentified "pending world-wide patents."  Although U.S. patent No. 6,235,967 was not specifically

28   asserted in the January 2006 letter, MKT contends that it is part of the same family of patents as the
others and covers the same general technology.

11cv1407

**A031**

1  pending applications referenced by Dr. Hoffman to allow MKT to make a good faith evaluation of

2  AntiCancer's assertions that a license was "necessary." [Doc. No. 10-1, p.3.]

3      Dr. Hoffman's response on March 22, 2006 did not address any of the concerns of MKT's

4  counsel set forth in the February 9, 2006 letter and was addressed to Dr. Sacha Loisseau of MKT.  Dr.

5  Hoffman again alleged that AntiCancer's patents "clearly cover" MKT's product(s) and application(s)

6  and included a "term sheet" requiring the payment of hundreds of thousands of dollars.

7      MKT's counsel wrote back to Dr. Hoffman on April 6, 2006, again stating that it was

8  unreasonable for AntiCancer to allege infringement in such unspecified terms.  [Doc. No. 10-1 p.8.]

9  MKT's counsel further stated that MKT was unwilling to consider negotiation of a license without

10  knowing at least which claims of which patents were asserted to cover which products or activity and in

11  what manner.  MKT again requested AntiCancer identify the relevant claims of each patent.  *Id.*

12  AntiCancer did not respond to this request.

13          ***B. The 2010 Letter***

14      On November 22, 2010, more than four years later, AntiCancer's counsel sent MKT's counsel a

15  letter accompanied by an email that acknowledged the prior 2006 correspondence, stating that MKT's

16  counsel was being contacted "based on review of prior correspondence." [Doc. No. 8-5 p.1-3.]

17  AntiCancer's letter stated that it was not accusing MKT of infringement, but demanded MKT respond to

18

19

20

21

22

23

24

25

26

27

28

**A032**

1  a series of interrogatory-like questions regarding MKT's activities "during the past six years"[2] and

2  requested MKT provide its response by December 3, 2010. *Id.*

3       Two weeks after receiving the 2010 Letter, MKT filed a declaratory judgment action against

4  AntiCancer in the Eastern District of Pennsylvania seeking judgment of invalidity and non-infringement

5  of the patents at issue in this case. [Compl. ¶ 16.]  The Pennsylvania action was dismissed for lack of

6  personal jurisdiction. [Compl. ¶ 18.] MKT subsequently filed the same declaratory judgment suit against

7  AntiCancer with this Court on June 27, 2011.  AntiCancer filed the instant motion to dismiss for lack of

8  subject matter jurisdiction.

9       ***II. AntiCancer Litigation Involving the Patents***

10      AntiCancer initiated nine lawsuits for patent infringement in the Southern District California,

11  many of which assert the same patents at issue in this case.[3]

12

13  ────────────

   [2] AntiCancer's questions from the November 22, 2010 letter are as follows:
   During the past 6 years, has [MKT] (or any person acting on its behalf):
14      1. Administered any protocol or drug to a mammalian subject which contains a tumor containing cells which express [GFP]?
15      2. Monitored the progression of metastasis in any such animal via observation of a tumor which express GFP?
16      3. Employed a technique known as surgical orthotopic implantation of tumor cells into a mammalian subject?
17      4. Injected into a live animal cells of a stably transformed tumor cell line which has been transfected with GFP?
18      5. Monitored any progression of metastasis by excising fresh organ tissues from a mammalian subject, including via microscopic examination?
19      6. Employed any means of monitoring of progression of metastasis in any mammalian subject via a process known as fluorescent optical tumor imaging in the body of a live animal?
20      7. Delivered, to an animal, cells containing a nucleic acid encoding a fluorophore operatively linked to the promoter of an endogenous gene?
21      8. Observed fluorescence generated by a fluorophore in the animal via a process known as whole-body external fluorescent optical imaging?
22      9. Delivered to an animal any such cell via a surgical procedure and/or surgical orthotopic implantation?
23      10. Using a skin flap, observed tumor progression, angiogenesis and/or metastasis in animal models in real time using fluorescent tumor cells?
24

25   [3] The following is a list of the AntiCancer cases in the Southern District California:
          • 3:05-cv-00448-JLS-AJB filed 03/07/2005 asserting Patent Nos. 6,232,523;
          6,235,968; 6,251,384; 6,649,159; 6,759,038;
26        • 3:07-cv-00097-JLS –RBB filed 01/12/2007 asserting infringement of Patent
          Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;
27        • 3:07-cv-00778-JAH-BLM filed 04/27/2007 asserting infringement of Patent
          Nos. 5,491,284 and 5,569,812, as well as various other claims;
28        • 3:07-cv-02294-MMA-BLM filed 12/07/2007 asserting infringement of Patent
          Nos. 5,998,191; 6,066,467; 6,140,102; 6,448,446; and 6,468,762; as well as

**A033**

<u>***Discussion***</u>

The Declaratory Judgment Act provides that "[i]n a case or actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party." 28 U.S.C. 2201(a).  The word "may" within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place: "In a case of actual controversy within its jurisdiction . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  Even when jurisdiction is present, district courts retain some measure of discretion to decline to hear the case.[4]  Although broad, that discretion is not absolute.[5]  A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created."[6]  When these objectives are served, dismissal is rarely proper. *Id.*  Whether intended or not, the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases.[7]

---

various other claims;
• 3:07-cv-01004-JLS –AJB filed 06/01/2007 asserting infringement of Patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;
• 3:09-cv-00351-JLS –RBB filed 02/23/2009 asserting infringement of Patent Nos. 6,251,384; 6,649,159; 6,759,038;
• 3:09-cv-01311-AJB –JMA filed 06/17/2009 asserting infringement of Patent Nos. 6,251,384; 6,649,159; 6,759,038;
• 3:10-cv-02343-JAH –JMA filed 11/15/2010 asserting infringement of Patent Nos. 6,649,159 and 6,759,038;
• 3:10-cv-02515-MMA –BLM filed 12/08/2010 asserting infringement of Patent Nos. 6,649,159 and 6,759,038 as well as various other claims.

[4] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

[5] *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir.1993) (citing 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2759, at 655–56 (2d ed.1983 and Supp.1992)); *see also Capo*, 387 F.3d at 1355 (citing *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962)) ("There must be well-founded reasons for declining to entertain a declaratory judgment action.").

[6] *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed.Cir.2004) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir.1996)).

[7] *Sony Elecs. Inc., v. Guardian Media Techs., Ltd.*, 497 F.3d 1271 (Fed.Cir.2007) (remand of district court's dismissal of declaratory judgment action); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330 (Fed.Cir.2007) (reversal of district court's dismissal of declaratory judgment action); *SanDisk Corp.*, 480 F.3d 1372 (remand of district court's dismissal of declaratory judgment action).

1    "The phrase 'case or actual controversy' refers to the type of 'Cases' and 'Controversies' that are

2    justiciable under Article III [of the Constitution]." *Sony Elecs., v. Guardian Media Techs., Ltd.*, 497

3    F.3d 1271, 1283 (Fed. Cir. 2007).  A declaratory judgment plaintiff is required to satisfy Article III,

4    which includes standing and ripeness, by showing under "all the circumstances" an actual or imminent

5    injury caused by the defendant exists that can be redressed by judicial relief which is of  "sufficient

6    immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127 S.Ct. at 771

7    (internal citations omitted).

8    Actual controversy exists "where the patentee takes a position that puts the declaratory judgment

9    plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims

10   a right to." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). "The

11   purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party

12   relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v.*

13   *Releasomers, Inc.*, 824 F.2d 953, 956 (Fed.Cir.1987). In *Electronics for Imaging*, the Federal Circuit

14   elaborated on the purposes of the Act:

15   
16   
17   
18   
19   

> [A] patent owner . . . attempts extra-judicial patent enforcement with
> scare-the-customer-and-run tactics that infect the competitive environment
> of the business community with uncertainty and insecurity . . . . Before the
> Act, competitors victimized by that tactic were rendered helpless and
> immobile so long as the patent owner refused to grasp the nettle and sue.
> After the Act, those competitors were no longer restricted to an *in
> terrorem* choice between the incurrence of a growing potential liability for
> patent infringement and abandonment of their enterprises; they could clear
> the air by suing for a judgment that would settle the conflict of interests.

20   *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed.Cir.2005) (quoting *Arrowhead Indus.*

21   *Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed.Cir.1988)).

22   The test for subject matter jurisdiction in a declaratory relief action is "whether the facts alleged,

23   under all the circumstances, show that there is a substantial controversy, between the parties having

24   adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory

25   judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Md. Cas.*, 312 U.S.

26   at 273, 61 S.Ct. 510). In short, "all the circumstances" must show a controversy.

27   AntiCancer argues in the motion to dismiss that MKT has not alleged sufficient facts to establish

28   the existence of any controversy between AntiCancer and MKT that is substantial, immediate, and real

A035

1    and as such, the Court should exercise its broad discretion to dismiss this declaratory judgment action.

2    Alternatively, MKT argues that the parties' correspondence in 2006 clearly established a real and

3    substantial dispute, and the intervening four years did not eliminate the immediacy of that dispute in

4    light of AntiCancer's aggressive litigation strategy, and in light of AntiCancer's renewal of the dispute

5    with MKT's November 2010 letter.  MKT argues, and this Court agrees, that this case is analogous to

6    *Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 901-902 (Fed. Cir. 2008).

7            In *Micron*, the plaintiff was one of four leading dynamic random access memory chip (DRAM)

8    manufacturers.[8] *Micron*, 518 F.3d at 899.  Defendant MOSAID owned several DRAM chip patents,

9    which were licensed to the other main manufactures. *Id.*  In June 2001, MOSAID sent a warning letter to

10   plaintiff "strongly suggesting" that plaintiff license its technology, and three additional follow-up letters

11   within thirteen months of the initial letter.  However, plaintiff did not file a declaratory judgment action

12   against MOSAID until four years after receiving the last letter.

13           Because the four major DRAM manufacturers did not take licenses, MOSAID began enforcing

14   its patents in court. MOSAID sued each of the DRAM manufacturers, and one by one these cases were

15   settled when the manufacturer agreed to a license.[9]  After each licensing agreement, MOSAID issued

16   public statements reiterating its intent to pursue its aggressive licensing strategy. MOSAID also made

17   similar statements in its annual reports.[10]

18           Micron filed a declaratory action in the Northern District of California on July 24, 2005, seeking

19   a declaration of noninfringement of fourteen MOSAID patents. The next day, MOSAID filed an

20   infringement action against Micron in the Eastern District of Texas asserting seven patents and naming

---

22   [8] Samsung Electronics Company Ltd. (Samsung), Hynix Semiconductor Inc. (Hynix), Infineon Technologies of North America (Infineon), and Micron account for more than 75% of worldwide DRAM sales. MOSAID Technologies, Inc.

24   [9] MOSAID began by suing Samsung. Suspecting it was likely next on the list, Infineon filed an action seeking a declaratory judgment that it was not infringing MOSAID's patents. After a claim construction unfavorable to MOSAID, Infineon won a summary judgment of noninfringement.  Later in the ongoing saga of litigation, Samsung and MOSAID settled. On the day of the settlement, MOSAID sued Hynix. The case against Hynix settled as well when Hynix agreed to a license. On April 6, 2005 MOSAID asserted three new patents against Infineon. This case also settled when Infineon agreed to a license.

28   [10] Press reports following MOSAID June 14, 2005 conference call with analysts predicted that Micron posed the obvious next target now that MOSAID had settled with the other three leading DRAM manufacturers (Samsung, Hynix, and Infineon).

