Appeal No. 2014-1412

_____

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

## MAUNA KEA TECHNOLOGIES

*Plaintiff-Appellant,*

v.

## ANTICANCER, INC.,

*Defendant-Appellee,*

Appeal from the United States District Court for the Southern District
of California in Case No. 3:11-CV-01407-CAB-JMA,
Judge Cathy Ann Bencivengo.

_____

## DEFENDANT-APPELLEE ANTICANCER, INC.'S BRIEF

_____

Matt Valenti
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111
858-654-2555
Attorney for Defendant-Appellee
AntiCancer, Inc.

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the appellee AntiCancer, Inc., certifies the following:

1. The full name of every party or amicus represented by me is: AntiCancer, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Matt Valenti
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111
858-654-2555 (Tel.)

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ......................................................1

STATEMENT OF JURISDICTION.......................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE .............................................................. 2

STATEMENT OF FACTS ...................................................................7

SUMMARY OF THE ARGUMENT .....................................................8

ARGUMENT AND STANDARD OF REVIEW......................................10

  A. STANDARD OF REVIEW .........................................................10

  B. ARGUMENT .............................................................................11

    I. Mauna Kea Has Waived Its Arguments For the Sufficiency of Its Fee Documentation By Not Raising Them With the District Court When It Had the Opportunity. .................................11

    II. The District Court Correctly Found That No Award Was Justified in Light of Mauna Kea's Failure to Adequately Document Its Claimed Fees, and Properly Found That Fees Spent in Pursuit of Mauna Kea's Invalidity Claims Were Non-Compensable. ................................................................16

      A. Inadequate documentation of attorneys' services is proper grounds for denial of an award of attorney's fees...................17

      B. Rule 54 does not require a district court to accept inadequate documentation or to allow a party seeking attorney fees to set the court's schedule. ...........................................21

C. The district court was correct in its reasoning that activities not directly related to defending against AntiCancer's counterclaims were not compensable, even if they had been properly documented. ……………………………………………..24

III. The Plain Language of §285 and the Supreme Court's Ruling in *Octane Fitness* Make Clear That A District Court May Decline to Award Attorney Fees Without Needing to Justify That Decision. ……………………………………………...………... 32

IV. The District Court's Decision to Decline to Award Attorney's Fees Can Also Be Affirmed On An Alternate Basis, That Mauna Kea Had Unclean Hands. …………………………………..35

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ………..…36

# TABLE OF AUTHORITIES

## CASES

*Automated Business Co. v. NEC America,*
    202 F. 3d 1353 (Fed Cir. 2000) ................................................34

*Avgoutis v. Shinseki,*
    639 F. 3d 1340 (Fed. Cir. 2011) ...........................................16

*Badalamenti v. Dunham's, Inc.,*
    896 F. 2d 1359 (Fed. Cir. 1990) ...........................................34

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ...........................................................24

*Colo. River Water Conservation Dist. V. United States,*
    424 U.S. 800 (1976) .........................................................28

*Gardco Mfg., Inc. v. Herst Lightning Co.,*
    820 F. 2d 1209 (Fed Cir. 1987) ...........................................34

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .....................................................*passim*

*HTC Corp. v. IPCom GmbH & Co,*
    667 F.3d 1270 (Fed. Cir. 2012) .......................................9, 11

*In re. Washington Public Power Supply Sys. Lit.,*
    19 F. 3d 1291 (9th Cir. 1994)...........................................9, 18

*Interactive Gift Express, Inc. v. Compuserve, Inc.,*
    256 F.3d 1323 (Fed. Cir. 2001) ...........................................11

*Keystone Driller Co. v. General Excavator Co.,*
290 U.S. 240 (1933) ……………………………………...……10, 35

*Kilopass Tech., Inc. v. Sidense Corp.,*
738 F 3d. 1302 (Fed. Cir. 2013) …………………………...……….25

*L.E.A. Dynatech, Inc. v. Allina,*
49 F.3d 1527 (Fed. Cir. 1995) ………………………………...……14

*Norman v. Housing Authority of the City of Montgomery,*
836 F. 2d 1292 (11th Cir. 1988) ………………………………...…19

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
572 U.S. ___, ___ (2014)……………………………………9, 32-33

*PPG Indus. v. Celanese Polymer Spec Co.,*
840 F. 2d 1565 (Fed. Cir. 1988)………………………...………*passim*

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery*
Co., 324 U.S. 806 (1945) ………………………………………………36

*Singleton v. Wulff,*
428 U.S. 106 (1976)…………………………………...……11, 13-14

*Slimfold Mfg. Co. v. Kinkead Indus.,*
932 F.2d 1453 (Fed. Cir. 1991)……………………………9, 18-19

*Superior Fireplace v. Majestic Products,*
270 F. 3d 1358 (Fed. Cir. 2001) ………………………………*passim*

*Takeda Chem. V. Mylan,*
549 F. 3d 1381 (Fed. Cir. 2009)…………………………………...10, 16

## STATUTES

35 U.S.C. §285...................................................................*passim*

## RULES

Fed. R. Civ. P. 11...........................................................................5

Fed. R. Civ. P. 54.....................................................................21-23

Fed. R. Civ. P. 54(d)(2)(C) ...........................................................22

Fed. R. Civ. P. 54 Advisory Committee Notes 1993 Amendment ...........23

Pennsylvania R. of Prof. Conduct 3.3 ...................................3, 37

## STATEMENT OF RELATED CASES

Counsel for the appellee AntiCancer, Inc., certifies the following:

1.     No appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court.

2.     There is no case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

Appellee AntiCancer, Inc. agrees with the Jurisdictional Statement submitted by Appellant Mauna Kea Technologies on page 1 of its Opening brief.