**A036**

1  two additional small DRAM manufacturers as defendants. MOSAID filed a motion to dismiss for lack

2  of subject matter jurisdiction under Article III of the United States Constitution or the Declaratory

3  Judgment Act, 28 U.S.C. § 2201. The District Court for the Northern District of California granted the

4  motion to dismiss, finding no jurisdiction under the reasonable apprehension of suit test.[11]

5       In granting MOSAID's motion to dismiss, the district court noted MOSAID's pattern of

6  litigation, but ultimately decided that "MOSAID's conduct was not sufficient to give rise to a reasonable

7  apprehension of litigation[12] against Micron." *Micron*, 2006 WL 3050865 at *5. Specifically, the district

8  court cited the record of no threats against Micron for the last four years, of no threats to Micron's

9  customers, and of no public comments from MOSAID that mentioned Micron by name. *Id.* The district

10  court also held that even if subject matter jurisdiction were established, it would exercise its discretion

11  and still decline to hear the case.  The Federal Circuit subsequently reversed the district court's ruling,

12  finding the four year lapse of time unavailing, because during that period, MOSAID was busy litigating

13  and negotiating against the other three leading DRAM manufacturers. 518 F.3d at 901.  In reversing the

14  district court's dismissal, the Federal Circuit clearly stated that MOSAID's "threatening letters and

15  behavioral observation are not [plaintiff]'s only evidence" of a dispute and that "in sum, the record

16  evidence amply supports a real and substantial dispute." *Id.* at 901.

17       The same is true in the instant case.  The parties' correspondence in 2006 clearly established a

18  real and substantial dispute. The intervening four years between the 2006 and 2010 letters does not

19  eliminate the immediacy of that dispute in light of AntiCancer's litigation with all the major competitors

20  in the market and AntiCancer's renewal of the dispute with MKT with the November 2010 letter.  Under

21  the totality of circumstances of the facts alleged, MKT has sufficiently demonstrated a real and

22  substantial dispute between the parties. *Id*. at 897 (noting that patentees aggressive licensing and

23  litigation strategy amply supports a real and substantial dispute between the parties); *In re Casino De*

24  *Monaco Trademark Litig*., 2010 U.S. Dist. LEXIS 33950 (S.D.N.Y. Mar. 31, 2010) ("While a threat of

25  suit is not necessary to declaratory judgment jurisdiction, an aggressive litigation strategy (such as what

26

27    [11] *Micron Tech. Inc., v. MOSAID Techs., Inc.*, No. C 06–4496, 2006 WL 3050865, 2006 U.S. Dist. LEXIS 81510 (N.D.Cal. Oct. 23, 2006) ( Jurisdiction Order ).

28    [12] The district court's "tenuous at best" determination relied on the now-defunct reasonable apprehension of suit test.

1  was demonstrated in this three year litigation) may signal the existence of an actual controversy.");

2  *Pharmanet, Inc.v. DataSci, LLC*, 2009 U.S. Dist. LEXIS 11661 (D.N.J. Feb. 17, 2009) (a patentee's

3  history of litigation with other parties is an appropriate factor for courts to consider in determining

4  whether subject matter jurisdiction exists under the Declaratory Judgment Act.)

5  Based upon the foregoing, the Court finds subject matter jurisdiction exists in this case and

6  would "serve the objectives for which the Declaratory Judgment Act was created."[13] As such,

7  AntiCancer's motion to dismiss is DENIED.

8  ### *Conclusion*

9  For the reasons set forth above, AntiCancer's motion to dismiss for lack of subject matter

10  jurisdiction is DENIED.

11  IT IS SO ORDERED.

12

13  DATED:  November 9, 2011

14  _____

15  Hon. Anthony J. Battaglia
   U.S. District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28  [13] *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed.Cir.2004) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir.1996)).

**A038**

1  Matt Valenti (SBN 253978)
   AntiCancer, Inc.
2  7917 Ostrow Street
   San Diego, CA 92111
3  Tel: (619) 654-2555
4  Fax: (619) 268-4175
   Email: mattvalenti@anticancer.com
5
6  Attorney for Defendant and Counterclaim Plaintiff AntiCancer, Inc.
7
8              IN THE UNITED STATES DISTRICT COURT
9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 MAUNA KEA TECHNOLOGIES, INC.,      )   Civil Action No. 11cv1407 AJB JMA
                                      )
11        Plaintiff,                  )   **ANSWER TO COMPLAINT;**
                                      )   **COUNTERCLAIMS AGAINST MAUNA**
12 v.                                 )   **KEA TECHNOLOGIES; DEMAND FOR**
                                      )   **JURY TRIAL**
13                                    )
14 ANTICANCER, INC.,                  )
                                      )
15        Defendant.                  )
   _____  )
16                                    )
17 ANTICANCER, INC.,                  )
                                      )
18        Counterclaim  Plaintiff,    )
                                      )
19 v.                                 )
                                      )
20 MAUNA KEA TECHNOLOGIES and DOES    )
21 1-10,                              )
                                      )
22        Counterclaim Defendants.    )
                                      )
23 _____
24
25
26
27
28
                            1

**ANSWER**

In answer to the complaint for Declaratory Judgment  filed by Mauna Kea Technologies ("Mauna Kea")  Defendant and Counterclaim Plaintiff AntiCancer, Inc. ("AntiCancer"):

1.     Admits the allegations of paragraph 1.

2.     Admits the allegations of paragraph 2.

3.     Admits the allegations of paragraph 3.

4.     Admits the allegations of paragraph 4.

5.     Admits the allegations of paragraph 5.

6.     Admits the allegations of paragraph 6.

7.     Admits the allegations of paragraph 7.

8.     Denies the allegations of paragraph 8.

9.     Admits the allegations of paragraph 9.

10.     Admits the allegations of paragraph 10.

11.     Denies the allegations of paragraph 11.

12.     Admits that in 2006 AntiCancer's president, Robert M. Hoffman, Ph.D. sent a letter to Mauna Kea.  Except as so admitted, AntiCancer denies the allegations of paragraph 12.

13.     Admits that Dr. Hoffman sent a letter on or around March 22, 2006 to the President of Mauna Kea.  Except as so admitted, AntiCancer denies the allegations of paragraph 13.

14.     Denies the allegations of paragraph 14.

15.     Admits that Dan Lawton sent a letter to Mauna Kea on or around November 22, 2010. Except as so admitted AntiCancer denies the allegations of paragraph 15.

16.     Admits that on or around December 6, 2010 Mauna Kea filed an action for declaratory judgment against AntiCancer in the U.S. District Court for the Eastern District of Pennsylvania. Except as so admitted, AntiCancer denies the allegations of paragraph 16.

2

**A040**

17.     Admits the allegations of paragraph 17.

18.     Admits the allegations of paragraph 18.

19.     Admits that Mauna Kea realleges and reincorporates the allegations of the preceding paragraphs.

20.     Denies the allegations of paragraph 20.

21.     Denies the allegations of paragraph 21.

22.     Denies the allegations of paragraph 22.

23.     Denies the allegations of paragraph 23.

24.     Denies the allegations of paragraph 24.

25.     Denies the allegations of paragraph 25.

26.     Denies the allegations of paragraph 26.

27.     Admits that Mauna Kea realleges and reincorporates the allegations of the preceding paragraphs.

28.     Denies the allegations of paragraph 28.

29.     Denies the allegations of paragraph 29.

30.     Denies the allegations of paragraph 30.

31.     Denies the allegations of paragraph 31.

32.     Admits that Mauna Kea realleges and reincorporates the allegations of the preceding paragraphs.

33.     Denies the allegations of paragraph 33.

34.     Denies the allegations of paragraph 34.

//

//

3

**AFFIRMATIVE DEFENSES**

In further answer to the claims of Mauna Kea, AntiCancer alleges the following:

FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

35.     Mauna Kea's claims fail to state any claim on which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

(Unclean Hands)

36.     Mauna Kea, by its misconduct, is barred by its unclean hands from all legal and equitable relief requested by its claims against AntiCancer.

THIRD AFFIRMATIVE DEFENSE

(Laches)

37.     Mauna Kea is not entitled to any recovery from AntiCancer because Mauna Kea's undue delay bars its action according to the doctrine of laches.

FOURTH AFFIRMATIVE DEFENSE

(Estoppel)

38.     Mauna Kea is not entitled to any recovery against AntiCancer because Mauna Kea, by its own conduct, is estopped from asserting any claims against AntiCancer.

RESERVATION OF RIGHTS

39.     AntiCancer currently has insufficient information upon which to form a belief as to whether it may have additional, as yet unstated affirmative defenses available.  AntiCancer reserves the right to assert additional affirmative defenses in the event discovery or clarification of the claims indicates that it would be appropriate.

/ /

/ /

4

## COUNTERCLAIMS

AntiCancer, Inc., by and through its counsel, alleges for its Counterclaim against Mauna Kea Technologies and Does 1-10, inclusive as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § § 1331, 1332(a)(1), 1338(a), and 2201.

2.     Venue is proper in this judicial district under pertinent law, including, *inter alia*, 28 U.S.C. §§ 1391 and 1400.

### THE PARTIES

3.     Counterclaim Plaintiff AntiCancer, Inc. ("AntiCancer") is a corporation organized and existing under the laws of the State of California and having as its principal place of business San Diego, California.  AntiCancer has developed patented experimental mouse models and imaging techniques used by cancer researchers to test new anti-cancer drugs, among other applications.  AntiCancer licenses this (and other) technology to both large and small research organizations, including several major pharmaceutical companies.

4.     Counterclaim Defendant Mauna Kea Technologies ("Mauna Kea") is a corporation organized and existing under the laws of France, with its principal place of business at 9 Rue d'Enghien, 75010 Paris, France.  Mauna Kea has a U.S. subsidiary named Mauna Kea Technologies, Inc. located at 660 Newtown-Yardley Road, Suite 107, Newtown, Pennsylvania.   Mauna Kea manufactures and sells imaging devices to researchers worldwide, including in the United States. These devices are designed to image fluorescent proteins in live animals, and are advertised by Mauna Kea as such.

5.     With these devices, Mauna Kea has performed the methods of AntiCancer's United States Patent Nos. 6,649,159 (the "'159 Patent"), 6,759,038  (the "'038" Patent), and 6,251,384 (the

5

"'384" Patent) and has induced its customers to perform and/or contributed to their performance of these methods, including but not limited to, by using Mauna Kea's "CellVizio" imaging device to non-invasively image cells transfected with GFP in living mice.  Among Mauna Kea's customers are Leica Microsystems and Leica Microsystems, Inc., which, under license from Mauna Kea sell the CellVizio as the "FCM1000" under the Leica brand name.

6.      The true names and capacities, whether individual, corporate, associate, representative or otherwise, of DOES 1 through 10, inclusive, are unknown to plaintiff, who therefore sues them by such fictitious names.  Plaintiff will seek leave to amend this complaint to show the true names and capacities of said defendants when they are ascertained.  Plaintiff is informed and believes, and thereupon alleges, that each of the defendants named as a Doe, along with the named defendants, is responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries herein alleged were legally or proximately caused by said defendants.  Wherever it is alleged that any act or omission was also done or committed by any specifically named defendant, or by defendants generally, plaintiff intends thereby to allege, and does allege, that the same act or omission was also done and committed by each and every defendant named as a Doe, and each named defendant, both separately and in concert or conspiracy with the named defendants.

7.      At all times mentioned herein, defendants, and each of them, were the agents, servants, co-conspirators, or employees of one another, and the acts and omissions herein alleged were done or suffered by them, acting individually and through or by their alleged capacity, within the scope of their authority.  Each of the defendants aided and abetted and rendered substantial assistance in the accomplishment of the acts complained of herein.  In taking the actions, as particularized herein, to aid and abet and substantially assist in the commission of the misconduct complained of, each defendant acted with an awareness of his, her or its primary wrongdoing and realized that his, her or its conduct would substantially assist in the accomplishment of that misconduct and was aware of his, her or its

overall contribution to, and furtherance of the conspiracy, common enterprise, and common course of conduct. Defendants' acts of aiding and abetting included, inter alia, all of the acts each defendant is alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

<u>FIRST CLAIM FOR RELIEF</u>

(Infringement of '159 Patent)

(Against Mauna Kea)

8.      AntiCancer realleges and incorporates by reference as though fully set forth preceding paragraphs 1 through 7.

9.      United States Patent No. 6,649,159 (the "'159 Patent") was issued by the United States Patent and Trademark Office on November 18, 2003. A true and correct copy of the '159 Patent is attached hereto as Exhibit "1" and incorporated herein by this reference.