## STATEMENT OF THE ISSUES

1.     Did Appellant waive its arguments regarding the sufficiency of its evidence regarding attorney's fees where it failed to raise those arguments at the district court, thereby depriving the district court of the opportunity to rule on those arguments?

2.     Did the district court properly deny an award of attorney's fees where the appellant submitted deficient records of its attorney's

time and activities, and where most of the fees it sought were not directly related to the claims that were found exceptional?

3. Was the district court permitted to deny an award of attorney's fees where the plain language of the statute which allows such an award requires no justification for the denial of an award?

4. Was the district court permitted to deny an award of attorney's fees where the appellant had unclean hands?

### STATEMENT OF THE CASE

This is an appeal from an order of the United States District Court for the Southern District of California, issued March 12, 2014, in which the Honorable Judge Cathy Ann Bencivengo ruled that plaintiff-appellant Mauna Kea Technologies ("Mauna Kea") was not entitled to an award of attorney's fees. (A001-A013.) Though the district court found that Mauna Kea was the prevailing party and the case was exceptional, the court declined to award fees, finding that Mauna Kea "failed to meet its burden to justify reasonable fees." (A013.)

This was the end to a litigation history that Mauna Kea initiated in 2010. Mauna Kea initially sued defendant-appellee AntiCancer, Inc. ("AntiCancer") for declaratory judgment of non-infringement and

invalidity in the Eastern District of Pennsylvania (Philadelphia) on December 6, 2010. AntiCancer had no presence whatsoever in that district, and so filed a motion to dismiss for lack of personal jurisdiction.

In granting AntiCancer's motion and dismissing Mauna Kea's original case, the Eastern District Court of Pennsylvania noted that Mauna Kea had submitted misleading arguments and statements of fact to the court:

> Mauna Kea also ignores the controlling law with regard to personal jurisdiction and incorrectly defines the standard, even after AntiCancer specifically cited the relevant case law in its motion to dismiss. Mauna Kea also stated in its response in opposition to defendant's motion to dismiss that "AntiCancer has sent cease and desist letter to Pennsylvania," Pl. Resp. at 9, which is clearly not the case. AntiCancer sent those letters to Paris, not Philadelphia (although the two cities, in this Court's view, could certainly be mistaken for one another, especially during Springtime). We remind Mauna Kea that Rule 3.3 of the Pennsylvania Rule of Professional Conduct forbids a lawyer from "mak[ing] a false statement of material fact or law to a tribunal.

(A093.)

Undeterred by the dismissal, Mauna Kea then filed the instant case on June 27, 2011. Its complaint, which was nearly identical to the one filed in the Eastern District of Pennsylvania, it sought a declaratory

judgment of non-infringement and invalidity of three of AntiCancer's patents. (A023-A029.)

On August 22, 2011 AntiCancer filed a motion to dismiss on the basis that the court lacked subject matter jurisdiction.

Mauna Kea opposed AntiCancer's motion and the district court denied the motion. On November 23, 2011 AntiCancer filed its Answer and Counterclaims. In it, AntiCancer asserted that Mauna Kea had infringed on the three patents-in-suit.

For the next year the parties engaged in typical patent litigation activities, including filing claim construction charts, and, per the local patent rules, serving preliminary infringement contentions and preliminary invalidity contentions, as well as engaging in discovery.

On March 20, 2013 AntiCancer served responses to Mauna Kea's numerous requests for documents, including over three thousand pages of evidence that AntiCancer analyzed prior to bringing its counterclaims. The next day, AntiCancer served requests for documents on Mauna Kea. Though Mauna Kea's counsel promised to produce documents, it failed to do so, and never produced any of AntiCancer's requested documents.

On May 9, 2013 Mauna Kea served by mail an unfiled Rule 11 motion on AntiCancer, alleging that AntiCancer and its counsel, Matt Valenti, did not conduct an adequate pre-lawsuit investigation before filing its counterclaims, and seeking sanctions against both AntiCancer and Matt Valenti.

On May 30, 2013 AntiCancer filed a notice of formal withdrawal of its counterclaims, and on July 17 joined Mauna Kea in a motion to dismiss its counterclaims.

On July 29, 2013 the district court issued an order dismissing AntiCancer's counterclaims with prejudice. Mauna Kea's invalidity claims were dismissed without prejudice.

On August 9, 2013 Mauna Kea filed its motion for attorney's fees pursuant to §285. Anticancer filed its opposition on October 3, and Mauna Kea filed its reply on October 10.

Notably, Mauna Kea did not respond to AntiCancer's arguments that Mauna Kea's evidentiary support for its claimed attorney's fees was insufficient, nor did it supplement with any further evidence of those fees.

On March 12, 2014 the district court issued its ruling, finding that the case was exceptional because AntiCancer's counterclaims were "objectively baseless." However, the district court did not find any evidence of litigation misconduct or other improprieties.

The district court reviewed the documentation submitted by Mauna Kea in support of its fee request, primarily in the form of a one-page spreadsheet listing monthly amounts, and a two-page invoice summary. As the district court noted, "The descriptions are not broken down by attorney, day, task, service category, or hours spent per task on service category." (A011.) The district court thus found that Mauna Kea failed to sufficiently prove the reasonableness of the fees it claimed. The district court stated:

> Sufficient information should have been provided so as to allow both AntiCancer and the Court to identify the hours and assess the reasonableness of the hours worked in defending counterclaims. Again, the documents submitted do not reflect who did what work, the date on which the work was performed, or the amount of time billed to any particular task or issue on any particular day. As such, the Court has no way of assessing the reasonableness of the hours worked or which hours were spent on defending counterclaims. As such, an award of attorney fees in this case would require speculation.

(A011-A012.)

Mauna Kea thereafter appealed the district court's ruling.