10.     AntiCancer is the sole owner of all rights, title and interest in and to the '159 Patent.

11.     AntiCancer is informed and believes, and on that basis alleges, that Mauna Kea has directly infringed the '159 Patent in violation of 35 U.S.C. §271(a) by, inter alia, using the CellVizio device to perform one or more of the claimed methods of the '159 Patent, within the United States, during the term of the '159 Patent, without AntiCancer's authorization.

12.     Mauna Kea has also indirectly infringed the '159 Patent in violation of 35 U.S.C. §271(b) by inducing direct infringements of the '159 Patent by third parties, including its customers. In particular, Mauna Kea has sold or provided its CellVizio device to customers or other third parties and has instructed and aided and induced them to perform one or more of the claimed methods of the '159 Patent using the device, within the United States, during the term of the '159 Patent, without AntiCancer's authorization. AntiCancer is informed and believes, and on that basis alleges that, Mauna Kea had actual knowledge of the '159 Patent and its claimed inventions at least as early as

2006, and has known and intended that its customers would directly infringe the '159 Patent by using

the CellVizio device in its intended manner and according to Mauna Kea's instructions.

13.     Mauna Kea has also indirectly infringed the '159 Patent in violation of 35 U.S.C.

§271(c) by contributing to the direct infringements of the '159 Patent by third parties, including its

customers.  In particular, Mauna Kea has imported its CellVizio device into the United States and has

sold it to customers for use in practicing the claimed inventions of the '159 Patent, during the term of

the '159 Patent, without AntiCancer's authorization, and, upon information and belief, knowing the

same to be especially made or especially adapted for use in an infringement of such patent, and not a

staple article or commodity of commerce suitable for substantial non-infringing use.

14.     By reason of the foregoing, AntiCancer has suffered damages in an amount to be

proven at trial and, in addition, has suffered irreparable loss and injury.

15.     The acts of infringement described above have been willful, deliberate and in reckless

disregard of AntiCancer's patent rights.

<u>SECOND CLAIM FOR RELIEF</u>

(Infringement of '038 Patent)

(Against Mauna Kea)

16.     AntiCancer realleges and incorporates by reference as though fully set forth preceding

paragraphs 1 through 15.

17.     United States Patent No.  6,759,038 (the "'038 Patent") was issued by the United States

Patent and Trademark Office on July 6, 2004.  A true and correct copy of the '038 Patent is attached

hereto as Exhibit "2" and incorporated herein by this reference.

18.     AntiCancer is the sole owner of all rights, title and interest in and to the '038 Patent.

19.     AntiCancer is informed and believes, and on that basis alleges, that Mauna Kea has

directly infringed the '038  Patent in violation of 35 U.S.C. §271(a) by, inter alia, using the  CellVizio

8

1  device to perform one or more of the claimed methods of the '038 Patent, within the United States,

2  during the term of the '038 Patent, without AntiCancer's authorization.

3      20.    Mauna Kea has also indirectly infringed the '038 Patent in violation of 35 U.S.C.

4  §271(b) by inducing direct infringements of the '038 Patent by third parties, including its customers.

5  In particular, Mauna Kea has sold or provided its CellVizio device to customers or other third parties

6  and has instructed and aided and induced them to perform one or more of the claimed methods of the

7  '038 Patent using the device, within the United States, during the term of the '038 Patent, without

8  AntiCancer's authorization.  AntiCancer is informed and believes, and on that basis alleges that,

9  Mauna Kea had actual knowledge of the '038 Patent and its claimed inventions at least as early as

10  2006, and has known and intended that its customers would directly infringe the '038 Patent by using

11  the CellVizio device in its intended manner and according to Mauna Kea's instructions.

12      21.    Mauna Kea has also indirectly infringed the '038 Patent in violation of 35 U.S.C.

13  §271(c) by contributing to the direct infringements of the '038 Patent by third parties, including its

14  customers.  In particular, Mauna Kea has imported its CellVizio device into the United States and has

15  sold it to customers for use in practicing the claimed inventions of the '038 Patent, during the term of

16  the '038 Patent, without AntiCancer's authorization, and, upon information and belief, knowing the

17  same to be especially made or especially adapted for use in an infringement of such patent, and not a

18  staple article or commodity of commerce suitable for substantial non-infringing use.

19      22.    By reason of the foregoing, AntiCancer has suffered damages in an amount to be

20  proven at trial and, in addition, has suffered irreparable loss and injury.

21      23.    The acts of infringement described above have been willful, deliberate and in reckless

22  disregard of AntiCancer's patent rights.

//

//

9

ANSWER TO COMPLAINT; COUNTERCLAIMS AGAINST MAUNA KEA TECHNOLOGIES; DEMAND FOR JURY TRIAL       11cv1407 AJB JMA

**A047**

<u>THIRD CLAIM FOR RELIEF</u>

(Infringement of '384 Patent)

(Against Mauna Kea)

24.     AntiCancer realleges and incorporates by reference as though fully set forth preceding paragraphs 1 through 23.

25.     United States Patent No. 6,251,384 (the "'384 Patent") was issued by the United States Patent and Trademark Office on June 26, 2001. A true and correct copy of the '384 Patent is attached hereto as Exhibit "3" and incorporated herein by this reference.

26.     AntiCancer is the sole owner of all rights, title and interest in and to the '384 Patent.

27.     AntiCancer is informed and believes, and on that basis alleges, that Mauna Kea has directly infringed the '384 Patent in violation of 35 U.S.C. §271(a) by, inter alia, using the CellVizio device to perform one or more of the claimed methods of the '384 Patent, within the United States, during the term of the '038 Patent, without AntiCancer's authorization.

28.     Mauna Kea has also indirectly infringed the '384 Patent in violation of 35 U.S.C. §271(b) by inducing direct infringements of the '384 Patent by third parties, including its customers. In particular, Mauna Kea has sold or provided its CellVizio device to customers or other third parties and has instructed and aided and induced them to perform one or more of the claimed methods of the '384 Patent using the device, within the United States, during the term of the '384 Patent, without AntiCancer's authorization. AntiCancer is informed and believes, and on that basis alleges that, Mauna Kea had actual knowledge of the '384 Patent and its claimed inventions at least as early as 2006, and has known and intended that its customers would directly infringe the '384 Patent by using the CellVizio device in its intended manner and according to Mauna Kea's instructions.

29.     Mauna Kea has also indirectly infringed the '384 Patent in violation of 35 U.S.C. §271(c) by contributing to the direct infringements of the '384 Patent by third parties, including its

**A048**

customers. In particular, Mauna Kea has imported its CellVizio device into the United States and has sold it to customers for use in practicing the claimed inventions of the '384 Patent, during the term of the '384 Patent, without AntiCancer's authorization, and, upon information and belief, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

30.    By reason of the foregoing, AntiCancer has suffered damages in an amount to be proven at trial and, in addition, has suffered irreparable loss and injury.

31.    The acts of infringement described above have been willful, deliberate and in reckless disregard of AntiCancer's patent rights.

32.    The acts of infringement described above have been willful, deliberate and in reckless disregard of AntiCancer's patent rights.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff AntiCancer prays for relief as follows:

(1)    That Mauna Kea's claims be dismissed;

(2)    That AntiCancer have judgment against Mauna Kea on the claims;

(3)    That all defendants, and each of them, be adjudged to have willfully infringed the '159, '038, and '384 patents under 35 U.S.C. § 271(a), (b) and (c);

(4)    That the Court award AntiCancer damages under 35 U.S.C. § 284 that are adequate to compensate for the infringement/s;

(5)    That the Court deem this to be an exceptional case under 35 U.S.C., and award increased damages and attorney's fees pursuant to 35 U.S.C. §§ 284 and  285;

(6)    That defendants, and each of them, be preliminarily and permanently restrained and enjoined under 35 U.S.C. § 283 from directly or indirectly infringing the '159, '038, and '384 patents;

11

ANSWER TO COMPLAINT; COUNTERCLAIMS AGAINST MAUNA KEA TECHNOLOGIES; DEMAND FOR JURY TRIAL      11cv1407 AJB JMA

1    (7)    That the Court assess pre-judgment and post-judgment interest and costs of suit

2    against defendants, and award such interest and costs to AntiCancer; and,

3    (8)    That AntiCancer have such other and further relief as this Court may deem just and

4    proper.

5

6                                            Respectfully submitted,

7

8                                            ANTICANCER, INC.

9

10   DATED:        November 23, 2011         By: ___/s/ Matt Valenti_____
                                                    MATT VALENTI
11                                            Attorney for Defendant and Counterclaim Plaintiff
                                              AntiCancer, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO COMPLAINT; COUNTERCLAIMS AGAINST MAUNA KEA TECHNOLOGIES; DEMAND        11cv1407 AJB JMA
FOR JURY TRIAL

1   <u>DEMAND FOR TRIAL BY JURY</u>

2         AntiCancer hereby demands a trial by jury as to all issues triable by jury.

3

4

5                                          ANTICANCER, INC.

6

7   DATED:         November 23, 2011          By: ___/s/ Matt Valenti_____
                                                    MATT VALENTI
8                                                 Attorney for Defendant and Counterclaim Plaintiff
                                                  AntiCancer, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO COMPLAINT; COUNTERCLAIMS AGAINST MAUNA KEA TECHNOLOGIES; DEMAND
FOR JURY TRIAL                                                                          11cv1407 AJB JMA

| | |
|---|---|
| 1 | |

**CERTIFICATE OF SERVICE**

2
3
4
5

I hereby certify that, on November 23, 2011, the foregoing document entitled **ANSWER TO COMPLAINT; COUNTERCLAIMS AGAINST MAUNA KEA TECHNOLOGIES; DEMAND FOR JURY TRIAL** was filed via the Case Management/Electronic Case Filing (CM/ECF) system, with service to be made on all parties via the automated generation and e-mailing of a Notice of Electronic Filing (NEF) by the CM/ECF system.

6
7

ANTICANCER, INC.

8     DATED:          November 23, 2011          By: ___/s/ Matt Valenti_____
9                                                              MATT VALENTI
10                                                    Attorney for Defendant and Counterclaim Plaintiff
                                                       AntiCancer, Inc.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

14

1  YOUNG & THOMPSON
   Douglas V. Rigler
2  drigler@young-thompson.com
   Jeffrey M. Goehring, 233002
3  jgoehring@young-thompson.com
   209 Madison Street, Suite 500
4  Alexandria, Virginia 22314
   Telephone: (703) 521-2297
5  Facsimile: (703) 685-0573

6
   Counsel for Plaintiff / Counterclaim Defendant
7  Mauna Kea Technologies

8           THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT CALIFORNIA
9

10 MAUNA KEA TECHNOLOGIES,

11                  Plaintiff,

12        v.

13 ANTICANCER, INC.

14                  Defendant;

15 _____   Civil Action No.  11-cv-1407 AJB JMA

16 ANTICANCER, INC.,

17           Counterclaim-Plaintiff,        **ANSWER TO COUNTERCLAIM**

18        v.

19 MAUNA KEA TECHNOLOGIES, and
   DOES 1-10,
20
21           Counterclaim-
   Defendants
22
23
24
25
26
27
28

**A053**

Counterclaim-Defendant Mauna Kea Technologies ("Mauna Kea"), by its attorneys, for its Answer to the Counterclaim of AntiCancer, Inc. ("AntiCancer"), states as follows:

<u>JURISDICTION AND VENUE</u>

1.  Mauna Kea admits that this Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201.  The remainder of this allegation is denied.