## STATEMENT OF FACTS

AntiCancer is a San Diego cancer research company founded thirty years ago. It is internationally recognized for its innovations in preclinical research using live animals. Among AntiCancer's technologies are the patents-in-suit, which encompass various methods for using proteins that are derived from a species of green-glowing jellyfish called *Aequorea Victoria* (as well as from related organisms in the animal kingdom). These proteins fluoresce brightly under certain conditions, and although they may be modified to fluoresce in numerous colors, they are generally referred to as "green fluorescent protein" or "GFP."

AntiCancer's methods enable researchers to genetically modify cells, such as cancer cells, to express GFP. Researchers can then implant the modified cells into living mice. The activity of various genes, or the spread of the cancer cells, can then be tracked by viewing and recording the florescent light emitted by the modified cells inside the living mice.

AntiCancer has extensively licensed the patents-in-suit to third

parties, including to a number of imaging device makers whose customers practice the methods of the patents.

Mauna Kea Technologies ("Mauna Kea") is an imaging device maker based in France. It has developed a series of microscopic imaging devices similar to others used to practice the patents-in-suit.

In 2006 and again in 2010 AntiCancer, both on its own and through its former counsel, sent letters to Mauna Kea inviting it to enter into license negotiations. Less than a month after receiving the 2010 letter, Mauna Kea filed its first suit against AntiCancer for declaratory judgment of non-infringement and invalidity in the Eastern District of Pennsylvania. Upon dismissal of that suit for lack of personal jurisdiction, it filed the instant suit, the procedural history of which is described above.

## SUMMARY OF THE ARGUMENT

AntiCancer will show:

(1) Mauna Kea waived its arguments for the sufficiency of its attorney's fees documentation by not raising them when it had an opportunity to do so before the district court, thereby denying the district court an opportunity to rule on those arguments. An appellate

court does not consider an issue not passed upon below. *HTC Corp. v. IPCom GmbH & Co*, 667 F.3d 1270, 1281 (Fed. Cir. 2012).

(2) The justification the district court stated for declining to award fees was proper and not an abuse of its discretion. "The party petitioning for attorney's fees 'bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *In re. Washington Public Power Supply Sys. Lit.*, 19 F. 3d 1291, 1305. Furthermore, Mauna Kea reliance on the decisions in *Slimfold Mfg. Co. v. Kinkead Indus.*, 932 F.2d 1453 (Fed. Cir. 1991) and *PPG Indus. v. Celanese Polymer Spec Co.*, 840 F. 2d 1565 (Fed. Cir. 1988) is misplaced. Those cases do not stand for the propositions Mauna Kea argues.

(3) The district court need not have expressed any justification at all for its decision to decline an award of fees. The Supreme Court's recent case *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. ___, ___ (2014) held that 35 U.S.C. §285 "imposes **one and only one constraint** on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." (Emphasis added.)

(4) The district court could have alternately denied an award of fees on the basis that Mauna Kea engaged in acts of litigation misconduct and so had unclean hands. As AntiCancer argued in the district court, it is a well-settled principle that a party who comes into equity must come in with clean hands. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244 (1933). Mauna Kea's overall litigation tactics including a specific instance of misleading a court and the failure to produce documents, despite repeated promises to do so, should preclude an award of attorney's fees.

## ARGUMENT  AND STANDARD OF REVIEW

### A.    STANDARD OF REVIEW

The standard of review is abuse of discretion. "[W]e review the award of attorney fees for abuse of discretion." *Takeda Chem. V. Mylan*, 549 F. 3d 1381, 1390.

"Under that standard, we will affirm a district court unless its decision was clearly unreasonable, arbitrary or fanciful, or based on erroneous conclusion of law or fact." *Id.* (citations omitted).

## B.   ARGUMENT

### I.   Mauna Kea Has Waived Its Arguments For the Sufficiency of Its Fee Documentation By Not Raising Them With the District Court When It Had the Opportunity.

Mauna Kea had an opportunity to raise its arguments with the district court, yet it failed to do so. As a result, the district court's ruling may be affirmed on the grounds that Mauna Kea waived its arguments that its fee documentation was sufficient or that it is somehow entitled to attorney's fees despite the inadequacy of its documentation.

As a general rule, an appellate court does not consider an issue not passed upon below. *HTC Corp. v. IPCom GmbH & Co*, 667 F.3d 1270, 1281 (Fed. Cir. 2012), citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1344 (Fed. Cir. 2001). This rule ensures finality in litigation by limiting the appealable issues to those a lower court had an opportunity to, and did, address. *Id.* The rule also conserves judicial resources because it prevents parties from undoing a lower court's efforts based on an error that a lower court could have considered and corrected. *Id.*

Here, Mauna Kea's reply brief made no response whatsoever to AntiCancer's arguments that the evidence Mauna Kea supplied to the district court in support of its claimed fees was grossly inadequate and misleading. (A108-A118.) Mauna Kea's one and only statement regarding its claimed fees was the following:

> [Mauna Kea] seeks fees arising only after AC's infringement counterclaims, which were compulsory, not permissive. Had AC simply admitted non-infringement at the outset (as it ultimately did) the validity issues would not have been litigated for lack of jurisdiction. Accordingly, all work was truly a direct result of AC's counterclaims.

(A118 (also A086).)

Mauna Kea made no effort whatsoever to analyze or distinguish *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which AntiCancer cited in its opposition brief, and which the district court relied on for its ruling. *Hensley*, as detailed further below, established the rule that "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id* at 433. *Hensley* further provides that the party seeking attorney's fees "should maintain billing time records in a manner that will enable reviewing court to identify distinct claims." *Id*. at 437. Mauna Kea, however, didn't even acknowledge the case, nor try to rebut AntiCancer's citation of it. (A108-A118.)