2.  Mauna Kea admits that venue is proper in this judicial district.

<u>THE PARTIES</u>

3.  Mauna Kea admits that Counterclaim plaintiff AntiCancer, Inc. is a corporation organized under the laws of the State of California and that it has its principal place of business in San Diego, California.  Mauna Kea is without knowledge necessary to assess the truth of the remainder of the allegations in this paragraph, on that basis denies them.

4.  Admits.

5.  Mauna Kea admits that Leica Microsystems was a customer of Mauna Kea.  The remainder of this allegation is denied.

6.  Denies.

7.  Denies.

<u>FIRST CLAIM FOR RELIEF</u>

(Infringement of '159 Patent)

(Against Mauna Kea)

8.  Mauna Kea incorporates by reference its responses to each of the previous paragraphs.

9.  Mauna Kea admits that United States Patent and Trademark Office issued U.S.

Young & Thompson
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

Patent No. 6,649,159 on November 18, 2003.  Although Exhibit 1 to
AntiCancer's Complaint appears to be a true and correct copy of the '159 patent,
Mauna Kea denies the remainder of this allegation on the basis that the exhibit
speaks for itself.

10. Mauna Kea lacks knowledge sufficient to assess the truth of this allegation on that
basis denies it.

11. Denies.

12. Mauna Kea refers to its Motion to Dismiss filed herewith and asserts that no
answer to this allegation is necessary until after decision on its motion.  In the
event that the motion is denied, Mauna Kea states that it would answer that it has
supplied its CellVizio device to customers or other third parties and that it has had
awareness of the '159 patent since January 17, 2006.  The remainder of this
allegation would be denied.

13. Mauna Kea refers to its Motion to Dismiss filed herewith and asserts that no
answer to this allegation is necessary until after decision on its motion.  In the
event that the motion is denied, Mauna Kea states that it would deny this
allegation.

14. Denies.

15. Denies.

### SECOND CLAIM FOR RELIEF

(Infringement of '038 Patent)

(Against Mauna Kea)

16. Mauna Kea incorporates by reference its responses to each of the previous
paragraphs.

17. Mauna Kea admits that United States Patent and Trademark Office issued U.S.

Young & Thompson
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

**A055**

Patent No. 6,759,038 on July 6, 2004.  Although Exhibit 2 to AntiCancer's

Complaint appears to be a true and correct copy of the '159 patent, Mauna Kea

denies the remainder of this allegation on the basis that the exhibit speaks for

itself.

18. Mauna Kea lacks knowledge sufficient to assess the truth of this allegation on that

basis denies it.

19. Denies.

20. Mauna Kea refers to its Motion to Dismiss filed herewith and asserts that no

answer to this allegation is necessary until after decision on its motion.  In the

event that the motion is denied, Mauna Kea states that it would answer that it has

supplied its CellVizio device to customers or other third parties and that it has had

awareness of the '159 patent since January 17, 2006.  The remainder of this

allegation would be denied.

21. Mauna Kea refers to its Motion to Dismiss filed herewith and asserts that no

answer to this allegation is necessary until after decision on its motion.  In the

event that the motion is denied, Mauna Kea states that it would deny this

allegation.

22. Denies.

23. Denies.

<u>THIRD CLAIM FOR RELIEF</u>

(Infringement of '384 Patent)

(Against Mauna Kea)

24. Mauna Kea incorporates by reference its responses to each of the previous

paragraphs.

25. Mauna Kea admits that United States Patent and Trademark Office issued U.S.

Patent No. 6,251,384 on June 26, 2001.  Although Exhibit 2 to AntiCancer's

Complaint appears to be a true and correct copy of the '384 patent, Mauna Kea

denies the remainder of this allegation on the basis that the exhibit speaks for

itself.

26. Mauna Kea lacks knowledge sufficient to assess the truth of this allegation on that

basis denies it.

27. Denies.

28. Mauna Kea refers to its Motion to Dismiss filed herewith and asserts that no

answer to this allegation is necessary until after decision on its motion.  In the

event that the motion is denied, Mauna Kea states that it would answer that it has

supplied its CellVizio device to customers or other third parties and that it has had

awareness of the '159 patent since January 17, 2006.  The remainder of this

allegation would be denied.

29. Mauna Kea refers to its Motion to Dismiss filed herewith and asserts that no

answer to this allegation is necessary until after decision on its motion.  In the

event that the motion is denied, Mauna Kea states that it would deny this

allegation.

30. Denies.

31. Denies.

32. Denies.

**Affirmative Defenses**

a)  The CellVizio device has substantial non-infringing uses.

b)  The claims asserted against Mauna Kea are invalid and unenforceable.

c)  Laches, equitable estoppel, waiver, and acquiescence bar AntiCancer's

causes of action and/or recovery of damages for such causes.

**A057**

1

December 16, 2011

2

YOUNG & THOMPSON

3

By: ___/s/Jeffrey M. Goehring_____
Jeffrey M. Goehring

4

5

Counsel for Plaintiff / Counterclaim Defendant
Mauna Kea Technologies

6

7

**CERTIFICATE OF SERVICE**

8

The undersigned certifies that the within was served by the Court's ECF system upon the below listed counsel of record this 16th day of December, 2011.

9

10

Matthew D. Valenti
Anticancer, Inc.
7917 Ostrow Street
San Diego, CA 92111

11

12

Counsel for Defendant / Counterclaim Plaintiff
Anticancer, Inc.

13

14

By: ___/s/Jeffrey M. Goehring_____
Jeffrey M. Goehring

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Young & Thompson**
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

**A058**

1
2
3
4
5
6
7            **UNITED STATES DISTRICT COURT**
8         **SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10 MAUNA KEA TECHNOLOGIES, | CASE NO. 11cv1407-CAB (JMA) |
| 11         Plaintiff, | Order Granting Joint Motion For: |
| 12 | (1) Dismissal of AntiCancer, Inc's Counterclaims With Prejudice; |
| 13   vs. | |
| 14 | (2) Dismissal of Mauna Kea's Claims For Declaratory Judgment of Invalidity and Unenforceability |
| 15 | Without Prejudice; |
| 16 ANTICANCER, INC., | (3) Leave to File AntiCancer's Amended Answer; |
| 17         Defendant. | |
| 18 | (4) Declaration of Non-Infringement by Mauna Kea Technologies. |
| 19 ANTICANCER, INC., | [Doc. No. 60] |
| 20       Counterclaim Plaintiff, | |
| 21   vs.<br>MAUNA KEA TECHNOLOGIES and DOES 1-10, | |
| 22 | |
| 23       Counterclaim Defendants. | |

23      Pursuant to the parties' Joint Motion, and finding good cause therefor, the Court

24 hereby **DISMISSES WITH PREJUDICE** AntiCancer's counterclaims for direct,

25 contributory, and inducement of infringement.

26      Pursuant to the parties' joint motion, and finding good cause therefor, the Court

27 hereby **DISMISSES WITHOUT PREJUDICE** Mauna Kea's claims for declaratory

28 judgment of invalidity and unenforceability.

11cv1407

1    The parties having jointly moved for leave for AntiCancer to file an Amended

2    Answer, and good cause appearing therefor, the Court hereby **GRANTS leave to file**

3    AntiCancer's Amended Answer, which was attached to the Joint Motion as Exhibit 1,

4    which was previously submitted by AntiCancer as docket entry 55-2.

5        AntiCancer having admitted in its Amended Answer that Mauna Kea does not

6    infringe the patents asserted in Mauna Kea's claim for declaratory judgment of

7    non-infringement, the Court hereby **DECLARES**, as agreed upon in the parties' joint

8    motion, that U.S. Patents Nos. 6,232,523; 6,235,968; 6,251,384; 6,649,159; 6,759,038;

9    and 6,905,831 are not infringed by Mauna Kea directly or indirectly.

10       Upon stipulation of the parties, and good cause appearing therefor, the Court

11   finds, and AntiCancer expressly acknowledges and admits, that as of the date of this

12   dismissal no Mauna Kea product, none of Mauna Kea's use of or other activity with

13   respect to its products, and none of Mauna Kea's promotional or other activity or

14   communications with respect to its customers or potential customers, constitutes or has

15   constituted infringement of any of AntiCancer's patents, directly or indirectly.

16       Also upon stipulation of the parties, and good cause appearing therefor, the

17   Court finds, and AntiCancer expressly acknowledges and admits, that collateral

18   estoppel and res judicata apply to all products, communications, or other activity of

19   Mauna Kea up to the date of this dismissal, such that no future infringement claim can

20   be based on such products, communications, or activity.  Moreover, due to such

21   collateral estoppel, no future infringement claim can be based on any future product,

22   communication, or activity that is similar in relevant part to Mauna Kea's previous

23   products, communications, or activities.

24       Accordingly, the Joint Motion [Doc. No. 60] is **GRANTED**.  This case is

25   **CLOSED**.

26   DATED:  July 29, 2013

27

28   _____
     **CATHY ANN BENCIVENGO**
     United States District Judge

- 2 -

11cv1407

**A060**

YOUNG & THOMPSON
Douglas V. Rigler (pro hac vice)
drigler@young-thompson.com
Jeffrey M. Goehring, 233002
jgoehring@young-thompson.com
209 Madison Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 521-2297
Facsimile: (703) 685-0573

Counsel for Mauna Kea Technologies

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT CALIFORNIA

| | |
|---|---|
| MAUNA KEA TECHNOLOGIES,<br><br>      Declaratory Judgment<br>Plaintiff,<br><br>v.<br><br>ANTICANCER, INC.<br><br>      Declaratory Judgment<br>Defendant;<br><br>ANTICANCER, INC.,<br><br>      Counterclaim-<br>Plaintiff,<br><br>v.<br><br>MAUNA KEA TECHNOLOGIES,<br>and DOES 1-10,<br><br>      Counterclaim-<br>Defendants | Civil Action No.  11-cv-1407 CAB JMA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MAUNA KEA TECHNOLOGIES' MOTION FOR ATTORNEY'S FEES UNDER 35 USC 285**<br><br>Date: October 17, 2013<br>Time: 2:00 p.m.<br>Courtroom: 4C<br>Judge: Bencivengo |

*AJB, AntiCacner v. Carestream Health, Inc.*  In a another case, on February 13, 2009, this Court similarly granted summary judgment of non-infringement of the '384, 038, and '159 patents based on insufficient PICs that fail to identify "where each element of each asserted claim is found within each Accused Instrumentality".  *See **Ex. 9, pg. 232, D.I. 214 in Case No. 3:07-cv-00097-JLS-RBB, AntiCancer, Inc. v. Cambridge Research & Instrumentation***.

In a third summary judgment decision in a third case well after the two decisions noted above (and essentially contemporaneously with this case) this Court reached a similar decision and further found that AC's PICs were "unreasonable" and "disingenuous" in light of the prior two decisions:

> [T]he Court has concluded that AntiCancer's PICs are deficient, and further finds that **AntiCancer acted unreasonably** in submitting woefully insufficient PICs.  It seems to the Court that AntiCancer was **disingenuous** in setting forth its theory of infringement with such vague PICs **given that it was made aware of the possible repercussions of insufficient PICS on at least two prior occasions** in cases before this Court.

*See Ex. 10, pg. 243-246, and 249-250,& Ex. 11, pg 252, D.I. 63 & 74 in Case No. 3:11-cv-00107-JLS-RBB, AntiCancer, Inc. v. Pfizer et al. (emphasis added)*.  Moreover, this Court required AC's to pay the defendant's attorney's fees attributable to its motion.  *See Ex. 11, pg. 252.*

AC was just as unreasonable and disingenuous in this case when it asserted insufficient PICs.  AC knew or should have known that its insufficient PICs rendered its infringement claims baseless.