Nor did Mauna Kea argue that it was "under no obligation to provide evidentiary material bearing on the amount or reasonableness of attorney fees," as it does now for the first time. (A108-A118.)

Nor did Mauna Kea argue anything whatsoever about the requirements of Federal Rule of Civil Procedure 54, or even cite the rule, as it does now for the first time. (A108-A118.)

Nor did Mauna Kea offer any new details about its attorney's fees in response to AntiCancer raising the issue of the deficiency in their documentation, as it does now for the first time. (A108-A118.)

Nor did Mauna Kea make any request to the district court to supplement its documentation in the nearly *five months interim* between submitting its reply brief and the district court's ruling. (A108-A118.)

In sum, with the exception of the cursory argument regarding its invalidity claims (quoted above), Mauna Kea did nothing whatsoever to place before the district court the bulk of the arguments that it now makes on appeal. It has therefore waived those arguments.

It is true of course that the Federal Circuit has discretion to consider an issue for the first time on a case-by-case basis. *Singleton*,

428 U.S. at 120. The circumstances in which it might excuse a party's failure to preserve an issue, are: (1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the proper resolution is beyond any doubt; (3) the appellant had no opportunity to raise the objection at the district court level; (4) the issue presents significant questions of general impact or of great public concern; or (5) the interest of substantial justice is at stake. *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed. Cir. 1995) (citations omitted).

None of those circumstances exists here:

(1) The issue is not a pure question of law, since the issue involves factual determinations about the sufficiency of evidence supplied by Mauna Kea, and the "decision to award attorney fees, *vel non* [i.e., "or not"], is discretionary and 'permits the judge to weigh intangible as well as tangible factors.'" *Superior Fireplace v. Majestic Products*, 270 F. 3d 1358 (Fed. Cir. 2001). No miscarriage of justice will result if this Court refuses to consider Mauna Kea's arguments; it was Mauna Kea itself that put itself in this position by its failure to properly document the

fees claimed, even when given a second opportunity to do so after AntiCancer raised the issue.

(2) The proper resolution is not beyond any doubt, as thoroughly demonstrated by AntiCancer's arguments below.

(3) Mauna Kea had the opportunity to make its arguments regarding the sufficiency of its documentation at the district level, namely, in its reply brief after AntiCancer's opposition raised the issue and cited *Hensley*. It could have also attempted to submit such arguments, or further documentary evidence, at any time in the nearly five months before the district court ruled. Instead, it chose to do nothing.

(4) The issue does not present any questions of general impact or of great public concern.

(5) No interest of substantial justice is at stake. Again, this is a doubly self-inflicted wound on Mauna Kea's part: first when it failed to offer adequately detailed documentation, and second when it failed to address the issue when AntiCancer raised it.

This Court need go no further in its analysis in order to affirm the district court. Mauna Kea waived its arguments that its documentation

was sufficiently specific. And it waived its argument that Rule 54 should somehow be read to allow it to produce tardy evidence whenever it pleased. There is no reason why this Court should consider arguments that the district court could have considered had Mauna Kea properly placed them before it when it had the opportunity.

## II. The District Court Correctly Found That No Award Was Justified in Light of Mauna Kea's Failure to Adequately Document Its Claimed Fees, and Properly Found That Fees Spent in Pursuit of Mauna Kea's Invalidity Claims Were Non-Compensable.

The district court properly exercised its discretion in finding that Mauna Kea's inadequate documentation of its attorney's fees, and failure to differentiate between tasks related to AntiCancer's counterclaims, was grounds to deny an award.

The district court  was also within its discretion to decline Mauna Kea's offer to submit invoices under seal. *See Avgoutis v. Shinseki*, 639 F. 3d 1340, 2344-45 (Fed. Cir. 2011). None of the district court's analysis was "clearly unreasonable, arbitrary or fanciful, or based on erroneous conclusion of law or fact." *Takeda Chem. V. Mylan*, 549 F. 3d 1381, 1390.

## A.    Inadequate documentation of attorneys' services is proper grounds for denial of an award of attorney's fees.

As AntiCancer argued and the court found, the evidence Mauna Kea submitted to support its attorneys' hours worked was grossly inadequate and misleading.

The district court ruled: "Mauna Kea has presented the Court with insufficient hours/invoice summary documents to determine the reasonableness of the work performed. The Court has no way of determining an appropriate amount of fees." (A013.)

Mauna Kea's failure to provide proper justification for its claim of fees is exactly what the Supreme Court has ruled to be insufficient to support an award of fees. "The party seeking an award of fees should submit evidence supporting the hours worked." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* The applicant "should maintain billing time records in a manner that will enable reviewing court to identify distinct claims." *Id.* at 437.

Furthermore, contrary to Mauna Kea's argument, it is *not* the responsibility of the district court to attempt to justify Mauna Kea's claimed fees. Citing *Hensley*, the Ninth Circuit elucidated the proper

deference that should be given here – not to the attorneys that fail to provide adequate support for their hours claimed, but to the district court, which should not be required to waste judicial resources speculating or reconstructing attorney hours practically out of thin air: "The party petitioning for attorney's fees 'bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *In re. Washington Public Power Supply Sys. Lit.*, 19 F. 3d 1291, 1305 (9th Cir. 1994). In that case the court reiterated *Hensley's* admonition that fee awards be reduced accordingly if documentation was not sufficient. It went on to state that "[i]t also follows that the district court was neither obligated to explain what types of records should be submitted, nor to request additional information. The burden of presenting the appropriate fee documentation rests squarely on the shoulders of the attorneys seeking the award." *Id.*, at 1306.