## VI.    Mauna Kea Should Be Awarded $193,198.50 In Attorney's Fees And Costs

24

**A062**

Young & Thompson
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

To determine a reasonable attorneys' fee award, the Supreme Court has directed trial courts to multiply the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In support of this fee application, MKT is filing under a declaration from Jeffrey Goehring (and supporting exhibits).  The declarations set forth the nature and extent of the legal services Young & Thompson provided to MKT in connection with this action, the hourly rates Young & Thompson charged, and the number of hours each Young & Thompson attorney billed.  As explained in the Declaration, the attorneys' fees MKT seeks are based on reasonable billing rates multiplied by the number of hours reasonably spent on this action.

Time spent preparing and litigating fee petitions is compensable. *See Anderson v. Dir., Office of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir.1996).

As detailed in the Goehring declaration, the fees and costs MKT incurred in connection with this action since AC filed its baseless counterclaim totaled $193,198.50.

**<u>CONCLUSION</u>**

The Court should award $193,198.50 for the reasons noted above.

August 9, 2013

> YOUNG & THOMPSON
>
> By:   /s/ Jeffrey M. Goehring
>       Jeffrey M. Goehring
>
> Counsel for Mauna Kea Technologies

**Young & Thompson**
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

YOUNG & THOMPSON
Douglas V. Rigler (pro hac vice)
drigler@young-thompson.com
Jeffrey M. Goehring, 233002
jgoehring@young-thompson.com
209 Madison Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 521-2297
Facsimile: (703) 685-0573

Counsel for Mauna Kea Technologies

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT CALIFORNIA

MAUNA KEA TECHNOLOGIES,

        Declaratory Judgment
Plaintiff,

v.

ANTICANCER, INC.

        Declaratory Judgment
Defendant;

ANTICANCER, INC.,

        Counterclaim-
Plaintiff,

v.

MAUNA KEA TECHNOLOGIES,
and DOES 1-10,

        Counterclaim-
Defendants

Civil Action No.  11-cv-1407 CAB JMA

**DECLARATION OF Jeffrey M. Goehring IN SUPPORT OF MAUNA KEA TECHNOLOGIES' MOTION FOR ATTORNEY'S FEES**

Date: October 17, 2013
Time: 2:00 p.m.
Courtroom: 4C
Judge: Bencivengo

A064

In support of Mauna Kea Technologies' ("MKT") Motion for Attorneys' Fees, I, Jeffrey Goehring, state as follows:

1)      I am an attorney licensed to practice law in the State of California since 2004, and I am admitted to practice before this Court.  I am an attorney with the law firm of Young & Thompson, attorneys of record for MKT herein.  I have personal knowledge of the facts set forth in this Declaration, and if called upon to testify I could and would testify competently thereto.

2)      I submit this declaration in support of MKT's motion for attorney's fees against AntiCancer, Inc. ("AntiCancer").

3)      Attached hereto as Exhibit A is a true the correct copy of the AIPLA's Report of the Economic Survey analyzing billing rates charged for intellectual property associates and partners at private firms in 2011.  The Federal Circuit has affirmed a determination of reasonable rates that relied on a similar AIPLA survey.  *See View Engineering, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 987-88 (Fed. Cir. 2000).

4)      Attached hereto as Exhibit B is a spreadsheet that includes the hours, hourly rates, and descriptions of work performed by Young & Thompson attorneys throughout this case.  The descriptions in the attached spreadsheet have, in most instances, been revised from what appears on actual invoices to protect the disclosure of attorney/client information, attorney work product, or other highly sensitive litigation strategies but still summarize the nature of the work and the time period of the work so that the Court and counsel can evaluate

Young & Thompson
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

1

**11-cv-1407 CAB JMA**

the reasonableness of the work performed.  The actual invoices and raw billing

data can be provided (subject to any claim of privilege) under seal if necessary.

5)      Attached hereto as Exhibit C is a description of the services provided

during the invoice periods noted in the chart in Exhibit B.  The numbers in

Exhibit C correspond to the invoice numbers in Exhibit B.

6)      Attached hereto as Exhibit D are the biographies of the attorneys at

Young & Thompson that worked on this case, the undersigned, Jeffrey

Goehring, and Douglas Rigler.


        I declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct and that this declaration was executed on

August 9, 2013 at Alexandria, VA


                              By:      /s/ Jeffrey Goehring
                                       Jeffrey M. Goehring

Young & Thompson
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

2

**11-cv-1407 CAB JMA**

## TABLE OF CONTENTS

| Exhibit A | AIPLA Report | Pages 1 – 6 |
| Exhibit B | Attorney Fee Chart | Page 7 |
| Exhibit C | Description of Attorney Work | Pages 8-10 |
| Exhibit D | Attorney Biographies | Pages 11-13 |

Case: 14-1412 Case: 14-1412 CASE PARTICIPANTS ONLY Document: 104-5 Page: 1045 Filed: 06/16/2014 Filed: 06/16/2014

Case 3:11-cv-01407-CAB-JMA   Document 62-4   Filed 08/09/13   Page 2 of 14
Case 3:11-cv-00107-JLS-RBB   Document 68-2   Filed 06/15/12   Page 2 of 7

# *AIPLA*

## REPORT OF THE
## ECONOMIC SURVEY
## 2011

PREPARED UNDER DIRECTION OF THE
AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
LAW PRACTICE MANAGEMENT COMMITTEE

STEVEN M. AUVIL, CHAIR
DAVID A. DIVINE, VICE CHAIR

July 2011



15200 Shady Grove Road, Suite 306
Rockville, Maryland 20850
TEL: (240) 268-1262
ARI@associationresearch.com

Case: 14-1412 Case-PARTICIPANTS ONLY Document 105 Filed 06/06/2014ed: 06/16/2014

Case 3:11-cv-01407-CAB-JMA Document 62-4 Filed 08/09/13 Page 3 of 14
Case 3:11-cv-00107-JLS-RBB Document 68-2 Filed 06/15/12 Page 3 of 7

©2011 AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION

ALL RIGHTS RESERVED. NO PART OF THIS BOOK MAY BE REPRODUCED OR TRANSMITTED IN
ANY FORM OR BY ANY MEANS, ELECTRONIC OR MECHANICAL, INCLUDING PHOTOCOPYING,
RECORDING, OR BY AN INFORMATION STORAGE AND RETRIEVAL SYSTEM, WITHOUT PERMISSION
IN WRITING FROM THE PUBLISHER.

COPIES OF THIS REPORT ARE AVAILABLE FROM AIPLA AT A COST OF $45 PER COPY FOR
MEMBERS AND $395 PER COPY FOR NON-MEMBERS.

AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
241 18TH STREET, SOUTH, SUITE 700
ARLINGTON VA 22202-3694
(703) 415-0780
WWW.AIPLA.ORG

**Exhibit A**
**Page 2**
**A069**

Case: 14-1412 CASE PARTICIPANTS ONLY Document: 15 Page: 106 Filed: 06/16/2014

Case 3:11-cv-01407-CAB-JMA   Document 62-4   Filed 08/09/13   Page 4 of 14
Case 3:11-cv-00107-JLS-RBB   Document 68-2   Filed 06/15/12   Page 4 of 7

*Solo Practitioner*

Average hourly billing rate in 2010 (Q34)

*Solo Practitioner*

| | | Average hourly billing rate in 2010 | | | |
|---|---|---|---|---|---|
| | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
| All Individuals | | 183 | $295 | $225 | $295 | $350 |
| Years of Intellectual Property Law Experience | Fewer than 5 | 13 | $244 | $168 | $200 | $255 |
| | 5-6 | 12 | $241 | $185 | $228 | $299 |
| | 7-9 | 8 | $247 | $200 | $238 | $318 |
| | 10-14 | 37 | $288 | $235 | $300 | $325 |
| | 15-24 | 45 | $317 | $250 | $300 | $380 |
| | 25-34 | 29 | $327 | $250 | $300 | $373 |
| | 35 or More | 26 | $341 | $250 | $300 | $380 |
| Location | Boston CMSA | 8 | $308 | $261 | $313 | $351 |
| | NYC CMSA | 13 | $340 | $225 | $300 | $463 |
| | Philadelphia CMSA | 4 | $306 | $175 | $318 | $426 |
| | Washington, DC CMSA | 20 | $311 | $239 | $300 | $364 |
| | Other East | 19 | $261 | $225 | $250 | $300 |
| | Metro Southeast | 8 | $287 | $243 | $280 | $344 |
| | Other Southeast | 7 | $294 | $245 | $275 | $310 |
| | Chicago CMSA | 7 | $319 | $250 | $300 | $400 |
| | Minne.-St. Paul PMSA | 1 | ISD | ISD | ISD | ISD |
| | Other Central | 25 | $256 | $200 | $250 | $300 |
| | Texas | 10 | $271 | $220 | $263 | $331 |
| | Los Angeles CMSA | 13 | $338 | $230 | $345 | $400 |
| | San Francisco CMSA | 19 | $332 | $215 | $340 | $425 |
| | Other West | 29 | $278 | $205 | $285 | $314 |
| IP Technical Specialization (>=50%) | Biotechnology | 10 | $344 | $286 | $323 | $414 |
| | Chemical | 8 | $263 | $209 | $250 | $324 |
| | Computer Hardware | 1 | ISD | ISD | ISD | ISD |
| | Computer Software | 21 | $318 | $268 | $300 | $355 |
| | Electrical | 23 | $318 | $250 | $325 | $350 |
| | Mechanical | 51 | $265 | $200 | $250 | $300 |
| | Medical/ Health Care | 5 | $335 | $250 | $300 | $438 |
| | Pharmaceutical | 5 | $323 | $154 | $325 | $490 |
| | Other areas | 5 | $319 | $220 | $275 | $440 |
| Age | Younger than 35 | 10 | $254 | $173 | $250 | $303 |
| | 35-39 | 12 | $221 | $181 | $200 | $281 |
| | 40-44 | 22 | $286 | $233 | $300 | $341 |
| | 45-49 | 21 | $340 | $250 | $325 | $445 |
| | 50-54 | 33 | $284 | $238 | $275 | $338 |
| | 55-59 | 32 | $289 | $209 | $268 | $325 |
| | 60 or Older | 51 | $317 | $250 | $300 | $365 |
| Gender | Male | 159 | $295 | $225 | $300 | $350 |
| | Female | 23 | $297 | $250 | $280 | $340 |
| Highest Non-Law Degree | Bachelor's Degree | 91 | $302 | $240 | $295 | $350 |
| | Master's Degree | 61 | $285 | $200 | $300 | $325 |
| | Doctorate Degree | 23 | $293 | $210 | $300 | $340 |
| Ethnicity | White/Caucasian | 155 | $295 | $225 | $285 | $345 |
| | Black/African American | 3 | $222 | ISD | $240 | ISD |
| | Hispanic/Latino | 1 | ISD | ISD | ISD | ISD |
| | Asian/Pacific Islander | 12 | $322 | $285 | $313 | $375 |
| | Blended | 1 | ISD | ISD | ISD | ISD |
| | Other | 6 | $279 | $196 | $288 | $354 |