Mauna Kea's reliance on the decisions in *Slimfold Mfg. Co. v. Kinkead Indus.*, 932 F.2d 1453 (Fed. Cir. 1991) and *PPG Indus. v. Celanese Polymer Spec Co.*, 840 F. 2d 1565 (Fed. Cir. 1988) is unavailing. The so-called "*Slimfold* rule" simply does not exist.

In *Slimfold* the Federal Circuit remanded the case with instructions for the district court that would affect its finding of exceptional case status under §285. *Slimfold*, 932 F. 2d 1453. But far from unambiguously requiring an award of fees in an exceptional case, the *Slimfold* court merely stated that "Assuming the district court still finds the case to be exceptional, **we urge the district court to reconsider** its position on the adequacy of the attorney fee documentation." *Id*. at 1459 (emphasis added.)

The court went on to cite Eleventh Circuit precedent (*Norman v. Housing Authority of the City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988), which had nothing to do with §285, for the proposition that which Mauna Kea essentially rests its entire appeal, that "where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee." *Id*. But unlike in this case, the attorney's fees application in *Slimfold*, was "fairly detailed and extensive." *Id*.

Furthermore, despite the citation to *Norman*, nowhere in §285 is a district court obligated to award fees, even when it finds the case to be exceptional. As argued in full below, the text of §285 is clear and

unambiguous: "The court in exceptional cases **may** award reasonable attorney fees to the prevailing party." U.S.C. 35 §285 (Emphasis added).

Furthermore, *PPG Indus. v. Celanese Polymer Spec Co.*, 840 F. 2d 1565 is doubly unavailing to Mauna Kea. Not only does it primarily resolve only the issue of whether in-house counsel hours should be counted towards attorney's fees (which is not at issue here), the court in *PPG Indus.* went out of its way to cite *Hensley* for the Supreme Court's "well-established rule that insufficient documentation may warrant a reduction in the fees." *Id.* at 1570. The court then cited a passage from Justice Burger's concurrence in *Hensley*, stating "A district judge may not, in my view, authorize the payment of attorney's fees **unless the attorney involved has established by clear and convincing evidence the time and effort claimed** and has shown that the time expended was necessary to achieve the results obtained." *Id* (Emphasis added.)

This Court should decline Mauna Kea's request to make a precedential ruling that an award of attorney's fees is required under §285, when no such rule heretofore exists, or should exist under the plain meaning of the statute. Rather, this Court should follow *Hensley* and *PPG Indus.* for the rule that attorney's fees applications that

insufficiently document hours and activities worked, and therefore do not "establish by clear and convincing evidence the time and effort claimed" and which do not show "that the time expended was necessary to achieve the results obtained," should be denied.

### B. Rule 54 does not require a district court to accept inadequate documentation or to allow a party seeking attorney fees to set the court's schedule.

The district court was well within its discretion to reject as untimely and belated any further evidence Mauna Kea may have attempted to proffer after the court ruled on its motion.

Mauna Kea had an obvious opportunity to submit more detailed evidence of its attorney's fees—in its reply brief. As described in detail above in this brief's section on Mauna Kea's waiver, AntiCancer's opposition papers cited *Hensley* and argued very clearly that Mauna Kea's evidence regarding attorney's fees was insufficient. Mauna Kea could have responded by supplying the district court with more documentation of its attorney's hours when it filed its reply brief. It could have even sought to supplement its briefing with such material at any time during nearly *five months* that elapsed before the district court ruled on its motion. But it failed to make any attempt to do so

whatsoever. Yet now it insists that the district court should have allowed it to submit further documentation *after* the court had taken all the time and effort to consider Mauna Kea's motion and issue its 12 page order. The district court was therefore well within its discretion to find that any evidence Mauna Kea might wish to submit after that point was untimely and belated.

Moreover, Federal Rule of Civil Procedure 54 does not mandate, as Mauna Kea argues, that a district court is required to parse through tardy submissions, or is required to wait for the moving party to unilaterally decide when to submit clear and convincing evidence of its claimed attorney's fees. The Rule clearly states that the "[c]court **may** determine issues of liability before receiving submissions bearing on issues of evaluation of services **for which liability is imposed** by the court." Rule 54(d)(2)(C) (Emphasis added.) The plain language of the Rule is discretionary, allowing the court to choose to decide an issue such as exceptional case status before deciding whether to impose liability. This is a bedrock principle of judicial economy – to only consider secondary issues if the resolution of a primary issue so requires.

In this case, the district court exercised its discretion to consider submissions bearing on the evaluation of services simultaneously with its consideration of the exceptional case status. As the Advisory Committee Notes to Rule 54 state:

> The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).

Fed. R. Civ. P. 54 Advisory Committee Notes 1993 Amendment.

The district court did nothing to contradict Rule 54. Mauna Kea included evidentiary material bearing on its claimed fees when it filed its motion, AntiCancer argued that this evidence was insufficient to support the clear and convincing standard necessary, and Mauna Kea sat on its hands. Rather than submit further material with its reply brief, or at any time "in due course," it chose to wait five months for the district court to make its ruling, and then appeal to this Court to save it from its own indolence.

Furthermore, the district court was entitled to refuse to accept tardy or belated submissions from Mauna Kea. This was the proper

exercise of the inherent power held by district courts to control their proceedings. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) in which the Court described inherent powers as those "necessary to the exercise of all others" and that are "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

The district court managed the disposition of the §285 motion in an orderly and expeditious manner. Its refusal to excuse Mauna Kea's indolence should be affirmed.