AIPLA Report of the Economic Survey 2011
I-17

**Exhibit A**
**Page 3**
**A070**

*Private Firm, Partner*

**Average hourly billing rate in 2010 (Q34)**

*Private Firm, Partner*

| | | Average hourly billing rate in 2010 | | | | |
|---|---|---|---|---|---|---|
| | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
| All Individuals | | 622 | $441 | $325 | $410 | $535 |
| Years of Intellectual Property Law Experience | Fewer than 5 | 3 | $210 | ISD | $180 | ISD |
| | 5-6 | 9 | $345 | $240 | $275 | $325 |
| | 7-9 | 38 | $321 | $279 | $303 | $336 |
| | 10-14 | 137 | $383 | $303 | $360 | $425 |
| | 15-24 | 224 | $456 | $350 | $430 | $550 |
| | 25-34 | 147 | $481 | $375 | $450 | $595 |
| | 35 or More | 62 | $524 | $380 | $550 | $653 |
| Location | Boston CMSA | 29 | $561 | $390 | $560 | $688 |
| | NYC CMSA | 43 | $557 | $400 | $590 | $675 |
| | Philadelphia CMSA | 26 | $457 | $374 | $450 | $513 |
| | Washington, DC CMSA | 107 | $483 | $360 | $460 | $600 |
| | Other East | 23 | $355 | $265 | $340 | $420 |
| | Metro Southeast | 16 | $396 | $326 | $383 | $450 |
| | Other Southeast | 12 | $374 | $328 | $369 | $419 |
| | Chicago CMSA | 52 | $447 | $376 | $423 | $500 |
| | Minne.-St. Paul PMSA | 26 | $409 | $344 | $396 | $455 |
| | Other Central | 132 | $351 | $280 | $333 | $410 |
| | Texas | 46 | $492 | $380 | $475 | $600 |
| | Los Angeles CMSA | 21 | $500 | $385 | $475 | $603 |
| | San Francisco CMSA | 27 | $571 | $395 | $585 | $700 |
| | Other West | 62 | $368 | $300 | $350 | $421 |
| IP Technical Specialization (>=50%) | Biotechnology | 29 | $490 | $350 | $535 | $603 |
| | Chemical | 42 | $373 | $298 | $336 | $455 |
| | Computer Hardware | 10 | $583 | $388 | $600 | $781 |
| | Computer Software | 44 | $414 | $300 | $377 | $525 |
| | Electrical | 67 | $454 | $330 | $440 | $550 |
| | Mechanical | 147 | $395 | $320 | $380 | $450 |
| | Medical/Health Care | 20 | $461 | $321 | $395 | $579 |
| | Pharmaceutical | 17 | $523 | $375 | $525 | $690 |
| | Other areas | 6 | $451 | $348 | $443 | $688 |
| Age | Younger than 35 | 10 | $247 | $180 | $238 | $303 |
| | 35-39 | 35 | $336 | $270 | $322 | $390 |
| | 40-44 | 114 | $411 | $309 | $360 | $485 |
| | 45-49 | 153 | $428 | $320 | $410 | $500 |
| | 50-54 | 98 | $455 | $349 | $433 | $520 |
| | 55-59 | 89 | $472 | $365 | $450 | $552 |
| | 60 or Older | 120 | $499 | $376 | $473 | $602 |
| Gender | Male | 566 | $442 | $325 | $410 | $531 |
| | Female | 50 | $427 | $295 | $418 | $558 |
| Highest Non-Law Degree | Bachelor's Degree | 421 | $439 | $325 | $400 | $528 |
| | Master's Degree | 118 | $441 | $329 | $423 | $525 |
| | Doctorate Degree | 38 | $437 | $312 | $395 | $558 |
| Ethnicity | White/Caucasian | 562 | $444 | $330 | $410 | $536 |
| | Black/African American | 5 | $434 | $278 | $370 | $623 |
| | Hispanic/Latino | 11 | $397 | $250 | $378 | $510 |
| | Asian/Pacific Islander | 16 | $441 | $350 | $420 | $500 |
| | North American Indian/Native Canadian | 1 | ISD | ISD | ISD | ISD |
| | Blended | 7 | $319 | $230 | $300 | $400 |
| | Other | 9 | $452 | $318 | $430 | $590 |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 1-2 | 28 | $293 | $250 | $293 | $343 |
| | 3-5 | 85 | $351 | $300 | $335 | $385 |
| | 6-10 | 74 | $366 | $304 | $355 | $396 |
| | 11-25 | 149 | $402 | $303 | $385 | $475 |
| | 26-50 | 86 | $434 | $344 | $425 | $489 |
| | 51-100 | 113 | $542 | $428 | $540 | $650 |
| | 101-150 | 33 | $586 | $465 | $540 | $738 |
| | More than 150 | 45 | $606 | $518 | $600 | $663 |

AIPLA Report of the Economic Survey 2011
I-34

Case: 14-1412 Case: 14-1412 CASE PARTICIPANTS ONLY Document: 15 Page: 108 Filed: 06/16/2014 Filed: 06/16/2014

Case 3:11-cv-01407-CAB-JMA   Document 62-4   Filed 08/09/13   Page 6 of 14
Case 3:11-cv-00107-JLS-RBB   Document 68-2   Filed 06/15/12   Page 6 of 7

*Private Firm, Associate*

Average hourly billing rate in 2010 (Q34)

*Private Firm, Associate*

| | | Average hourly billing rate in 2010 | | | |
|---|---|---|---|---|---|
| | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
| All Individuals | | 516 | $320 | $225 | $300 | $395 |
| Years of Intellectual Property Law Experience | Fewer than 5 | 219 | $264 | $200 | $250 | $325 |
| | 5-6 | 96 | $306 | $240 | $288 | $370 |
| | 7-9 | 69 | $362 | $275 | $345 | $435 |
| | 10-14 | 69 | $406 | $300 | $395 | $503 |
| | 15-24 | 39 | $406 | $310 | $380 | $525 |
| | 25-34 | 8 | $496 | $413 | $468 | $580 |
| | 35 or More | 5 | $439 | $240 | $325 | $695 |
| Location | Boston CMSA | 24 | $401 | $310 | $350 | $539 |
| | NYC CMSA | 31 | $433 | $300 | $410 | $545 |
| | Philadelphia CMSA | 19 | $324 | $275 | $330 | $375 |
| | Washington, DC CMSA | 102 | $375 | $289 | $368 | $450 |
| | Other East | 22 | $258 | $198 | $215 | $291 |
| | Metro Southeast | 18 | $310 | $255 | $314 | $364 |
| | Other Southeast | 14 | $249 | $204 | $240 | $300 |
| | Chicago CMSA | 33 | $334 | $273 | $315 | $410 |
| | Minne.-St. Paul PMSA | 28 | $272 | $200 | $281 | $319 |
| | Other Central | 94 | $242 | $189 | $230 | $276 |
| | Texas | 35 | $345 | $250 | $350 | $400 |
| | Los Angeles CMSA | 18 | $383 | $305 | $355 | $445 |
| | San Francisco CMSA | 19 | $361 | $260 | $370 | $470 |
| | Other West | 59 | $263 | $190 | $240 | $310 |
| IP Technical Specialization (>=50%) | Biotechnology | 26 | $319 | $229 | $305 | $375 |
| | Chemical | 37 | $318 | $270 | $300 | $355 |
| | Computer Hardware | 13 | $353 | $213 | $375 | $418 |
| | Computer Software | 60 | $335 | $240 | $318 | $400 |
| | Electrical | 57 | $330 | $230 | $325 | $408 |
| | Mechanical | 102 | $273 | $200 | $268 | $331 |
| | Medical/ Health Care | 17 | $291 | $225 | $275 | $325 |
| | Pharmaceutical | 23 | $345 | $275 | $325 | $410 |
| | Other areas | 10 | $355 | $253 | $325 | $465 |
| Age | Younger than 35 | 195 | $273 | $200 | $260 | $325 |
| | 35-39 | 129 | $322 | $220 | $300 | $410 |
| | 40-44 | 94 | $363 | $275 | $365 | $435 |
| | 45-49 | 39 | $332 | $250 | $315 | $400 |
| | 50-54 | 29 | $358 | $270 | $310 | $450 |
| | 55-59 | 12 | $391 | $350 | $383 | $439 |
| | 60 or Older | 13 | $452 | $285 | $460 | $593 |
| Gender | Male | 409 | $317 | $225 | $300 | $385 |
| | Female | 105 | $329 | $225 | $315 | $410 |
| Highest Non-Law Degree | Bachelor's Degree | 329 | $311 | $220 | $295 | $385 |
| | Master's Degree | 108 | $327 | $230 | $300 | $385 |
| | Doctorate Degree | 63 | $344 | $270 | $325 | $420 |
| Ethnicity | White/Caucasian | 460 | $320 | $225 | $300 | $395 |
| | Black/African American | 5 | $405 | $307 | $425 | $494 |
| | Hispanic/Latino | 4 | $295 | $201 | $223 | $461 |
| | Asian/Pacific Islander | 25 | $310 | $238 | $305 | $345 |
| | North American Indian/Native Canadian | 2 | ISD | ISD | ISD | ISD |
| | Blended | 8 | $317 | $293 | $300 | $378 |
| | Other | 4 | $269 | $243 | $255 | $309 |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 1-2 | 12 | $245 | $166 | $213 | $330 |
| | 3-5 | 42 | $249 | $183 | $238 | $300 |
| | 6-10 | 55 | $250 | $200 | $250 | $290 |
| | 11-25 | 106 | $278 | $205 | $265 | $331 |
| | 26-50 | 96 | $332 | $233 | $310 | $400 |
| | 51-100 | 110 | $372 | $275 | $350 | $460 |
| | 101-150 | 24 | $377 | $281 | $340 | $458 |
| | More than 150 | 55 | $386 | $320 | $390 | $450 |

AIPLA Report of the Economic Survey 2011
I-52

**Exhibit A**
**Page 5**
**A072**

*Private Firm, Of Counsel*

**Average hourly billing rate in 2010 (Q34)**
*Private Firm, Of Counsel*

| | | Average hourly billing rate in 2010 | | | |
|---|---|---|---|---|---|
| | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
| All Individuals | | 71 | $416 | $300 | $400 | $500 |
| | Fewer than 5 | 1 | ISD | ISD | ISD | ISD |
| | 5-6 | 4 | $311 | $240 | $313 | $381 |
| Years of Intellectual Property Law Experience | 7-9 | 4 | $366 | $271 | $368 | $460 |
| | 10-14 | 18 | $422 | $339 | $393 | $518 |
| | 15-24 | 16 | $390 | $300 | $345 | $476 |
| | 25-34 | 12 | $418 | $289 | $413 | $519 |
| | 35 or More | 15 | $502 | $390 | $450 | $600 |
| | Boston CMSA | 1 | ISD | ISD | ISD | ISD |
| | NYC CMSA | 5 | $442 | $385 | $400 | $520 |
| | Philadelphia CMSA | 2 | ISD | ISD | ISD | ISD |
| | Washington, DC CMSA | 19 | $485 | $400 | $450 | $585 |
| | Other East | 5 | $331 | $283 | $300 | $395 |
| | Metro Southeast | 8 | $394 | $306 | $376 | $488 |
| | Other Southeast | 4 | $308 | $300 | $303 | $320 |
| Location | Chicago CMSA | 2 | ISD | ISD | ISD | ISD |
| | Minne.-St. Paul PMSA | 3 | $345 | ISD | $300 | ISD |
| | Other Central | 7 | $257 | $220 | $250 | $300 |
| | Texas | 7 | $520 | $475 | $485 | $525 |
| | San Francisco CMSA | 4 | $623 | $574 | $613 | $681 |
| | Other West | 4 | $390 | $339 | $388 | $444 |
| | Biotechnology | 6 | $483 | $413 | $480 | $589 |
| | Chemical | 3 | $305 | ISD | $285 | ISD |
| | Computer Hardware | 2 | ISD | ISD | ISD | ISD |
| IP Technical Specialization (>=50%) | Computer Software | 5 | $483 | $317 | $515 | $633 |
| | Electrical | 8 | $494 | $363 | $420 | $619 |
| | Mechanical | 16 | $383 | $281 | $343 | $476 |
| | Medical/ Health Care | 4 | $428 | $318 | $405 | $560 |
| | Pharmaceutical | 2 | ISD | ISD | ISD | ISD |
| | Other areas | 0 | ISD | ISD | ISD | ISD |
| | Younger than 35 | 1 | ISD | ISD | ISD | ISD |
| | 35-39 | 5 | $355 | $204 | $325 | $523 |
| | 40-44 | 14 | $375 | $300 | $343 | $409 |
| Age | 45-49 | 7 | $459 | $400 | $440 | $560 |
| | 50-54 | 9 | $341 | $280 | $300 | $415 |
| | 55-59 | 6 | $367 | $258 | $379 | $464 |
| | 60 or Older | 29 | $469 | $348 | $450 | $593 |
| Gender | Male | 58 | $425 | $304 | $400 | $518 |
| | Female | 13 | $374 | $268 | $350 | $478 |
| Highest Non-Law Degree | Bachelor's Degree | 36 | $415 | $300 | $390 | $483 |
| | Master's Degree | 22 | $400 | $300 | $385 | $506 |
| | Doctorate Degree | 5 | $486 | $338 | $505 | $625 |
| | White/Caucasian | 61 | $412 | $300 | $400 | $493 |
| | Black/African American | 1 | ISD | ISD | ISD | ISD |
| Ethnicity | Hispanic/Latino | 1 | ISD | ISD | ISD | ISD |
| | Asian/Pacific Islander | 4 | $348 | $286 | $342 | $418 |
| | Blended | 2 | ISD | ISD | ISD | ISD |
| | 1-2 | 7 | $377 | $295 | $350 | $450 |
| | 3-5 | 9 | $330 | $275 | $325 | $395 |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 6-10 | 8 | $303 | $209 | $330 | $378 |
| | 11-25 | 11 | $328 | $270 | $300 | $400 |
| | 26-50 | 12 | $403 | $300 | $368 | $483 |
| | 51-100 | 13 | $514 | $450 | $500 | $545 |
| | 101-150 | 4 | $508 | $450 | $503 | $570 |
| | More than 150 | 6 | $659 | $590 | $613 | $743 |