>    **C.     The district court was correct in its reasoning that activities not directly related to defending against AntiCancer's counterclaims were not compensable, even if they had been properly documented.**

Section 285 requires any awarded fees to be reasonable. U.S.C. 35 §285. Reasonableness in this context must by its very nature include an understanding that fees incurred in furtherance of litigation activities that had no bearing on the final resolution of the case – or, indeed, as here, were undertaken voluntarily by the party seeking fees, and litigated even before the claims from which the case was found to be exceptional – need not, and should not, be considered by a district court in formulating an appropriate fee award, if any. *See*

*Hensley v. Eckerhart*, 461 U.S. 424; *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F 3d. 1302, 1313 (Fed. Cir. 2013) ("[I]t is clear that the aim of §285 is to compensate a defendant for attorney's fees it should not have been **forced** to incur." (Emphasis added.)

Furthermore, as the *Hensley* court stated, "As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs where only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims." *Id.*, at 437, citations omitted.

This is exactly just such a case: First, Mauna Kea was only partially successful, because it did not succeed in invalidating AntiCancer's patents, one of its main goals which it undertook voluntarily from the very beginning of the lawsuit, and one which, as we will see, Mauna Kea wished to continue to pursue even after AntiCancer's infringement claims were dismissed. And second, as the district court correctly found, Mauna Kea's motion for fees provided virtually no basis for determining how much time was spent on particular claims.

Awarding Mauna Kea fees for litigation it voluntarily chose to incur, regardless of AntiCancer's counterclaims, would be unreasonable. As the district court correctly found, Mauna Kea's failure to submit adequate evidence supporting the attorney's hours worked was compounded by its failure to separate the work done on AntiCancer's counterclaims from other work related to Mauna Kea's voluntarily incurred claims of invalidity. Mauna Kea's counsel performed work on the case that it would have performed as a result of filing its Declaratory Judgment motion, regardless of whether AntiCancer had filed its infringement counterclaims or not.

No one forced Mauna Kea to attempt to invalidate AntiCancer's patents. Yet Mauna Kea now argues it would not have incurred *any* of its attorney fee, post AntiCancer's filing of counterclaims, had AntiCancer not filed those claims, a specious argument that is belied by its own subsequent statements.

In its opening brief, Mauna Kea states:

Mauna Kea's "claim" for declaratory judgment of non-infringement and invalidity and AntiCancer's "counterclaim" for infringement are not independent "claims". Because the declaratory judgment statute is procedural only, and because it does not independently create jurisdiction, it was necessary for AntiCancer to assert infringement for this case

to go forward. **This case would have simply ended had AntiCancer not asserted infringement**. Declaratory judgment is a procedural posture that allows Mauna Kea to seek a remedy, but only where there is an actual case or controversy, i.e., only where AntiCancer asserts infringement in response.

(Appellant's Opening Brief, p. 16, emphasis added.)

But this argument is belied by previous statements and positions made by Mauna Kea and its counsel which demonstrate that Mauna Kea's purpose, from the very beginning when it filed its first case against AntiCancer in the Eastern District of Pennsylvania, was to invalidate AntiCancer's patents, or alternatively, to extract from AntiCancer a broad covenant not to sue, as it indicated to the district court during a hearing that preceded the dismissal of AntiCancer's counterclaims (excerpted below).

In Mauna Kea's Opposition to AntiCancer's Motion to Dismiss For Lack of Subject matter, filed in response to Mauna Kea's declaratory judgment claims (and *before* AntiCancer filed its mandatory counterclaims for infringement), Mauna Kea stated that it "[brought] its claims pursuant to the Declaratory Judgment Act," and that "Although this jurisdiction is discretionary, the Supreme Court has emphasized a 'virtually unflagging obligation of the federal courts to exercise the

jurisdiction given to them,'" citing *Colo. River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976). (A094.)

Mauna Kea went on to state – in a startling admission, considering its subsequent positions – that "AntiCancer has possessed sufficient information regarding Mauna Kea's activities to accuse Mauna Kea of infringement since at least AntiCancer's 2006 accusations of infringement. Since that time, information regarding the use of Mauna Kea products has only become more publicly available . . . The Declaratory Judgment Act exists precisely for situations such as this." (A095.)

But this argument that Mauna Kea's invalidity claims were only necessary in light of AntiCancer's eventual infringement counterclaims is directly contradicted by the actual position taken in the district court by Mauna Kea's when AntiCancer dismissed its counterclaims. Far from considering the case over after AntiCancer dismissed its counterclaims, Mauna Kea was planning to move forward on its invalidity contentions, as the transcript from a status conference held before the district court (prior to it issuing its dismissal of AntiCancer' counterclaims) makes clear. After extracting AntiCancer's agreement to

dismiss its counterclaims with prejudice, Mauna Kea indicated that it was not satisfied, that it in fact wanted more. It also demanded a broad covenant not to sue in order to agree to dismiss its own claims for invalidity. The following exchange between the Court and Mauna Kea's counsel illustrates their position:

> Court: . . . Now I understand that [Mauna Kea] wants this to be sort of belt and suspenders with a covenant not to sue, and I'm wondering what the complication is here. Because if the court enters a dismissal with prejudice as to all claims brought or that could have been brought in this case as to all products that were asserted to infringe as of today and any colorable imitations going forward, AntiCancer will be foreclosed as a matter of res judicata and collateral estoppel from raising these patents against this company again for their current products as well as anything you do in the future that is the same. And I don't really want to litigate a case on a hypothetical that some day there might be a product that somebody might allege infringes. So that said, how do we bring this to a close?  Because it doesn't look like the plaintiffs want to assert their patents here.
>
> Mr. Goehring:    Your honor, this is Jeff Goehring. Unfortunately **we feel that we have to continue with our claims that we've alleged** because AntiCancer has a long history of asserting frivolous claims. They've done it in this case. They withdrew their claims after our Rule 11 motion, but they have done it in several other cases. They have been subject to five different summary judgment motions in other cases, and there is nothing to stop them from asserting frivolous claims in the future just as they have here. And in terms of the mootness of the case, I don't think they have mooted it, the case in controversy, because they acknowledge and they admit, and it's the very reason why we want this

covenant not to sue that they want to preserve their right to sue us in the future on future actions. And because they have that option and they acknowledge that and then they do that is precisely why the case isn't mooted and **we feel we have to go forward with the invalidity claims** to truly eliminate the possibility that they would do that in the future and also why we believe that there is a continuing case in controversy.