AIPLA Report of the Economic Survey 2011
I-70

| Invoice Number | Service Period | Date | D. Rigler | Rate | Hours | J. Goehring | Rate | Hours | Total Attorney F |
|---|---|---|---|---|---|---|---|---|---|
| 12I007 | January 2012 | 1/31/2012 | $ 11,820.00 | $ 600.00 | 19.70 | $ 8,378.00 | $ 295.00 | 28.40 | $ 20,198.00 |
| 12I012 | February 2012 | 2/29/2012 | $ 8,100.00 | $ 600.00 | 13.50 | $ 2,282.00 | $ 315.00 | 7.20 | $ 10,382.00 |
| 12I014 | March 2012 | 3/31/2012 | $ - | $ 600.00 | 0.00 | $ 5,190.00 | $ 315.00 | 16.50 | $ 5,190.00 |
| 12I023 | June 2012 | 6/30/2012 | $ 4,260.00 | $ 600.00 | 7.10 | $ 15,561.00 | $ 315.00 | 49.40 | $ 19,821.00 |
| 12I023 | May 2012 | 6/30/2012 | $ 780.00 | $ 600.00 | 1.30 | $ 3,370.50 | $ 315.00 | 10.70 | $ 4,150.50 |
| 12I023 | April 2012 | 6/30/2012 | $ 2,400.00 | $ 600.00 | 4.00 | $ 1,921.50 | $ 315.00 | 6.10 | $ 4,321.50 |
| 12I042 | August 2012 | 8/31/2012 | $ 1,980.00 | $ 600.00 | 3.30 | $ 8,599.50 | $ 315.00 | 27.30 | $ 10,579.50 |
| 12I042 | July 2012 | 8/31/2012 | $ 1,680.00 | $ 600.00 | 2.80 | $ 3,024.00 | $ 315.00 | 9.60 | $ 4,704.00 |
| 12I046 | September 2012 | 9/30/2012 | $ 4,260.00 | $ 600.00 | 7.10 | $ 9,387.00 | $ 315.00 | 29.80 | $ 13,647.00 |
| 12I056 | October 2012 | 10/31/2012 | $ 3,840.00 | $ 600.00 | 6.40 | $ 4,378.50 | $ 315.00 | 13.90 | $ 8,218.50 |
| 12I060 | November 2012 | 11/30/2012 | $ 1,500.00 | $ 600.00 | 2.50 | $ 1,593.00 | $ 295.00 | 5.40 | $ 3,093.00 |
| 13I005 | January 2013 | 1/31/2013 | $ 2,880.00 | $ 600.00 | 4.80 | $ 4,395.50 | $ 295.00 | 14.90 | $ 7,275.50 |
| 13I010 | February 2013 | 2/28/2013 | $ 2,880.00 | $ 600.00 | 4.80 | $ 4,307.00 | $ 295.00 | 14.60 | $ 7,187.00 |
| 13I018 | March 2013 | 3/31/2013 | $ 1,170.00 | $ 600.00 | 1.80 | $ 4,851.00 | $ 315.00 | 15.40 | $ 6,021.00 |
| 13I024 | April 2013 | 4/30/2013 | $ 16,020.00 | $ 600.00 | 26.70 | $ 17,287.00 | $ 295.00 | 58.60 | $ 33,307.00 |
| 13I031 | June 2013 | 6/30/2013 | $ 4,200.00 | $ 600.00 | 7.00 | $ 3,805.50 | $ 295.00 | 12.90 | $ 8,005.50 |
| 13I031 | May 2013 | 6/30/2013 | $ 11,940.00 | $ 600.00 | 19.90 | $ 5,841.00 | $ 295.00 | 19.80 | $ 17,781.00 |
| n/a | July & Aug 2013 | n/a | | $600 | 5.50 | $ 6,016.50 | $ 315.00 | 19.10 | $ 9,316.50 |
| TOTAL | | | $ 83,010.00 | | 138.20 | $ 110,188.50 | | 359.60 | $ 193,198.50 |

**Exhibit B**
**Page 7**
**A074**

**12I007**          Draft and prepare confidential letter to Magistrate Judge Adler outlining MKT position with respect to forthcoming Early Neutral Evaluation Conference; preparation for tele conference with AC counsel M. Valenti re form and content of lengthy status report to Court; various communications with MKT re ENE conference; format and presentation to be made by MKT; meet in Paris with MKT; review of issues and preparation for ENE conference; review of AC opposition to MKT motion to dismiss indirect infringement claims; commence reply to same; finalize and file MKT reply to AC opposition; final preparation for ENE (last minute news that Judge Adler is ill and we would appear before a substitute judge); meet with MKT and attend Early Neutral Evaluation Conference.

**12I012**          draft status report re Early Neutral Evaluation; attention to Scheduling Order and obligation re same; advise re strategy options; receipt of AntiCancer document production demand; consideration of objections; advise MKT re dates and strategy re future activities; further extensive invalidity research; receipt of AC infringement contentions and supporting materials; commence review of same; correspondence with MKT regarding the above

**12I014**          attention to invalidity contentions; prior art search; further prosecution file search and review re invalidity contentions; correspondence with MKT regarding the above

**12I023**          canceled the Hearing; negotiate, prepare, and file file Joint Motion to Modify the Schedule Regarding Patent Disclosures; CMC by telephone with Judge Adler re status and schedule; Attention to invalidity contentions, priority dates, prior art search, and patent file histories; document review, review AC document production; review claim construction terms to be construed and proposed constructions; Review CellSight Motion for Summary Judgment; review AC's proposed claim constructions which they sent in advance of the 7-3 exchange date; correspondence with MKT regarding the above

**12I042**          coordinate date selection of settlement conference; counter claim constructions and designation of extrinsic evidence; receive and review claim construction chart from AC; telephone status conf. with Judge Adler; correspondence with AC counsel re. discovery meet and confer; prepare draft joint claim construction statement, chart, and worksheet and finalize for filing; review file histories regarding submission of videos; correspondence regarding missing videos; review status of AC's other litigation; correspondence with MKT regarding the above

**Exhibit C**
**Page 8**
**A075**

**12I046**             identify and obtain missing videos from USPTO archive; prepare, edit, and file claim construction brief; review AC's claim construction brief; correspondence with MKT regarding the above

**12I056**             prepare, edit, and file responsive claim construction brief; review AC's responsive claim construction brief; reschedule claim construction hearing; correspondence with MKT regarding the above

**12I060**             case reassigned to J. Bencivengo; review status of AC's other litigation and summary judgment motions; correspondence with MKT regarding the above

**13I005**             prepare status report memorandum for MKT; draft and edit discovery requests; prepare letter re. potential Rule 11 motion; correspondence with MKT regarding the above

**13I010**             finalize and serve discovery requests; AC request and motion to reschedule claim construction hearing; prepare and file opposition to reschedule hearing; correspondence with MKT regarding the above

**13I018**             research and draft Rule 11 motion; prepare and file protective order; review documents for production; correspondence with MKT regarding the above

**13I024**             review AC discovery requests and consider objections; research and draft Rule 11 motion; discovery issues re. AC responses and inadequacies; prepare and edit MKT responses and objections to AC discovery requests; prepare for an attend claim construction hearing; correspondence with MKT regarding the above

**13I031**             report hearing to MKT; discovery document review and preparation; finalize and serve Rule 11 motion; conf. call with AC counsel for meet and confer re. motion to compel; review email and proposed motion to dismiss from AC counsel; review motion to dismiss and amended complaint from AC counsel; correspondence with AC counsel re. joint motion and motion for attorney's fees; status conference hearing with Court; order and review transcript; research regarding motion for attorney's fees; correspondence with MKT regarding the above

**Exhibit C**
**Page 9**
**A076**

**Billing in July and August 2013 since last invoice:**

prepare joint motion to dismiss and order and correspondence with AC counsel regarding the same; finalize and file motion; research, prepare, and file motion for attorney's fees under 35 U.S.C. 285 and correspondence with MKT regarding the same; review, finalize, and file motion.

**Exhibit C**
**Page 10**
**A077**



- Home
- Who We Are
- What We Do
- In-House Training
- IP Museum
- Client Portal
- Links
- Contact

# Douglas V. Rigler

Mr. Rigler is a partner in the Firm and head of Young & Thompson's Licensing & Litigation Group. He is a highly experienced litigator, having argued twice as lead counsel selected to speak for multiple parties, including five foreign governments, in the Supreme Court of the United States. He has argued in numerous federal courts of appeal and state supreme courts, and before the U.S. International Trade Commission. At the trial level, he has been lead counsel in jury and bench trials in federal and state courts throughout the United States. During service as a member of the Atomic Safety and Licensing Board Panel of the U.S. Nuclear Regulatory Commission, Mr. Rigler presided over the largest antitrust trial in the history of the Agency, and the comprehensive opinion of the panel he chaired was upheld on appeal.

In addition to court appearances in the United States, Mr. Rigler has had a supervisory role as worldwide coordinating counsel for pretrial discovery, trial issues and strategy, and settlement of a number of international disputes involving U.S. and foreign counterpart patents. He has had widespread experience in the taking of international discovery in connection with U.S. and foreign proceedings, representing parties seeking information as well as parties resisting the production of information.

In addition to his courtroom practice, Mr. Rigler participates in dispute resolution through arbitration. Mr. Rigler has arbitrated in the United States and in foreign countries under the rules of the International Chamber of Commerce, the American Arbitration Association, the London Court of International Arbitration, and under ad hoc rules.

Either in connection with settlement of disputes or as a matter of a client's independent business objectives, Mr. Rigler drafts, negotiates and monitors license agreements on behalf of our clients. These agreements are domestic and international and include a large and diverse number of products and services. He also drafts and negotiates joint venture agreements and related commercial agreements.

Mr. Rigler attended The Johns Hopkins University and The United States Naval Academy. After completing his commitment as a Naval Aviator, he attended the George Washington University Law School where he was an honors graduate and an editor of the Law Review. He is the author of a number of law review articles.

**Back**

**Exhibit D**
**Page 11**
**A078**





Phone: (703) 521-2297 ext. 144

E-mail: drigler@Young-Thompson.com

Home | Who We Are | Contact | FAQ | Information Links | What We Do | Photo Gallery | Lunch Lectures | Client Portal | IP Museum | Site Map

Copyright © 2012 Young & Thompson. All Rights Reserved.