(A098-A099, emphasis added.)

Mauna Kea would surely have proceeded with its invalidity contentions after the dismissal of AntiCancer's counterclaims, just as it surely would have proceeded with invalidity had AntiCancer initially "admitted that there was no infringement and foregone infringement claims." Only because the district court made clear that it would not allow Mauna Kea to proceed with its invalidity claims did Mauna Kea finally back down.

Court: . . . Short of the parties agreeing to some sort of license terms, this case is not going to resolve what Mauna Kea might do a year from now that is not just a continuation of their current product lines, and we're not going to litigate the validity of these patents against the potential that you might make something that AntiCancer might determine infringes in the future. The court is not going to do that. I'm not going to hold an entire trial here on invalidity defenses when there are no products currently accused of infringement.

(A100.)

Thus, all or almost all the work Mauna Kea listed in its Exhibit C (A075-A077) would have been necessary because Mauna Kea initially filed its declaratory judgment action. AntiCancer would have had to defend its patents against the declaratory judgment action, resulting in virtually the identical work done as listed in Exhibit C. There is *virtually no work* listed in Exhibit C that would not have needed to be performed had AntiCancer not filed its counterclaims. Only a single line of Exhibit C in the paragraph labeled "12I042" could be said to describe work pertaining to AntiCancer's counterclaims: "counter claim constructions and designation of extrinsic evidence." (A075.) But this line is so brief and vague that it utterly fails as evidence to support the hours worked.

The district court therefore properly found that the evidence submitted by Mauna Kea fell far short of that required for recovery of any attorney's fees, and its ruling should be affirmed. This Court should follow *Hensley* and *PPG Indus.* for the rule that attorney's fees applications that insufficiently document hours and activities worked, and therefore do not "establish by clear and convincing evidence the

time and effort claimed" and do not show "that the time expended was necessary to achieve the results obtained," should be denied.

### III. The Plain Language of §285 and the Supreme Court's Ruling in *Octane Fitness* Make Clear That A District Court May Decline to Award Attorney Fees Without Needing to Justify That Decision.

Reversing the district court would add a condition to §285 that does not exist, thereby eviscerating the broad discretion the statute gives to courts. If a district court's decision to deny awarding fees was required to be justified, §285 would so indicate. Nothing in the wording of the statute requires such justification. In fact, the discretionary nature of §285 indicates the opposite—that only an actual award of fees must be justified, because it must be reasonable.

The text of § 285 is short and to the point: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." U.S.C. 35 §285.

The Supreme Court's recent case *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. ___, ___ (2014) set new precedent for what constitutes an "exceptional" case. AntiCancer has not cross-appealed on the issue of the district court finding this case exceptional. However, *Octane* is still relevant to the determination of whether the

district court abused its discretion in declining to award Mauna Kea attorney's fees. In *Octane*, the Supreme Court stated that the text of §285 is "patently clear." *Octane*, 572 U.S. ___, ___ (2014) (slip op., at 7). The court went on to rule that §285 "**imposes one and only one constraint on district courts' discretion** to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Id* (emphasis added.)

The Supreme Court thus has made it very clear: There is one and only one constraint on the court's discretion under §285 – that the case be exceptional. Only if the case is found to be exceptional, *may* a court award reasonable attorney's fees. Nowhere in *Octane* does the Supreme Court alter the broad discretion given to a court with that one single word – "may." To the contrary, by affirmatively stating that a district court is constrained only by one requirement, that the case be exceptional, the logical and necessary corollary is that *Octane* stands for the rule that in such exceptional cases, a court "may" award reasonable fees, not "must," because to require such an award would be adding an additional condition that does not, and cannot exist.

Furthermore, the Federal Circuit has long held that "even if the case is found to be exceptional, the district court in its discretion may decline to award attorney fees." *Badalamenti v. Dunham's, Inc.*, 896 F. 2d 1359, 1365 (Fed. Cir. 1990); "After the district court determines that a case is exceptional, there remains in every case its freedom to exercise its discretion 'informed by the court's familiarity with the matter in litigation and the interest of justice.'" *Gardco Mfg., Inc. v. Herst Lightning Co.*, 820 F. 2d 1209, 1215 (Fed Cir. 1987) (citation omitted); "The methodology of assessing a reasonable award under 35 U.S.C. is within the discretion of the district court." *Automated Business Co. v. NEC America*, 202 F. 3d 1353, 1355 (Fed Cir. 2000).

In *Superior Fireplace v. Majestic Products*, 270 F. 3d 1358 (Fed. Cir. 2001) the court stated "A finding that this case was exceptional would not, of course, end the inquiry. The subsequent decision to award attorney fees, **vel non** [i.e., "or not"], is **discretionary** and '**permits** the judge to **weigh intangible** as well as tangible factors.'" (Emphasis added, citations omitted.) This clearly indicates that there is no requirement for a court to justify its rationale in denying such fees – particularly so when it is expressly permitted to weigh "intangible" factors, which by

their very nature are difficult, if not impossible to quantify. The district

court's ruling may be affirmed on these grounds.

### IV. The District Court's Decision to Decline to Award Attorney's Fees Can Also Be Affirmed On An Alternate Basis, That Mauna Kea Had Unclean Hands.