**Exhibit D**
**Page 12**
**A079**



- Home
- Who We Are
- What We Do
- In-House Training
- IP Museum
- Client Portal
- Links
- Contact



# Jeff Goehring

Mr. Goehring is an associate attorney in the Licensing and Litigation Group. Mr. Goehring holds a Bachelor of Arts degree in molecular biology from the University of Pennsylvania and is a 2004 graduate of Tulane Law School. He is a member of the California and the District of Columbia bars, and is registered to practice before the U.S. Patent and Trademark Office. As a law student, Mr. Goehring clerked for the Board of Patent Appeals and Interferences and for the Civil Division of the U.S. Attorney's Office in New Orleans.

**Back**



Phone: (703) 521-2297 ext. 148

E-mail: jgoehring@Young-Thompson.com

Home | Who We Are | Contact | FAQ | Information Links | What We Do | Photo Gallery | Lunch Lectures | Client Portal | IP Museum | Site Map

Copyright © 2012 Young & Thompson. All Rights Reserved.

www.young-thompson.com/who_we_are/jgoehring.html          1/1

**Exhibit D**
**Page 13**
**A080**

Matt Valenti (SBN 253978)
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111
Tel:  (858) 654-2555
Fax: (858) 268-4175
Email: mattvalenti@anticancer.com

Attorney for Defendant AntiCancer, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUNA KEA TECHNOLOGIES, INC., | ) Civil Action No. 11cv1407 CAB JMA |
| Plaintiff, | ) **ANTICANCER, INC.'S OPPOSITION TO MAUNA KEA TECHNOLOGIES' MOTION FOR ATTORNEYS' FEES** |
| v. | ) |
| ANTICANCER, INC., | ) Date: October 17, 2013 |
| Defendant. | ) Time: 2:00 p.m. |
| | ) Courtroom: 4C |
| | ) Judge: Hon. Cathy A. Bencivengo |

AntiCancer, Inc., ("AntiCancer") respectfully files this <u>Opposition</u> to Mauna Kea

Technologies' ("Mauna Kea") "Motion for Attorney's Fees Under 35 USC 285."

rewarded for its intransigent refusal to produce documents; the natural consequence of such refusal if to decline to find this case exceptional.

    **b.** **Despite promising to do so, Mauna Kea failed to produce documents regarding Mauna Kea's own pre-filing investigation and the reasonableness of its claims of invalidity against AntiCancer.**

Mauna Kea improperly withheld discovery documents, thus precluding AntiCancer from evaluating Mauna Kea's good faith and subjective expectation of success on Mauna Kea's invalidity claims. Mauna Kea did not produce any promised documents regarding its pre-filing investigation. Valenti Dec. ¶¶ 15-17. Not a single one. AntiCancer, on the other hand, produced over 3,700 pages of documents regarding its counterclaim pre-filing investigation. Valenti Dec. ¶ 14.

There is reason to believe Mauna Kea's documents were never produced because Mauna Kea itself inadequately investigated its own claims, particularly with respect to its claims of patent invalidity. AntiCancer's asserted patents have repeatedly survived vigorous invalidity challenges. Mauna Kea filed its Declaratory Judgment action in the Eastern District of Pennsylvania, a mere few weeks after receiving the letter from Dan Lawton which served as the basis for its action. A reasonable inference from this timeframe is that Mauna Kea did not adequately investigate its claims of invalidity before making them, and this inference is supported by the fact that Mauna Kea never produced to Anticancer any documents that might show proof of its investigation prior to filing its claims of invalidity.

    **2.** **The evidence submitted by Mauna Kea supporting its attorneys' hours worked is grossly inadequate and misleading.**

1       In addition to evidence supporting the rates claimed, "[t]he party seeking an
2   award of fees should submit evidence supporting the hours worked." *Hensley v.*
3   *Eckerhart*, 461 U.S. 424, 433 (1983).[1] "Where the documentation of hours is
4   inadequate, the district court may reduce the award accordingly." *Id*. at 433. The
5   applicant "should maintain billing time records in a manner that will enable
6   reviewing court to identify distinct claims." *Id*. at 437.

7       Mauna Kea's counsel performed work on the case that it would have
8   performed as a result of filing its Declaratory Judgment motion, regardless of
9   whether AntiCancer had filed its infringement counterclaims or not. This includes
10  nearly all the discovery it conducted, and all claims construction work. This other
11  work must be separated from the work done specifically to defend against the
12  infringement counterclaims and subtracted from the total attorney's fees charged.
13  Only fees charged specifically to defend against AntiCancer's counterclaims
14  should be awarded to Mauna Kea.

15      Failure to submit evidence supporting the hours worked is further
16  highlighted by the impossibility of separating the work done on AntiCancer's
17  counterclaims and on other work based on the cursory information provided in
18  Exhibit C, pages 8–10 of Mauna Kea's Motion for Attorney's Fees.  The
19  documentation of hours submitted my Mauna Kea in this case is wholly
20  inadequate. *See Hensley* at 433.

21      All or almost all the work listed in Exhibit C would have been necessary
22  because Mauna Kea initially filed its declaratory judgment action. AntiCancer
23  would have had to defend itself against the declaratory judgment action, resulting

---

[1]  Although *Hensley* was decided in context of the Civil Rights Attorney's Fees Awards Act, in a
footnote, the Court in *Hensley* emphasized that its decision extended beyond civil rights cases.
"The standards set forth in this opinion are generally applicable in all cases in which Congress
has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n. 7. *See also
U.S. v. Chapman*, 146 F. 3d 1166, 1176 (9th Cir. 1998).

**ANTICANCER, INC.'S <u>OPPOSITION</u> TO MAUNA KEA TECHNOLOGIES' MOTION FOR ATTORNEYS' FEES**

´29

**A083**

in virtually the identical work done as listed in Exhibit C. Exhibit C combines all work done on the case starting with the Early Neutral Evaluation Conference as though none of the work would have been necessary if the declaratory judgment had been filed.

There is virtually no work listed in Exhibit C that would not have been performed had AntiCancer not filed its counterclaims. Only a single line on page 8 of Exhibit C in the paragraph labeled "12I042" could be said to describe work pertaining to the counterclaim: "counter claim constructions and designation of extrinsic evidence." (Motion for Attorney's Fees, Exhibit C 8, Doc. No. 62.) But this line is so brief and vague that it fails as "evidence" to support the hours worked. The evidence submitted by Mauna Kea falls far short of that required for recovery of any attorney's fees.

## V.    CONCLUSION.

For all of the foregoing reasons, the Court should deny Mauna Kea's Motion for Attorney's Fees.

Respectfully submitted,

ANTICANCER, INC.

DATED:      October 3, 2013         By:    /s/ *Matt Valenti*
                                                 MATT VALENTI
                                        Attorney for Defendant AntiCancer, Inc.

1 YOUNG & THOMPSON
2 Douglas V. Rigler (pro hac vice)
  drigler@young-thompson.com
3 Jeffrey M. Goehring, 233002
  jgoehring@young-thompson.com
4 209 Madison Street, Suite 500
5 Alexandria, Virginia 22314
  Telephone: (703) 521-2297
6 Facsimile: (703) 685-0573

7
8 Counsel for Mauna Kea Technologies

9           THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT CALIFORNIA
10

11 MAUNA KEA TECHNOLOGIES,
12
                    Declaratory Judgment
13 Plaintiff,
14
15 v.                                    Civil Action No.  11-cv-1407 CAB
                                         JMA
16 ANTICANCER, INC.

17                  Declaratory Judgment    **REPLY IN SUPPORT OF MAUNA
18 Defendant;                              KEA TECHNOLOGIES' MOTION
                                           FOR ATTORNEY'S FEES UNDER
19                                         35 USC 285**
20 ANTICANCER, INC.,

21                       Counterclaim-      Date: October 17, 2013
22 Plaintiff,                               Time: 2:00 p.m.
                                            Courtroom: 4C
23 v.                                       Judge: Bencivengo
24
25 MAUNA KEA TECHNOLOGIES,
   and DOES 1-10,
26
27                       Counterclaim-
   Defendants
28

**A085**

with different customers, that would not be a justification for bringing an unsupportable claim against MKT.

• *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, at \*14-17 (Fed. Cir. Aug. 13, 2013), confirmed that litigation misconduct such as "vexatious or unjustified litigation, conduct that violates Rule 11, or like infractions" supports exceptionality **even without bad faith**. "Indeed, it is only absent litigation misconduct or misconduct in securing the patent that we require the finding of both 'bad faith' and 'objectively baseless' litigation to warrant sanctions under § 285." *Id* at \*15.

• MKT seeks fees arising only after AC's infringement counterclaims, which were compulsory, not permissive. Had AC simply admitted non-infringement at the outset (as it ultimately did) the validity issues would not have been litigated for lack of jurisdiction. Accordingly, all work was truly a direct result of AC's counterclaims.

October 10, 2013

YOUNG & THOMPSON

By:   /s/ Jeffrey M. Goehring
         Jeffrey M. Goehring

Counsel for Mauna Kea Technologies

I declare that the within Reply was served on counsel for AntiCancer, Inc. on this 10th day of October 2013 by the Court's ECF system.

By:   /s/ Jeffrey M. Goehring
         Jeffrey M. Goehring

of infringement in any of its suits and has sustained several adverse judgments.

## <u>TABLE OF CONTENTS</u>

**Exhibit E**      **Cover letter/email to Douglas Rigler
with attached letter**                **Pages 14 – 18**

**Exhibit F**      **May 10, 2012 letter from
J. Goehring to M. Valenti**           **Pages 19 - 31**

**Exhibit G**      **May 28, 2012 email from M. Valenti
to J. Goehring**                      **Pages 32 - 33**

**Exhibit H**      **May 9, 2012 letter from J.Goehring to
M. Valenti**                          **Pages 34-35**

**A087**

# Exhibit G

**Jeff Goehring**

| | |
|---|---|
| **From:** | Matt Valenti [Mattvalenti@anticancer.com] |
| **Posted At:** | Tuesday, May 28, 2013 3:28 PM |
| **Conversation:** | Dismissal of counterclaims |
| **Subject:** | Dismissal of counterclaims |

Dear Jeff,

As we are still in the safe harbor period provided by Rule 11, AntiCancer has decided to withdraw our Answer and Counterclaims and to dismiss with prejudice our counterclaims.

I have attached for your review a draft joint motion per Rule 41. Please review and let me know if it is acceptable to file with your signature.

Thank you,
Matt

Matt Valenti
Vice President and General Counsel

**ANTICANCER, INC.**
7917 Ostrow Street
San Diego, CA 92111
Phone: 858-654-2555
mattvalenti@anticancer.com

# Exhibit H

# YOUNG & THOMPSON

International Patent & Trademark Law

*Established 1903*

Emil Bönnelycke
1875–1936

William H. Young
1902–1958

Irvin S. Thompson
1903–1979



May 9, 2013

Matthew D. Valenti
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111

Re: *Mauna Kea Technologies, Inc. v. AntiCancer, Inc.*
Civil Action No. 11-cv-1407 AJB JMA

Dear Mr. Valenti,

As noted in detail in our previous letter of February 7, 2013, AntiCancer's Counterclaims are in violation of Rule 11 and subject you and AntiCancer to sanctions. Since we have had no response from you on this point, it was necessary to prepare a motion. Please see enclosed the Motion, the Memorandum in support of the Motion, Exhibits 1-7, and a Certificate of Service.

We will file the Motion with the Court after expiration of the safe harbour period.

Sincerely yours,

Jeffrey Goehring

JG/cam
Enclosures

209 Madison Street, Suite 500
Alexandria, Virginia 22314
(703) 521-2297

*Website*: www.young-thompson.com
*Facsimile*: (703) 685-0573 · (703)-979-4709
*Licensing & Litigation Fax*: (703) 521-8231