A district court may weigh a variety of factors in deciding

whether and how much attorney's fees to award, including the litigation

behavior of both parties. In *Superior Fireplace v. Majestic Products*, 270

F. 3d 1358 (Fed. Cir. 2001) the Federal Circuit stated "A finding that

this case was exceptional would not, of course, end the inquiry. The

subsequent decision to award attorney fees, vel non [i.e., "or not"], is

discretionary and 'permits the judge to weigh intangible as well as

tangible factors.'" These factors to be weighed can and should include

the litigation tactics of the prevailing party.

Moreover, as AntiCancer argued in the district court, it is a well-

settled principle that a party who comes into equity must come in with

clean hands. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S.

240, 244 (1933). He or she who has committed inequity will not have

equity. Unclean hands "is a self-imposed ordinance that closes the doors

of a court of equity to one tainted with inequitableness or bad faith

relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945).

Notably, the district court made no finding of litigation misconduct on AntiCancer's part. And though it did not rule on AntiCancer's allegations that Mauna Kea committed litigation misconduct, nor did it absolve Mauna Kea of these allegations. Such allegations provide independent justification for a denial of attorney's fees and affirmation of the district court.

AntiCancer argued this issue in the district court (A101-A102), pointing out that in its zeal to pursue a declaratory judgment action against AntiCancer, including for invalidity of AntiCancer's well-established patents, Mauna Kea ignored controlling law as to personal jurisdiction and made serious factual misstatements in order to attempt to mislead the Court there to keep the case in Pennsylvania.

As the court for the Eastern District of Pennsylvania noted, Mauna Kea "ignore[d] the controlling law with regard to personal jurisdiction and incorrectly defines the standard, even after AntiCancer specifically cited the relevant case law in its motion to dismiss," and

misrepresented the city to which AntiCancer sent its letters as Philadelphia, not, as was actually the case, Paris. The court there went so far as to admonish Mauna Kea "that Rule 3.3 of the Pennsylvania Rule of Professional Conduct forbids a lawyer from 'mak[ing] a false statement of material fact or law to a tribunal.'" (A093.)

Mauna Kea's hands were also unclean in a way which was directly related to its motion for attorney's fees: its willful failure to produce any documents to AntiCancer whatsoever, despite AntiCancer's repeated requests and despite Mauna Kea's attorney's promise to produce them. (A102-A107, A082.) Such misconduct thereby potentially deprived AntiCancer not only of additional proof of its infringement claims, but also of proof that Mauna Kea may itself have inadequately investigated its claims of invalidity against AntiCancer. Mauna Kea improperly withheld these discovery documents, thus precluding AntiCancer from evaluating Mauna Kea's good faith and subjective expectation of success on Mauna Kea's own claims. Mauna Kea did not produce any promised documents regarding its pre-filing investigation. Not a single one. AntiCancer, on the other hand, produced over 3,700 pages of documents regarding its counterclaim pre-filing investigation. (A102-A107, A082.)

There is good reason to suspect Mauna Kea's documents were never produced because Mauna Kea itself inadequately investigated its own claims, particularly with respect to its claims of patent invalidity. Mauna Kea filed its Declaratory Judgment action in the Eastern District of Pennsylvania a mere few weeks after receiving the letter from AntiCancer's counsel which served as the basis for its action. A reasonable inference from this timeframe is that Mauna Kea did not adequately investigate its claims of invalidity before making them, and this inference is supported by the fact that Mauna Kea never produced to AntiCancer any documents that might show proof of its investigation prior to filing its claims of invalidity. (A103-A107.)

In sum, there is sufficient evidence in the record for this Court to weigh the "tangible and intangible factors," per *Superior Fireplace*, and affirm the district court on the basis that Mauna Kea had unclean hands.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Mauna Kea waived all arguments as to the sufficiency of its evidentiary support for the attorney's fees it claimed because it failed to raise those arguments when it had an opportunity to do so before the

district court. The district court had full, unconditional discretion to deny an award of attorney's fees, even despite having held the case to be exceptional. The reasoning the district court articulated in explanation of its decision was more than adequate. None of the district court's analysis or ruling was "clearly unreasonable, arbitrary or fanciful, or based on erroneous conclusion of law or fact." In any event, it needed no justification whatsoever for exercising its discretion the way it did. And the district court could have also decided not to award attorney's fees to Mauna Kea because it came to the court with unclean hands.

For all of these reasons, this Court should affirm the district court's ruling.

Respectfully submitted:

/s/ Matt Valenti

AntiCancer, Inc.
7917 Ostrow Street
San Diego, California 92111
(858) 654-2555
Attorney for Defendant-Appellee
AntiCancer, Inc.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I employed in San Diego County, California. I am over the age of 18 and am not a party to the cause. I am lead counsel for AntiCancer, Inc, am from AntiCancer, Inc., 7917 Ostrow Street, San Diego, California 92111, and am filing and serving the following:

### DEFENDANT-APPELLEE ANTICANCER, INC.'S BRIEF

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF System, on July 31, 2014. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF System. I hereby further certify that copies of the foregoing document are being served via e-mail on the following counsel for plaintiff-appellant:

Jeffrey M. Goehring
Douglas V. Rigler
YOUNG & THOMPSON
209 Madison St., Suite 500
Alexandria, VA 22314


Dated: July 31, 2014    /s/ Matt Valenti
                      Matt Valenti
                      AntiCancer, Inc.
                      Attorney for Defendant-Appellee
                      AntiCancer, Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 8,020 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), but including footnotes and endnotes.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface font using Microsoft Word 2011, in 14 point Century font.


Dated:  July 31, 2014    /s/ Matt Valenti
    Matt Valenti
    Attorney for Defendant-Appellee
    AntiCancer, Inc.